# EXHIBIT A



**null / ALL**
**Transmittal Number: 21939500**
**Date Processed: 08/26/2020**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Walgreens Distribution<br>Corporation Service Company- Wilmington, DELAWARE<br>251 Little Falls Dr<br>Wilmington, DE 19808-1674 |

| | |
|---|---|
| **Entity:** | Walgreen Co.<br>Entity ID Number 0501431 |
| **Entity Served:** | Walgreen Co. |
| **Title of Action:** | Daniel Malloy vs. Walgreen Co. |
| **Matter Name/ID:** | Daniel Malloy vs. Walgreen Co. (10464337) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Cook County Circuit Court, IL |
| **Case/Reference No:** | 2020L008564 |
| **Jurisdiction Served:** | Illinois |
| **Date Served on CSC:** | 08/25/2020 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| **Sender Information:** | Christopher Patrick Ford<br>312-372-0505 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

2120- Served 2121 -Served
2220 -Not Served 2221 -Not Served
2320 -Served By Mail 2321 -Served By Mail
2420 -Served By Publication 2421 -Served By Publication

**FILED**

**8/14/2020 9:05 AM**

SUMMONS            ALIAS –SUMMONS            (Rev.9/3/99) CCG 0001

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

COUNTY DEPARTMENT, LAW DIVISION

**DOROTHY BROWN**
**CIRCUIT CLERK**
**COOK COUNTY, IL**
2020L008564

(Name all parties)
**DANIEL MALLOY,**

                    **Plaintiffs,**

**v.**

**WALGREEN CO., a corporation,**

                  **Defendant.**

)
)
)
)
)
)
)
)
)
)

**No.**

**Please Serve:**  **Walgreen Co.**
**c/o  Illinois Corporation Service C**
**801 Adlai Stevenson Drive**
**Springfield, Illinois 62703**

FILED DATE: 8/14/2020 9:05 AM  2020L008564

## SUMMONS

To each defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the office of the Clerk of this Court at the following location:

  **X**    Richard J. Daley Center, 50 W. Washington, Room <u>801</u>, Chicago, Illinois 60602

| | | | | | |
|---|---|---|---|---|---|
| ___ | District 2 -Skokie | ___ | **District 3 -Rolling Meadows** | ___ | **District 4 -Maywood** |
| | 5600 Old Orchard Rd. | | 2121 Euclid | | 1500 Maybrook Ave. |
| | Skokie, IL 60077 | | Rolling Meadows, IL 60008 | | Maywood, IL 60153 |
| ___ | District 5 -Bridgeview | ___ | District 6 -Markham | | |
| | 10220 S. 76th Ave. | | 16501 S. Kedzie Pkwy. | | |
| | Bridgeview, IL 60455 | | Markham, IL 60426 | | |

You must file within 30 days after service of this summons, not counting the day of service.

**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

To the officer:

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than 30 days after its date.

8/14/2020 9:05 AM DOROTHY BROWN

Atty No. 15025
LAW OFFICE OF CHRISTOPHER PATRICK FORD
8 South Michigan Avenue - Suite 3500
Chicago, Illinois 60601
Telephone: 312/372-0505
Facsimile:  312/372-8562
cpfordlaw@sbcglobal.net

WITNESS,_____, _____

_____

Date of Service: _____

(To be inserted by officer on copy left
with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____

           (Area Code)      (Facsimile Telephone Number)

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

**12-Person Jury**

FILED
8/14/2020 9:05 AM

STATE OF ILLINOIS )
COUNTY OF COOK )

#15025

DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020L008564

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

DANIEL MALLOY, )
)
Plaintiffs, )
)
v. )   No.
)
WALGREEN CO., a corporation, )   **Plaintiff Demands a**
)   **Trial by Jury**
Defendant. )

FILED DATE: 8/14/2020 9:05 AM   2020L008564

## **COMPLAINT AT LAW**

NOW COMES Plaintiff, DANIEL MALLOY, and for his cause of action against Defendant,

WALGREEN CO., a corporation, states as follows:

### **COUNT I – Breach of Fiduciary Duty of Good Faith and Fair Dealing**

1. That the Plaintiff, Daniel Malloy is an Illinois resident.

2. That the Defendant, Walgreen Co., is an Illinois Corporation, with its principal place of

business in Illinois, and with its corporate headquarters in Illinois.

3. That on or about May 18, 1972, Daniel Malloy, as a sophomore in high school, began

employment with the Walgreen Co. at the Walgreen Co.'s Restaurant at Woodmar Shopping Center

located in Hammond, Indiana as a dish washer.   Three months later, Daniel Malloy was promoted

to short order cook.

4. That on or about June 1974, Daniel Malloy, upon graduation from high school, was

promoted within the Walgreen Co. to Assistant Manager at the Walgreen Co.'s Restaurant

Downtown Hammond, Indiana location.

5. That on or about December 1975, Daniel Malloy, was promoted within the Walgreen Co.

to General Manager at the Walgreen Co.'s Restaurant at the Woodmar Shopping Center located in

Hammond, Indiana (the  Number 2 sales store in the South District for the Walgreen Co).

6. That on or about December 1977, Daniel Malloy, was promoted within the Walgreen Co. to General Manager at the Walgreen Co.'s Restaurant at the Evergreen Park Plaza in Evergreen Park, Illinois (the Number 1 sales store in the South District for the Walgreen Co).

7. That on or about December 1978, Daniel Malloy, was transferred with the Walgreen Co. to General Manager at the Walgreen Co.'s Restaurant at the Yorktown Shopping Center in Lombard, Illinois (the Number 1 sales store in the Western District for the Walgreen Co).

8. That on or about June 1980, Daniel Malloy, was transferred with the Walgreen Co. to General Manager at the new Walgreen Co.'s Restaurant in St. Charles, Illinois (which became the Number 1 sales and profit store in the Region for the Walgreen Co). While there, Daniel Malloy was awarded restaurant Manager of the Year in 1981 and 1982 for Walgreen Co.

9. That on or about August 1982, Daniel Malloy, was promoted within the Walgreen Co. to District Manager for the Western District where he oversaw the opening of five new Walgreen Co.'s restaurants and was responsible for eight restaurants. During this period, Daniel Malloy received numerous QCP awards and was featured in the Walgreen's Annual Report in 1984.

10. That on or about August 1987, Daniel Malloy, was promoted within the Walgreen Co. to Director of Food Service Administration in Deerfield, Illinois, responsible for management of the divisions budgets, capital expenditures, point-of sale systems in all restaurants, monitoring all personal injury and workman's compensation claims, and managing three accounting offices (two in Florida and one in Deerfield) that serviced approximately 89 Walgreen Co.'s restaurants.

11. That on or before January 1, 1988, because Walgreen Co. Director of Food Service Administration was a Salary Grade 14 employee of Walgreen Co, Daniel Malloy qualified for the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan."[1]

12. That on or about January 1, 1988, Walgreen Co. offered Daniel Malloy participation in the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan," and

---

[1] See attached Exhibit 1

2

FILED DATE: 8/14/2020 9:05 AM    2020L008564

FILED DATE: 8/14/2020 9:05 AM    2020L008664

Daniel Malloy accepted Walgreen Co.'s offer to participate in the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan."

13. That on or about January 1, 1988, Daniel Malloy's required consideration for participating in the plan was a payment of $6,514.00 which was paid by Daniel Malloy by agreed upon withdrawal from his paycheck.

14. That the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan" included annual interest rates for the projected payments between $19.00 - 24.00\%$ compounded annually depending upon the age at time of deferral.[2]:

SCHEDULE A

TO THE

WALGREEN CO. EXECUTIVE'S DEFERRED

FEE/CAPITAL ACCUMULATION PLAN

| Age at Time of Deferral | Annual Interest Earned by Deferral |
|---|---|
| To age 35 | 19.00% |
| age 36 | 19.14% |
| age 37 | 19.30% |
| age 38 | 19.50% |
| age 39 | 19.70% |
| age 40 | 19.94% |
| age 41 | 20.20% |
| age 42 | 20.40% |
| age 43 | 20.60% |
| age 44 | 20.80% |
| age 45 | 21.00% |
| age 46 | 21.20% |
| age 47 | 21.40% |
| age 48 | 21.60% |
| age 49 | 21.80% |
| age 50 | 22.00% |
| age 51 | 22.20% |
| age 52 | 22.40% |
| age 53 | 22.60% |
| age 54 | 23.00% |
| age 55 | 23.00% |
| age 56 | 23.20% |
| age 57 | 23.40% |
| age 58 | 23.60% |
| age 59 | 23.80% |
| age 60 and over | 24.00% |

---

[2] See attached Exhibit 1, p.15.

FILED DATE: 8/14/2020 9:05 AM   2020L008564

15.  That under the "Walgreen Co. 1988 Executive Deferred Compensation/Capital

Accumulation Plan" the agreed projected payments to Daniel Malloy were (four Interim Payments

once per year from1995-1998, and fifteen Installment Payments once per year after age 65)[3] :

```
                        WALGREEN COMPANY
                   1988 DEFERRED INCOME PLAN

                   PERSONAL BENEFIT STATEMENT

                             FOR

                        D.J. MALLOY

     This statement shows your normal retirement payments beginning at age 65.
     Payments will begin on the Plan Anniversary date following retirement.


                             Plus

     Interim payments to be received in years 8, 9, 10 and 11 if you were
     age 54 or less on the Plan Commencement Date.

        Plan Year                              01/01/1988

        Date of Birth                          05/13/1956

        Actual Age - 01/01/88                  31

        Date Normal Post-Retirement Payments Begin    01/01/2022
            (plan anniversary following 65th birthday)

        SALARY DEFERRAL AMOUNT           $     6,514
        -----------------------               -----------

                   PLAN                    INTERIM
                   YEAR                     PAYMENTS
                   ----                     --------

                   1995                $      6,514

                   1996                $      6,514

                   1997                $      6,514

                   1998                $      6,514

                                          INSTALLMENT
                                           PAYMENTS
                                          ----------- --

        AGE 65                         $     29,454*

        TOTAL PAYOUT                   $    467,866

     The above payments are not guaranteed and are subject to the provisions
     of the Plan Agreement and the Plan Document.

     *15 Year Certain, Post-retirement payments start on the anniversary
     Commencement Date following age 65.
```

16.  T o summarize the payments due to Daniel Malloy under the "Walgreen Co. 1988

Executive Deferred Compensation/Capital Accumulation Plan," payments were due as follows:

---

[3] See attached Exhibit 1, p.16.

FILED DATE: 8/14/2020 9:05 AM   2020L008564

| Projected Payment Date | Projected Payment Amounts |
|---|---|
| January 1, 1995 | $ 6,514.00 |
| January 1, 1996 | $ 6,514.00 |
| January 1, 1997 | $ 6,514.00 |
| January 1, 1998 | $ 6,514.00 |
| January 1, 2022 | $29,454.00 |
| January 1, 2023 | $29,454.00 |
| January 1, 2024 | $29,454.00 |
| January 1, 2025 | $29,454.00 |
| January 1, 2026 | $29,454.00 |
| January 1, 2027 | $29,454.00 |
| January 1, 2028 | $29,454.00 |
| January 1, 2029 | $29,454.00 |
| January 1, 2030 | $29,454.00 |
| January 1, 2031 | $29,454.00 |
| January 1, 2032 | $29,454.00 |
| January 1, 2033 | $29,454.00 |
| January 1, 2034 | $29,454.00 |
| January 1, 2035 | $29,454.00 |
| January 1, 2036 | $29,454.00 |
| Total Projected Payments | $467,866.00 |

17. That under the provisions of Subsection 4. C. (2) of the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan," Walgreen's had the option of paying an employee involuntarily terminated in the amount of his deferred amount accumulating at 20% interest compounded annually.

> 4. <u>Time and Manner of Payment</u>. The participants' Deferred Accounts shall be distributed as follows:
> C. Payment Upon Termination
>> (2) A participant whose employment with the employer is involuntarily terminated by the employer prior to the participant's retirement for reasons other than those described in Sections 5 and 6 below, shall receive, as soon as practicable after such termination, a lump sum payment in the amount of the accumulated value of the deferral amount. For purposes of this Paragraph 4, Subsection C(2), *the rate to be credited in the calculation of the accumulated value of the deferral amount shall be twenty percent (20%).* [emphasis added]

18. That on or about June 1988, Walgreen Co. sold the Food Service Division including all Walgreen Co.'s restaurants to the Marriott Corporation.

19. As part of that sale, in or about October 1988, Daniel Malloy's employment with the Walgreen Co. as Director of Food Service Administration ended after over sixteen years of continuous employment by Walgreen Co., and Daniel Malloy continued employment with the Food Service Division which had been purchased by the Marriott Corporation as Director of Food Service Administration (in the same role as he had at the Walgreen Co).

20. That at no time since Daniel Malloy's employment with Walgreen Co. ended, was any lump sum payment ever made to Daniel Malloy by Walgreen Co. under the provisions of Subsection 4. C. (2) of the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan."

21. That on or about October 1988, and at all times relevant hereto, Daniel Malloy continued the agreed participation in the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan," having met his responsibilities under the plan.

22. That in January of every year since the initiation of the 1 "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan," Daniel Malloy would receive a letter making the material representations to Daniel Malloy of the status of his projected payments under the plan; each annual letter acted to ratify the agreement. The attached Exhibit 2 contains the status letters that Daniel Malloy regarding the same in January 2018, January 2019, and January 2020.[4]

23. That on or about January 1, 1995, Walgreen Co. paid Daniel Malloy the first payment in the amount of $6,514.00 under the agreed "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan," ratifying the agreement.[5]

24. That on or about January 1, 1996, Walgreen Co. paid Daniel Malloy the second payment

---

[4] See attached Exhibit 2,
[5] See attached Exhibit 1, p. 16 and Exhibit 2

FILED DATE: 8/14/2020 9:05 AM   2020L008664

FILED DATE: 8/14/2020 9:05 AM   2020L008564

in the amount of $6,514.00 under the agreed "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan," ratifying the agreement.[6]

25. That on or about January 1, 1997, Walgreen Co. paid Daniel Malloy the third payment in the amount of $6,514.00 under the agreed "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan," ratifying the agreement.[7]

26. That on or about January 1, 1998, Walgreen Co. paid Daniel Malloy the fourth payment in the amount of $6,514.00 under the agreed "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan," ratifying the agreement.[8]

27. That in each of the annual status letters that Daniel Malloy regarding the past payments to Daniel Malloy, including those in January 2018, January 2019, and January 2020, the material representation made to Daniel Malloy was that each of these payments were Interim Payments made to him as agreed under the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan," ratifying the agreement.[9]

28. That Daniel Malloy relied upon each of the aforesaid material representations in his financial and retirement planning.

29. That Daniel Malloy has qualified for agreed Installment Payments under the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan," when he retired after a period of continuous employment beginning on or before January 1, 1988.[10]

30. That Daniel Malloy is currently 64 years of age and turns 65 years of age on May 13, 2021, and had over 16 years of service with Walgreen Co. prior to termination of employment.

31. That Daniel Malloy relied upon Walgreen Co. continual and repeated representations that Daniel Malloy qualified for compensation under the "Walgreen Co. 1988 Executive Deferred

---

[6] See attached Exhibit 1, p. 16 and Exhibit 2
[7] See attached Exhibit 1, p. 16 and Exhibit 2
[8] See attached Exhibit 1, p. 16 and Exhibit 2
[9] See attached Exhibit 1, p. 16 and Exhibit 2
[10] See Exhibit 1, including, Subsection 4. A. (1) b.

FILED DATE: 8/14/2020 9:05 AM    2020L008564

Compensation/Capital Accumulation Plan," including that the four payments he received in 1995-1998 were made pursuant to that plan and that he would receive the fifteen annual Installment Payments upon reaching 65 years of age.

32. That other Walgreen Co. employees whose employment ended with the sale of the Walgreen Co. the Food Service Division received their Installment Payments under the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan."

33. That on or about April 3, 2019, Walgreen Co. slashed its forecasts for 2019 earnings to flat from previous guidance of 7-12 percent for full year earnings for 2019, and announced that Walgreen Co. planned to cut costs by more than $1.5 billion by 2022.

34. That on or about October 28, 2019, Walgreen Co. announced that Walgreen Co. laid off more than 100 employees at its corporate headquarters in Deerfield, Illinois, that Walgreen Co. cut bonus amounts for store managers, and that Walgreen Co. increased its plans to cut costs to more than $1.8 billion by 2022, from the plan to cut cost by more than $1.5 billion by 2022 announced in April 2019.

35. That in the Third Quarter of 2020, Walgreen Co. reported a $1.7 billion dollar GAAP Net Earnings loss, down -266.6% compared to the Third Quarter of 2019.

36. That on or about June 24, 2020, Walgreen Co., through its agent Kristine A. Blumka, Senior Analyst, Retirement Plans, who at all times was acting within the scope of her employment, admitted to Daniel Malloy that Walgreen Co. never made a lump sum payment to Daniel Malloy under the provisions of Subsection 4. C. (2) of the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan."[11]

37. That on or about June 24, 2020, Walgreen Co., through its agent Kristine A. Blumka, Senior Analyst, Retirement Plans, who at all times was acting within the scope of her employment, made the material misrepresentation to Daniel Malloy that he did not meet the eligibility criteria for

---

[11] See Exhibit 3 Blumka letter to Dan Malloy of June 24, 2020

the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan."[12]

38. That on or about June 24, 2020, Walgreen Co., through its agent Kristine A. Blumka, Senior Analyst, Retirement Plans, who at all times was acting within the scope of her employment, advised Daniel Malloy that Walgreen Co. elected to exercise the provisions of Subsection 4. C. (2) of the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan" which requires Walgreen Co. to pay Dan Malloy the principal of his deferral amounts payment accrued at the interest rate found in the provisions of Subsection 4. C. (2) of the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan."[13]

39. That on or about June 29, 2020, Walgreen Co., through its agent Kristine A. Blumka, Senior Analyst, Retirement Plans, who at all times was acting within the scope of her employment, expressed recognition of the emotional distress caused to Daniel Malloy by Walgreen Co.'s action, promised that the Walgreen Co. would do the right thing by Daniel Malloy, indicating that she would discuss Daniel Malloy's promised compensation under the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan" with Walgreen Co.'s general counsel.

40. That at all times herein mentioned, Daniel Malloy - not suspecting that the company he had worked at for over sixteen years was intentionally depriving, defrauding him and converting the money owed to him to the benefit of Walgreen Co. - believed and relied upon Walgreen Co.'s misrepresentations.

41. That Daniel Malloy's deferral payment in 1988 was $6,514.00 which accrued at an interest rate of twenty percent (20%) compounded annually under Subsection 4. C. (2) of the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan," which accrued as set forth below.

---

[12] See Exhibit 3 Blumka letter to Dan Malloy of June 24, 2020
[13] See Exhibit 3 Blumka letter to Dan Malloy of June 24, 2020

FILED DATE: 8/14/2020 9:05 AM    2020L008564

FILED DATE: 8/14/2020 9:05 AM  2020L008564

| Dan Malloy Deferred Comp Plan | | | |
|---|---|---|---|
| | Bgn | Interest | Ending |
| 1988 | 6,514 | 1,303 | 7,817 |
| 1989 | 7,817 | 1,563 | 9,380 |
| 1990 | 9,380 | 1,876 | 11,256 |
| 1991 | 11,256 | 2,251 | 13,507 |
| 1992 | 13,507 | 2,701 | 16,209 |
| 1993 | 16,209 | 3,242 | 19,451 |
| 1994 | 19,451 | 3,890 | 23,341 |
| 1995 | 23,341 | 4,668 | 28,009 |
| 1996 | 28,009 | 5,602 | 33,611 |
| 1997 | 33,611 | 6,722 | 40,333 |
| 1998 | 40,333 | 8,067 | 48,400 |
| 1999 | 48,400 | 9,680 | 58,079 |
| 2000 | 58,079 | 11,616 | 69,695 |
| 2001 | 69,695 | 13,939 | 83,634 |
| 2002 | 83,634 | 16,727 | 100,361 |
| 2003 | 100,361 | 20,072 | 120,434 |
| 2004 | 120,434 | 24,087 | 144,520 |
| 2005 | 144,520 | 28,904 | 173,424 |
| 2006 | 173,424 | 34,685 | 208,109 |
| 2007 | 208,109 | 41,622 | 249,731 |
| 2008 | 249,731 | 49,946 | 299,677 |
| 2009 | 299,677 | 59,935 | 359,613 |
| 2010 | 359,613 | 71,923 | 431,535 |
| 2011 | 431,535 | 86,307 | 517,842 |
| 2012 | 517,842 | 103,568 | 621,411 |
| 2013 | 621,411 | 124,282 | 745,693 |
| 2014 | 745,693 | 149,139 | 894,832 |
| 2015 | 894,832 | 178,966 | 1,073,798 |
| 2016 | 1,073,798 | 214,760 | 1,288,558 |
| 2017 | 1,288,558 | 257,712 | 1,546,269 |
| 2018 | 1,546,269 | 309,254 | 1,855,523 |
| 2019 | 1,855,523 | 371,105 | 2,226,628 |
| 2020 | 2,226,628 | 445,326 | 2,671,953 |

42. That on or before July 14, 2020, Walgreen Co., through its agents acting within the scope of their employment, including but not limited to Kristine A. Blumka, Chris Dysinger, Walgreen Co. Director of Retirement Plans and Programs, and Walgreen Co.'s general counsel, conspired and schemed to defraud and deprive Daniel Malloy of the payments he was entitled to under the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan," and to convert those funds from Daniel Malloy's benefit to the benefit of the Walgreen Co.

10

FILED DATE: 8/14/2020 9:05 AM   2020L008564

43.  That on July 14, 2020, Walgreen Co., through its agent acting within the scope of her employment, Kristine A. Blumka, Senior Analyst, Retirement Plans, made the material misrepresentation to Daniel Malloy that he did not meet the eligibility criteria for the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan" because he did not attain "retirement status" by "attaining age 55 with at least 10 years of service prior to termination of employment with Walgreens."[14]

44.  That on July 14, 2020, Walgreen Co., through its agent Kristine A. Blumka, Senior Analyst, Retirement Plans, who at all times was acting within the scope of her employment, made the material misrepresentation to Daniel Malloy that he did not qualify for the Interim Payments that he had already been paid in 1995-1998, and that he did not qualify for the Installment Payments which were to begin in 2022."[15]

45.  That on July 14, 2020, Walgreen Co., through its agent Kristine A. Blumka, Senior Analyst, Retirement Plans, who at all times was acting within the scope of her employment,  made the material misrepresentation to Daniel Malloy that the amount due to him under Subsection 4. C. (2) of the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan" was $7,527.69, when in fact the amount due Daniel Malloy under Subsection 4. C. (2) of the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan" as of July 14, 2020 was approximately $2,464,542.00 accruing at 20% compounded annually.

46.  That on July 14, 2020, Walgreen Co., through its agent Kristine A. Blumka, Senior Analyst, Retirement Plans, who at all times was acting within the scope of her employment,  made the material misrepresentation to Daniel Malloy that the amount due to him under Subsection 4. C. (2) of the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan" was satisfied by his prior Interim Payments in 1995-1998.

---

[14] See Exhibit 4  Blumka letter to Dan Malloy of July 14, 2020
[15] See Exhibit 4  Blumka letter to Dan Malloy of July 14, 2020

FILED DATE: 8/14/2020 9:05 AM 2020L008564

47. That on July 14, 2020, Walgreen Co., through its agent Kristine A. Blumka, Senior Analyst, Retirement Plans, who at all times was acting within the scope of her employment, made the material misrepresentation to Daniel Malloy that "because you did not attain Retirement status under the plan," defined "as attaining age 55 with at least 10 years of service prior to termination of employment with Walgreens," Dan Malloy would receive no further retirement payments.[16]

48. That on and about June and July, 2020, Walgreen Co., through its agent Kristine A. Blumka, Senior Analyst, Retirement Plans, who at all times was acting within the scope of her employment, made the material misrepresentation to Daniel Malloy t that the statements communicated to Daniel Malloy during the preceding 32 years from Walgreen Co. regarding his participation in the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan" were "not properly administered," were an "error that occurred in the administration of your benefits," were "administrative error," were in "error," essentially asserting that Walgreen Co. had made 32 years of material misrepresentations to Daniel Malloy regarding the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan."

49. That on July 14, 2020, Walgreen Co., through its agent Kristine A. Blumka, Senior Analyst, Retirement Plans, who at all times was acting within the scope of her employment, made the material misrepresentation to Daniel Malloy that Walgreen Co. had a right to reimbursement of the Interim Payments made in 1995-1998, clearly threatening Daniel Malloy that should he seek to address the injustice of Walgreen Co.'s defrauding, depriving and converting the amount due to Daniel Malloy under the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan" and not surrender his interest in the same, Walgreen Co. could seek re-payment of the Interim Payments.[17]

50. That at all times herein mentioned, Walgreen Co., through its agents acting within the

---

[16] See Exhibit 4 Blumka letter to Dan Malloy of July 14, 2020
[17] See Exhibit 4 Blumka letter to Dan Malloy of July 14, 2020

FILED DATE: 8/14/2020 9:05 AM 2020L008564

scope of their employment, including but not limited to Kristine A. Blumka, Chris Dysinger and Walgreen Co.'s general counsel, knew or should have known that each of the aforesaid material misrepresentations were false and made for the malicious purpose of disadvantageously causing Daniel Malloy to settle a nonexistent dispute regarding his right to the pecuniary benefit; in so doing, Walgreen Co. demonstrated an intention, scheme or device to accomplish the fraud, willful misconduct, malice, wantonness, oppression, or that entire want of care which raises the presumption of conscious indifference to consequences, thereby justifying an award of punitive damages.

51. That as of August 14, 2020, the date of the filing of this lawsuit, under Subsection 4. C. (2), Walgreen Co. presently owes Daniel Malloy a lump sum payment of approximately $2,501,144.00 under Subsection 4. C. (2) of the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan" which sum continues to compound annually at 20%.

52. That at all times herein mentioned, Walgreen Co., acting through its agents, delegates and assigns acting within the scope of their employment, delegation and assignment, owed to Daniel Malloy fiduciary duties of good faith and fair dealing under both common law and Illinois state statutory law,[18] in the administration of the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan," including, inter alia: (1) to deal fairly with Daniel Malloy, (2) to act reasonably and in good faith with Daniel Malloy, (3) to discharge its duties solely in the interests of the participants such as Daniel Malloy and his beneficiaries, (4) to act for the exclusive purpose of providing benefits to participants such as Daniel Malloy and his beneficiaries, (5) to refrain from engaging in transactions that constitute direct or indirect actions adverse to the interests of participants such as Daniel Malloy and his beneficiaries, (6) to refrain from engaging in transactions that constitute a lack of adequate consideration to participants such as Daniel Malloy and his beneficiaries or which deprive participants such as Daniel Malloy of benefits due under such

---

[18] See, inter alia, 40 ILCS 5/1-101.2 et seq.

FILED DATE: 8/14/2020 9:05 AM    2020L008564

compensation plans, (7) to refrain from transactions that result in a pecuniary benefit to the fiduciary, Walgreen Co., and (8) to exercise reasonable care to prevent others from breaching these fiduciary duties in the administration of the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan."

53. That at all times herein mentioned, the common law and Illinois statutory law[19] recognizes that the breaches of fiduciary duties are punishable using the legal modalities of tort law and/or criminal law.

54. That on or about July 14, 2020, notwithstanding the aforesaid duties, Walgreen Co., maliciously, wrongfully, intentionally, willfully, wantonly, with an entire want of care, or with a totality of circumstances demonstrating a scheme or device to accomplish a fraud, denied benefits due and owing to Daniel Malloy under the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan," breaching its duties to Daniel Malloy in one or more of the following ways:

(1) failed to deal fairly with Daniel Malloy,

(2) failed to act reasonably and in good faith with Daniel Malloy,

(3) failed to discharge its duties solely in the interests of the participants such as Daniel Malloy and his beneficiaries,

(4) failed to act for the exclusive purpose of providing benefits to participants such as Daniel Malloy and his beneficiaries,

(5) failed to refrain from engaging in transactions that constitute direct or indirect actions adverse to the interests of participants such as Daniel Malloy and his beneficiaries,

(6) failed to refrain from engaging in transactions that constitute a lack of adequate consideration to participants such as Daniel Malloy and his beneficiaries or which deprive participants such as Daniel Malloy of benefits due under such compensation plans,

(7) failed to refrain from transactions that result in a pecuniary benefit to the fiduciary,

---

[19] Se, inter alia, 40 ILCS 5/1-107, 40 ILCS 5/1-108 and 40 ILCS 5/1-110

FILED DATE: 8/14/2020 9:05 AM    2020L008564

Walgreen Co.,

(8) failed to exercise reasonable care to prevent others from breaching these fiduciary duties in the administration of the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan." and

(9) conspired with a scheme or device to accomplish a fraud,

(10) otherwise defrauded and deprived Daniel Malloy of the payments Daniel Malloy was entitled to under the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan," and converted those funds from Daniel Malloy's benefit to the benefit of the Walgreen Co.

55. That as a direct and proximate result of Walgreen Co.'s breach of fiduciary duties, Daniel Malloy sustained significant pecuniary injuries, including, but not limited to emotional distress as well as the tortuous interference with his protected property interest in the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan."

WHEREFORE, Plaintiff, DANIEL MALLOY, demands judgment against Defendants, WALGREEN CO. for compensatory damages in an amount in excess of TWO MILLION FIVE HUNDRED THOUSAND ($2,500,000.00) DOLLARS.

Further, Plaintiff reserves the right to request the right to amend the ad damnum of Count I to allow for a prayer for relief for a claim for punitive damages pursuant to 735 ILCS 5/2-604.1.[20]

---

[20] § 2-604.1. Pleading of punitive damages. In all actions on account of bodily injury or physical damage to property, based on negligence, or product liability based on any theory or doctrine, where punitive damages are permitted no complaint shall be filed containing a prayer for relief seeking punitive damages. However, a plaintiff may, pursuant to a pretrial motion and after a hearing before the court, amend the complaint to include a prayer for relief seeking punitive damages. The court shall allow the motion to amend the complaint if the plaintiff establishes at such hearing a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages. Any motion to amend the complaint to include a prayer for relief seeking punitive damages shall be made not later than 30 days after the close of discovery. A prayer for relief added pursuant to this Section shall not be barred by lapse of time under any statute prescribing or limiting the time within which an action may be brought or right asserted if the time prescribed or limited had not expired when the original pleading was filed.

FILED DATE: 8/14/2020 9:05 AM   2020L008564

## COUNT II – Fraud and Deceit

1-55.  Plaintiff, DANIEL MALLOY, restates and realleges paragraphs 1-55 of Count I as paragraphs 1-55 of Count II as if fully set forth herein.

56.  That the aforesaid misrepresentations by Walgreen Co., through its agents who at all times was acting within the scope of their employment, to Daniel Malloy were known to Walgreen Co. to be false, were believed by Walgreen Co. to be false, or were made in reckless disregard as to whether the same were true or false.

57.  That the aforesaid misrepresentations by Walgreen Co., through its agents who at all times was acting within the scope of their employment, to Daniel Malloy were untrue statements of material fact and made to induce Daniel Malloy to surrender or forego his rights to money owed to him under the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan."

58.  That - not suspecting that the company he had worked at for over sixteen years was intentionally defrauding him and converting the money owed to him to the benefit of Walgreen Co., Daniel Malloy believed and relied upon Ms. Blumka's misrepresentations.

59.  That Daniel Malloy sustained damages as the result of his reliance when Walgreen Co. reneged on Walgreen Co.'s promise to pay Dan Malloy the principal of his deferral amounts payment accrued at the interest rate found in the provisions of Subsection 4. C. (2) of the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan," and/or when Walgreen Co. welched on the contractual deal it made with the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan."

60.  That as a direct and proximate result of Walgreen Co.'s fraud and deceit, Daniel Malloy sustained significant pecuniary injuries, including, but not limited to emotional distress as well as the tortuous interference with his protected property interest in the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan."

WHEREFORE, Plaintiff, DANIEL MALLOY, demands judgment against Defendants,

FILED DATE: 8/14/2020 9:05 AM    2020L008664

WALGREEN CO. for compensatory damages in an amount in excess of TWO MILLION FIVE HUNDRED THOUSAND ($2,500,000.00) DOLLARS.

Further, Plaintiff reserves the right to request the right to amend the ad damnum of Count II to allow for a prayer for relief for a claim for punitive damages pursuant to 735 ILCS 5/2-604.1.[21]

## COUNT III – Conversion

1-60.  Plaintiff, Daniel Malloy, restates and realleges paragraphs 1-60 of Count II as paragraphs 1-60 of Count III as if fully set forth herein.

61.  That, by the aforesaid actions and inactions, Walgreen Co. has taken an unauthorized and wrongful assumption, control, dominion or ownership of the money due and owing to Daniel Malloy under the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan."

62.  That Daniel Malloy has a protected property interest in money due to Daniel Malloy under the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan," and he has right to the immediate possession of that property interest that is absolute and unconditional.

63.  That Daniel Malloy demands immediate possession of the property interest, to wit, the money owed to him under the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan."

64.  That as a direct and proximate result of Walgreen Co.'s conversion, Daniel Malloy

---

[21] § 2-604.1.  **Pleading of punitive damages.  In all actions on account of bodily injury or physical damage to property, based on negligence, or product liability based on any theory or doctrine, where punitive damages are permitted no complaint shall be filed containing a prayer for relief seeking punitive damages.  However, a plaintiff may, pursuant to a pretrial motion and after a hearing before the court, amend the complaint to include a prayer for relief seeking punitive damages.  The court shall allow the motion to amend the complaint if the plaintiff establishes at such hearing a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages.  Any motion to amend the complaint to include a prayer for relief seeking punitive damages shall be made not later than 30 days after the close of discovery.  A prayer for relief added pursuant to this Section shall not be barred by lapse of time under any statute prescribing or limiting the time within which an action may be brought or right asserted if the time prescribed or limited had not expired when the original pleading was filed.**

FILED DATE: 8/14/2020 9:05 AM   2020L008564

sustained significant pecuniary injuries, including, but not limited to emotional distress as well as the tortuous interference with his protected property interest in the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan."

WHEREFORE, Plaintiff, DANIEL MALLOY, demands judgment against Defendants, WALGREEN CO. for compensatory damages in an amount in excess of TWO MILLION FIVE HUNDRED THOUSAND ($2,500,000.00) DOLLARS.

Further, Plaintiff reserves the right to request the right to amend the ad damnum of Count III to allow for a prayer for relief for a claim for punitive damages pursuant to 735 ILCS 5/2-604.1.[22]

## COUNT IV – Wage Payment and Collection Act

1-64. Plaintiff, Daniel Malloy, restates and realleges paragraphs 1-64 of Count III as paragraphs 1-64 of Count IV as if fully set forth herein.

65. That at all times relevant hereto, Walgreen Co. was the employer of Daniel Malloy under the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, et seq.

66. That at all times relevant hereto, Daniel Malloy was the employee of Walgreen Co. under the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, et seq.

67. That Illinois Wage Payment and Collection Act, 820 ILCS 115/14, states in relevant part as follows:

---

[22] **§ 2-604.1. Pleading of punitive damages. In all actions on account of bodily injury or physical damage to property, based on negligence, or product liability based on any theory or doctrine, where punitive damages are permitted no complaint shall be filed containing a prayer for relief seeking punitive damages. However, a plaintiff may, pursuant to a pretrial motion and after a hearing before the court, amend the complaint to include a prayer for relief seeking punitive damages. The court shall allow the motion to amend the complaint if the plaintiff establishes at such hearing a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages. Any motion to amend the complaint to include a prayer for relief seeking punitive damages shall be made not later than 30 days after the close of discovery. A prayer for relief added pursuant to this Section shall not be barred by lapse of time under any statute prescribing or limiting the time within which an action may be brought or right asserted if the time prescribed or limited had not expired when the original pleading was filed.**

FILED DATE: 8/14/2020 9:05 AM   2020L008564

```
(820 ILCS 115/14) (from Ch. 48, par. 39m-14)
    Sec. 14. (a) Any employee not timely paid wages, final
compensation, or wage supplements by his or her employer as
required by this Act shall be entitled to recover through a
claim filed with the Department of Labor or in a civil action,
but not both, the amount of any such underpayments and damages
of 2% of the amount of any such underpayments for each month
following the date of payment during which such underpayments
remain unpaid. In a civil action, such employee shall also
recover costs and all reasonable attorney's fees.
    (a-5) In addition to the remedies provided in subsections
(a), (b), and (c) of this Section, any employer or any agent
of an employer, who, being able to pay wages, final
compensation, or wage supplements and being under a duty to
pay, wilfully refuses to pay as provided in this Act, or
falsely denies the amount or validity thereof or that the same
is due, with intent to secure for himself or other person any
underpayment of such indebtedness or with intent to annoy,
harass, oppress, hinder, delay or defraud the person to whom
such indebtedness is due, upon conviction, is guilty of:
        (1) for unpaid wages, final compensation or wage
    supplements in the amount of $5,000 or less, a Class B
    misdemeanor; or
        (2) for unpaid wages, final compensation or wage
    supplements in the amount of more than $5,000, a Class A
    misdemeanor.
    Each day during which any violation of this Act continues
shall constitute a separate and distinct offense.
```

68. That at all times relevant hereto, Walgreen Co. had a duty to timely pay Daniel Malloy under the terms of the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan."

69. That on July 14, 2020, and each day thereafter, Walgreen Co. violated Illinois Wage Payment and Collection Act, 820 ILCS 115/1 et seq. in failing to make timely and appropriate payments under the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan."

70. That as a direct and proximate result of Walgreen Co. violation of the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, et seq., Daniel Malloy sustained significant pecuniary injuries, including, but not limited to emotional distress, underpayments, as well as the tortuous interference with his protected property interest in the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan."

19

FILED DATE: 8/14/2020 9:05 AM    2020L008664

WHEREFORE, Plaintiff, DANIEL MALLOY, demands judgment against Defendants, WALGREEN CO. for compensatory damages in an amount in excess of TWO MILLION FIVE HUNDRED THOUSAND ($2,500,000.00) DOLLARS, prejudgment interest, attorneys' fees and costs.

Further, Plaintiff reserves the right to request the right to amend the ad damnum of Count I to allow for a prayer for relief for a claim for punitive damages pursuant to 735 ILCS 5/2-604.1.[23]

## COUNT V – Breach of Contract

1-70.  Plaintiff, Daniel Malloy, restates and realleges paragraphs 1-70 of Count IV as as paragraphs 1-70 of Count V as if fully set forth herein.

71.  That, in depriving Daniel Malloy of money due him under "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan" and converting the money to the benefit of Walgreen Co. and detriment of Daniel Malloy, Walgreen Co. violated and breached the terms of the contract, including, but not limited to, the terms of Subsection 4. A. (2) a. and/or Subsection 4. C. (2) of the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan."

72.  That as a direct and proximate result of Walgreen Co. breach of the contract terms of the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan," Daniel Malloy sustained significant pecuniary injuries, including, but not limited to underpayments, as well

---

[23] § 2-604.1.  **Pleading of punitive damages.  In all actions on account of bodily injury or physical damage to property, based on negligence, or product liability based on any theory or doctrine, where punitive damages are permitted no complaint shall be filed containing a prayer for relief seeking punitive damages.  However, a plaintiff may, pursuant to a pretrial motion and after a hearing before the court, amend the complaint to include a prayer for relief seeking punitive damages.  The court shall allow the motion to amend the complaint if the plaintiff establishes at such hearing a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages.  Any motion to amend the complaint to include a prayer for relief seeking punitive damages shall be made not later than 30 days after the close of discovery.  A prayer for relief added pursuant to this Section shall not be barred by lapse of time under any statute prescribing or limiting the time within which an action may be brought or right asserted if the time prescribed or limited had not expired when the original pleading was filed.**

as the tortuous interference with his protected property interest in the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan."

WHEREFORE, Plaintiff, DANIEL MALLOY, demands judgment against Defendants, WALGREEN CO. for compensatory damages in an amount in excess of TWO MILLION FIVE HUNDRED THOUSAND ($2,500,000.00) DOLLARS, specific performance, assumpsit, and restitution.

//s// Christopher Patrick Ford

Christopher Patrick Ford

LAW OFFICE OF CHRISTOPHER PATRICK FORD
8 South Michigan Avenue - Suite 3500
Chicago, Illinois 60603
Telephone: 312/372-0505
Facsimile: 312/372-8562
cpfordlaw@sbcglobal.net
#15025

FILED DATE: 8/14/2020 9:05 AM    2020L008564

STATE OF ILLINOIS    )                                                                 #15025

COUNTY OF COOK    )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

DANIEL MALLOY,                       )

                                  )

                 Plaintiffs,      )

v.                               )     No.

                                  )

WALGREEN CO., a corporation,     )     **Plaintiff Demands a**

                                  )     **Trial by Jury**

                 Defendant.     )

### Rule 222 certification

Pursuant to Supreme Court Rule 222, the undersigned counsel hereby certifies, under Section 1-

109 of the Code of Civil Procedure, that the damages sought in the matter of <u>Malloy v. Walgreen Co.</u>, are

in excess of the jurisdictional amount of for the Law Division.

*//s// Christopher Patrick Ford*

Christopher Patrick Ford

LAW OFFICE OF CHRISTOPHER PATRICK FORD
8 South Michigan Avenue - Suite 3500
Chicago, Illinois 60603
Telephone: 312/372-0505
Facsimile: 312/372-8562
cpfordlaw@sbcglobal.net
#15025

FILED DATE: 8/14/2020 9:05 AM  2020L008564

FILED DATE: 8/14/2020 9:05 AM  2020L008564

Exhibit 1

### Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan

Walgreen Co. (the "employer") hereby establishes a non-qualified deferred compensation program for certain of its employees as described herein. The following shall constitute the terms and conditions of the Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan (the "Plan"), effective January 1, 1988:

1. <u>Administration</u>. Full power and authority to construe, interpret and administer the Plan shall be vested in the Compensation Committee of the Board of Directors (the "Committee"). The Committee shall have the authority to make determinations provided for or permitted to be made under the Plan, to interpret the Plan, and to promulgate such rules and regulations, if any, as the Committee considers necessary and appropriate for the implementation of the Plan.

2. <u>Eligibility and Participation</u>. Only those persons who are employed at Salary Grade 14 and its equivalent or above as of December 31, 1987 shall be eligible to become a participant in the Plan. An eligible employee shall become a participant upon the execution of an irrevocable election under the Plan and the acceptance of the election by the Committee.

3. <u>Deferred Compensation Account</u>.

   A. Each participant shall make an irrevocable election in writing of the amount of compensation to be deferred under the Plan (the "deferral

FILED DATE: 8/14/2020 9:05 AM   2020L008564

amount"). Such amount shall not be in excess of fifteen percent (15%) of the participants calendar year 1988 base salary, and shall be in increments of no less than $1,000.00 (one thousand dollars). The election shall be made prior to January 1, 1988 and shall be for the period January 1, 1988 through December 31, 1988. The deferral amount shall be reduced in substantially equal amounts from the base salary otherwise periodically payable to the participant during the period January 1, 1988 through December 31, 1988, and attributable to service by the participant for the employer after the date of participant's election.

B.  The employer shall establish and maintain a bookkeeping account in the name of each participant, which shall be known as his or her "Deferred Account", and which shall be credited with the amount of compensation deferred, and which shall reflect the accumulated value of the deferral amount. The accumulated value of the deferral amount shall equal the amount arrived at by increasing the deferral account balance by assumed simple interest compounded annually but credited as of the last day of each calendar month, calculated from January 1, 1988. Amounts paid to or on behalf of the participant or his beneficiary pursuant to this Plan, shall be deducted from the account balance as of the first day of the month in which such payment is made. The rate to be used in determining the accumulated value of the deferral amount shall be that rate specified in the Plan paragraph under which payment is to be made.

FILED DATE: 8/14/2020 9:05 AM   2020L008564

C.   The participant's Deferred Account shall at all times be reflected on the employer's books in accordance with generally accepted accounting practices as a general unsecured and unfunded obligation of the employer and the Plan shall not give any person any right or security interest in any asset of the employer nor shall it imply any trust or segregation of assets by the employer.  The participant's Deferred Account shall be distributed from the general assets of the employer.

4.   Time and Manner of Payment.  The participants' Deferred Accounts shall be distributed as follows:

A.   Installment Payments

(1)  A participant shall be entitled to fifteen (15) equal annual installment payments commencing at the January 1 of the year following his or her attainment of age sixty-five (65) or as soon as practicable thereafter, if one of the following conditions is met:

a.   the participant remains in the continuous employ of the employer during the period from January 1, 1988 until the Participant reaches age sixty-five (65); or

b.   the participant retires after a period of continuous employment beginning on or before January 1, 1988.

(2)  A participant who attained age fifty-five (55) as of January 1, 1988, shall elect, at the time of making the deferral election pursuant to Paragraph 3A, to receive installment payments in one of the following manners:

a.   fifteen (15) equal annual installments as described in paragraph (1) above; or

3

FILED DATE: 8/14/2020 9:05 AM   2020L008664

b.   ten (10) equal annual installments commencing at the

January 1 of the year following his or her attainment of age

seventy (70), or as soon as practicable thereafter.

Installment payments shall be calculated to amortize fully the accumulated

value of the deferral amount over the payment period.  For purposes of this

Subsection A, the rate to be credited in the calculation of the accumulated

value of the deferral amount shall be based upon the participant's age at the

time of deferral as reflected in Schedule A of the Plan.

B.   **Interim Payments**

(1)  Effective January 1, 1995, or as soon as practicable thereafter,

a participant shall be entitled to a lump sum payment in an amount

equal to the amount deferred under Paragraph 3 of this Plan if one of

the following conditions is met:

a.   the participant has remained in the continuous employ of

the employer during the period beginning January 1, 1988 and

ending January 1, 1995 and is not receiving Installment

Payments pursuant to Subsection A; or

b.   the participant retires after a period of continuous

employment from January 1, 1988 and is not receiving

Installment Payments pursuant to Subsection A.

(2)  Effective January 1, 1996, or as soon as practicable thereafter,

a participant shall be entitled to a lump sum payment in an amount

equal to the amount deferred under Paragraph 3 of this Plan if one of

the following conditions is met:

a.   The participant has remained in the continuous employ of

the employer during the period beginning January 1, 1988 and

ending January 1, 1996 and is not receiving Installment

Payments pursuant to Subsection A; or

4

FILED DATE: 8/14/2020 9:05 AM    2020L008564

    b.    the participant retires after a period of continuous employment from January 1, 1988 and is not receiving Installment Payments pursuant to Subsection A.

(3) Effective January 1, 1997, or as soon as practicable thereafter, a participant shall be entitled to a lump sum payment in an amount equal to the amount deferred under Paragraph 3 of the Plan if one of the following conditions is met:

    a.    The participant has remained in the continuous employ of the employer during the period beginning January 1, 1988 and ending January 1, 1997 and is not receiving Installment Payments pursuant to Subsection A; or

    b.    the participant retires after a period of continuous employment from January 1, 1988 and is not receiving Installment Payments pursuant to Subsection A.

(4) Effective January 1, 1998, or as soon as practicable thereafter, a participant shall be entitled to a lump sum payment in an amount equal to the amount deferred under Paragraph 3 of the Plan if one of the following conditions is met:

    a.    The participant has remained in the continuous employ of the employer during the period beginning January 1, 1988 and ending January 1, 1998 and is not receiving Installment Payments pursuant to Subsection A; or

    b.    the participant retires after a period of continuous employment from January 1, 1988 and is not receiving Installment Payments pursuant to Subsection A.

Payments under Subsections B(1)-B(4), shall be debited from the participants deferral account as of the first day of the month in which payment is made.

FILED DATE: 8/14/2020 9:05 AM   2020L008564

C.   Payment Upon Termination

(1)  A participant who voluntarily terminates his employment with the
employer prior to retirement shall receive, as soon as practicable
after such termination, a lump sum payment in the amount of the
accumulated value of the Deferral Amount.  For purposes of this
Paragraph 4, Subsection C(1) the rate to be credited in the calcula-
tion of the accumulated value of the deferral amount shall be ten
percent (10%).

 (2)  A participant whose employment with the employer is involuntar-
ily terminated by the employer prior to the participant's retirement
for reasons other than those described in Sections 5 and 6 below,
shall receive, as soon as practicable after such termination, a lump
sum payment in the amount of the accumulated value of the deferral
amount.  For purposes of this Paragraph 4, Subsection C(2), the rate
to be credited in the calculation of the accumulated value of the
deferral amount shall be twenty percent (20%).

For purposes of this Paragraph 4, retirement shall mean leaving the active
employ of the employer at or after age sixty-five (65), or after at least
ten (10) years of service and at least age fifty-five (55), or for reason of
disability as described in Paragraph 9 of the Plan.

5.   Non-Competition.  Notwithstanding any other provision of this Plan, if the
Committee at any time determines that participant, without having obtained
the prior written consent of the Committee or its designee, has engaged in
competition with the employer either during the term of his employment
with the employer and continuing throughout such period thereafter that

FILED DATE: 8/14/2020 9:05 AM 2020L008564

participant is entitled to receive payments pursuant to this Plan, the sole amount payable to participant hereunder shall be a lump sum payment of the accumulated value of the deferral amount, payable as soon as practicable after such determination. For purposes of this Paragraph 5, the simple rate of interest applied to determine the accumulated value of the deferral amount shall be two percent (2%). "Competition with the Employer" shall mean engaging, within any geographical area or market served by the employer and without the employer's written consent, in the provision of goods or services, or in any other business activity of a type offered or engaged in by the employer, on participant's own behalf or on behalf of another business enterprise while employed by the employer or within 60 months of participant's termination of employment with the employer.

6.  Dishonest Conduct.  Notwithstanding any other provision of this Plan, if participant's employment with the employer is terminated at any time for reason of dishonest or fraudulent conduct injurious to the employer, the sole amount payable to or on behalf of participant hereunder shall be a lump sum payment of the accumulated value of the participant's deferral amount, payable as soon as practicable after such termination of employment.  For purposes of this Paragraph 6, the simple rate of interest to be credited in the calculation of the accumulated value of the deferral amount shall be zero percent (0%).

7.  Payment Upon Death of Participant

    A.  If participant dies after annual payments have become payable as provided in Paragraph 4, Subsection A hereof, but prior to receiving any or all annual installment payments due participant pursuant to

FILED DATE: 8/14/2020 9:05 AM 2020L008564

Paragraph 4, Subsection A, the employer shall pay any such unpaid annual payments to the participant's beneficiary, commencing with the next annual payment due following the date of participant's death.

B.   If participant dies after retirement as provided in Paragraph 4 hereof, but prior to receiving any or all interim payments due participant pursuant to Paragraph 4, Subsection B, the employer shall pay any such unpaid interim payments to the participant's beneficiary commencing with the next interim payment due following the date of participant's death.

C.   If participant dies while employed by the employer, but prior to retirement as provided in Paragraph 4 hereof, no further interim payments or annual installments pursuant to Paragraph 4, Subsections A and B shall be paid by the employer after the date of the participant's death, but the employer shall, as soon as practicable after participant's death, pay to the participant's beneficiary, in a lump sum, the accumulated value of the deferral amount. For purposes of this Paragraph 7, the rate to be credited in the calculation of the accumulated value of the deferral amount shall be twenty percent (20%).

8.   **Beneficiary Designation**.  A participant may, from time to time designate any legal or natural person or persons (who may be designated contingently or successively) to whom payments are to be made if participant dies before receiving payment of all amounts due hereunder, by signing a form approved by the Committee.  A beneficiary designation form shall be effective only after the signed form is filed with the employer while participant is alive.  A properly filed designation shall cancel all

beneficiary designation forms signed and filed earlier. If participant fails to designate a beneficiary as provided above, or if all designated beneficiaries of participant die before participant or before complete payment of all amounts due hereunder, the employer, in its discretion, may pay the unpaid amounts to one or more of such participant's relatives by blood, adoption or marriage in any manner permitted by law which the Committee considers to be appropriate, including but not limited to payment to the legal representative or representatives of the estate of the last to die of participant and participant's designated beneficiaries.

9. <u>Disability</u>. If participant's employment with the employer is terminated prior to participant's retirement as provided in Paragraph 4 hereof by reason of participant's disability, participant's employment with the employer, for purposes of this Plan, shall be deemed to continue until participant's retirement as provided in Paragraph 4 and the provisions of this Plan shall be applicable to such participant to the same extent as if participant were, in fact, employed by the employer during that period. However, if such termination of employment occurs prior to January 1, 1989, as a condition of the application of this Paragraph, participant shall have any compensation payable to him from the employer (either directly or through employer-provided disability compensation) reduced by an amount equal to the balance of any deferred amount the participant elected under Paragraph 3 hereof which has not been credited to the participant's account as of the time of disability. For purposes of this Section, "disability" shall mean any total and permanent disability which would prevent participant's return to active employment, as determined by the Committee.

FILED DATE: 8/14/2020 9:05 AM   2020L008564

10. **Facility of Payment**.  If the employer has, for any reason, doubt as to the proper person to whom to make payment, the employer may withhold payment until instructed by a final order of a court of competent jurisdiction. Any payment hereunder made by the employer in good faith shall fully discharge the employer from its obligation with respect to such payment.

11. **Insurance**.  The employer may, in its sole discretion, purchase a policy or policies of insurance on the life of participant or disability insurance with respect to participant, the cash value, if any, and proceeds of which may, but need not, be used by the employer to satisfy part or all of its obligations hereunder.  The employer will be the owner of any such policies and neither participant nor any other person or entity claiming through participant shall have any ownership rights in such policies or any proceeds thereof.  Participant, as a condition of receiving any benefits hereunder, on behalf of himself or any person or entity claiming through him, shall cooperate with the employer in obtaining any such insurance that the employer desires to purchase by submitting to such physical examinations, completing such forms, and making such records available as may be required by the employer from time to time.

12. **Effect on Other Benefits**.  The Deferral Amount shall be included in participant's 1988 compensation for purpose of calculating participant's bonuses and awards under any incentive or similar compensation plan or program of the employer, insurance, and other employee benefits, except that in accordance with the terms of any plan qualified under Section 401 of the Internal Revenue Code maintained by the employer, the amount deferred under Paragraph 3 shall not be included as 1988 calendar year

FILED DATE: 8/14/2020 9:05 AM    2020L008564

compensation in calculating participant's benefits or contributions by or
on behalf of participant under such plan or plans.  Payments shall be
excluded from compensation in years paid for purposes of calculating
participants bonuses and awards under any incentive or similar compensa-
tion plan or program of the employer, insurance, and other employee
benefits, except that in accordance with the terms of any plan qualified
under Section 401 of the Internal Revenue Code maintained by the employer,
payments to active employees shall be included as compensation in the year
paid.

13.   Non-Alienation.  Neither participant nor anyone claiming through him shall
have any right to commute, sell, assign, transfer or otherwise convey the
right to receive any payments hereunder, which payments and the rights
thereto hereby are expressly declared to be non-assignable and non-trans-
ferrable, nor shall any such right to receive payments hereunder be
subject to the claims of creditors of participant or anyone claiming
through him or to any legal, equitable, or other proceeding or process for
the enforcement of such claims.

14.   Tax Withholding.  Notwithstanding the provisions of Section 13, the
employer may withhold from any payment made by it under the Plan such
amount or amounts as may be required for purposes of complying with the
tax withholding or other provisions of the Internal Revenue Code or the
Social Security Act or any state income tax act or for purposes of paying
any estate, inheritance or other tax attributable to any amounts payable
hereunder.

FILED DATE: 8/14/2020 9:05 AM   2020L008564

15. <u>Non-Secured Promise</u>.  The rights under this Plan of participant and any person or entity claiming through him shall be solely those of an unsecured, general creditor of the employer.  Any insurance policy or other asset acquired or held by the employer shall not be deemed to be held by the employer for or on behalf of participant, or any other person, or to be security for the performance of any obligations hereunder of the employer, but shall, with respect to this Plan, be and remain a general, unpledged, unrestricted asset of the employer.

16. <u>Independence of Plan</u>.  Except as otherwise expressly provided herein, this Plan shall be independent of, and in addition to, any other employment agreement or employment benefit agreement or plan or rights that may exist from time to time between the parties hereto.  This Plan shall not be deemed to constitute a contract of employment between the parties hereto, nor shall any provision hereof restrict the right of the employer to discharge participant, or restrict the right of participant to terminate his employment with the employer.

17. <u>Paragraph Headings</u>.  The Paragraph headings used in this Plan are for convenience of reference only and shall not be considered in construing this Plan.

18. <u>Responsibility for Legal Effect</u>.  Neither party hereto makes any representations or warranties, express or implied, or assumes any responsibility concerning the legal, tax, or other implications or effects of this Plan.

FILED DATE: 8/14/2020 9:05 AM  2020L008564

19. <u>Committee Determinations Final</u>. Each determination provided for in the Plan shall be made in the absolute discretion of the Committee. Any such determinations shall be binding on all persons.

.20. <u>Amendment</u>. The employer may in its sole discretion amend the Plan from time to time. No such amendment shall alter a participant's right to receive a payment due under the terms of the Plan at the date of amendment.

21. <u>Termination at the Employer's Option</u>. Notwithstanding any other provision of this Plan, the employer may terminate this Plan at any time if the Committee, in its sole and absolute discretion, determines that any change in federal or state law, or judicial or administrative interpretation thereof, has materially affected the employer's cost of providing the benefits otherwise payable under this Plan, or for any other reason whatsoever. Upon such termination, the sole amount payable to participant shall be a lump sum payment, as soon as practicable after such termination, of the accumulated value of the deferral amount. For purposes of this Paragraph 21, the rate to be credited in the calculation of the accumulated value of the deferral amount shall be twenty percent (20%).

22. <u>Successors, Acquisitions, Mergers, Consolidations</u>. The terms and conditions of this Plan and each Deferral Election shall inure to the benefit of and bind Walgreen Co. the participants, their successors, assigns, and personal representatives. If substantially all of the assets of the employer are acquired by another corporation or entity or if the employer

FILED DATE: 8/14/2020 9:05 AM   2020L008564

is merged into, or consolidated with, another corporation or entity, then the obligations created hereunder shall be obligations of the successor corporations or entity.  Further, if the employment of any participant were to be terminated during a period of five (5) years following such an acquisition, merger, or consolidation for reasons other than dishonest conduct, such termination would be treated as retirement for the purpose of this Plan.

23.  <u>Controlling Law</u>.  The Plan shall be construed in accordance with the laws of the State of Illinois.

FILED DATE: 8/14/2020 9:05 AM   2020L008564

# SCHEDULE A

## TO THE

### WALGREEN CO. EXECUTIVE'S DEFERRED

### FEE/CAPITAL ACCUMULATION PLAN

| Age at Time of Deferral | Annual Interest Earned by Deferral |
|---|---|
| To age 35 | 19.00% |
| age 36 | 19.14% |
| age 37 | 19.30% |
| age 38 | 19.50% |
| age 39 | 19.70% |
| age 40 | 19.94% |
| age 41 | 20.20% |
| age 42 | 20.40% |
| age 43 | 20.60% |
| age 44 | 20.80% |
| age 45 | 21.00% |
| age 46 | 21.20% |
| age 47 | 21.40% |
| age 48 | 21.60% |
| age 49 | 21.80% |
| age 50 | 22.00% |
| age 51 | 22.20% |
| age 52 | 22.40% |
| age 53 | 22.60% |
| age 54 | 23.00% |
| age 55 | 23.00% |
| age 56 | 23.20% |
| age 57 | 23.40% |
| age 58 | 23.60% |
| age 59 | 23.80% |
| age 60 and over | 24.00% |

FILED DATE: 8/14/2020 9:05 AM   2020L008564

WALGREEN COMPANY
1988 DEFERRED INCOME PLAN

PERSONAL BENEFIT STATEMENT

FOR

D.J. MALLOY

This statement shows your normal retirement payments beginning at age 65.
Payments will begin on the Plan Anniversary date following retirement.


Plus

Interim payments to be received in years 8, 9, 10 and 11 if you were
age 54 or less on the Plan Commencement Date.

| | |
|---|---|
| Plan Year | 01/01/1988 |
| Date of Birth | 05/13/1956 |
| Actual Age - 01/01/88 | 31 |
| Date Normal Post-Retirement Payments Begin (plan anniversary following 65th birthday) | 01/01/2022 |

| SALARY DEFERRAL AMOUNT | $ 6,514 |
|---|---|

| PLAN YEAR | INTERIM PAYMENTS |
|---|---|
| 1995 | $ 6,514 |
| 1996 | $ 6,514 |
| 1997 | $ 6,514 |
| 1998 | $ 6,514 |

| | INSTALLMENT PAYMENTS |
|---|---|
| AGE 65 | $ 29,454* |
| TOTAL PAYOUT | $ 467,866 |

The above payments are not guaranteed and are subject to the provisions
of the Plan Agreement and the Plan Document.

*15 Year Certain, Post-retirement payments start on the anniversary
Commencement Date following age 65.

*Walgreens*

| Exhibit 2 |
|---|

**Walgreen Co. Executive Deferred
Compensation/Capital Accumulation Plan**

# Account Summary

Reporting Period:
**1/1/2019  - 12/31/2019**



*FILED DATE: 8/14/2020 9:05 AM  2020L008564*

## D. MALLOY

732 THORNAPPLE DRIVE
NAPERVILLE IL   60540

**Date of Birth:** 05/13/1956
**Date of Hire:** 05/18/1972

**Plan Information**

The rates to be credited, payment amounts and all rights under the Plan are subject to the Plan Provisions, the terms of which are controlling and which are subject to amendment or termination. The projections contained in this statement are based on the assumption that Plan requirements for such payments are satisfied.

**Payment Summary**

| Plan Date | Amount Deferred | Target Interest Rate | Interim Payments | Installment Payments | Projected Total Payout | In Service Death Benefit | Voluntary Separation Payout |
|---|---|---|---|---|---|---|---|
| 01/01/1988 | 6,514.00 | 19.00% | 6,514.00 | 29,454.00 | 467,866.00 | N/A | N/A |
| Totals: | 6,514.00 | | 6,514.00 | 29,454.00 | 467,866.00 | | |

**Distribution Summary**

| Projected Payment Date | Plan Date | Projected Payment Amounts | Annual Total | Plan Payments To Date |
|---|---|---|---|---|
| 01/01/1995 | 01/01/1988 | | | 6,514.00 |
| 01/01/1996 | 01/01/1988 | | | 6,514.00 |
| 01/01/1997 | 01/01/1988 | | | 6,514.00 |
| 01/01/1998 | 01/01/1988 | | | 6,514.00 |
| 01/01/2022 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2023 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2024 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2025 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2026 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2027 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2028 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2029 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2030 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2031 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2032 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2033 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2034 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2035 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2036 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| Totals: | | 441,810.00 | 441,810.00 | 26,056.00 |

| Information |
|---|

 **NEWPORT** GROUP

**Need more information? Please visit us at:**

newportgroup.com

**Or call us toll-free Monday-Friday 8:30am - 8:00pm ET at:**
**1-800-230-3950**

Please verify this financial information and notify your plan sponsor of questions within 30 days of receipt. If you do not notify your plan sponsor, we will assume the information on this statement is correct. Any corrections will be reflected on a subsequent statement.

FILED DATE: 8/14/2020 9:05 AM   2020L008564

# *Walgreens*

**Walgreen Co. Executive Deferred
Compensation/Capital Accumulation Plan**

# Account Summary

**Reporting Period:**
1/1/2018  - 12/31/2018



**D. MALLOY**

732 THORNAPPLE DRIVE
NAPERVILLE IL   60540

**Date of Birth:** 05/13/1956
**Date of Hire:** 05/18/1972

## Plan Information

The rates to be credited, payment amounts and all rights under the Plan are subject to the Plan Provisions, the terms of which are controlling
and which are subject to amendment or termination. The projections contained in this statement are based on the assumption that Plan
requirements for such payments are satisfied.

## Payment Summary

| Plan Date | Amount Deferred | Target Interest Rate | Interim Payments | Installment Payments | Projected Total Payout | In Service Death Benefit | Voluntary Separation Payout |
|---|---|---|---|---|---|---|---|
| 01/01/1988 | 6,514.00 | 19.00% | 6,514.00 | 29,454.00 | 467,866.00 | N/A | N/A |
| Totals: | 6,514.00 | | 6,514.00 | 29,454.00 | 467,866.00 | | |

## Distribution Summary

| Projected Payment Date | Plan Date | Projected Payment Amounts | Annual Total | Plan Payments To Date |
|---|---|---|---|---|
| 01/01/1995 | 01/01/1988 | | | 6,514.00 |
| 01/01/1996 | 01/01/1988 | | | 6,514.00 |
| 01/01/1997 | 01/01/1988 | | | 6,514.00 |
| 01/01/1998 | 01/01/1988 | | | 6,514.00 |
| 01/01/2022 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2023 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2024 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2025 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2026 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2027 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2028 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2029 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2030 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2031 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2032 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2033 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2034 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2035 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2036 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| Totals: | | 441,810.00 | 441,810.00 | 26,056.00 |

---

| Information | |
|---|---|
|  | **Need more information?** Please visit us at:<br>newportgroup.com<br>Or call us toll-free Monday-Friday 8:30am - 8:00pm ET at:<br>**1-800-230-3950** |

Please verify this financial information and notify your plan sponsor of questions within 30 days of receipt. If you do not notify your plan sponsor,
we will assume the information on this statement is correct. Any corrections will be reflected on a subsequent statement.

FILED DATE: 8/14/2020 9:05 AM   2020L008564

# *Walgreens*

**Walgreen Co. Executive Deferred
Compensation/Capital Accumulation Plan**

# Account Summary



**Reporting Period:**
**1/1/2017 - 12/31/2017**

**D. MALLOY**
732 THORNAPPLE DRIVE
NAPERVILLE IL  60540

**Date of Birth:** 05/13/1956
**Date of Hire:** 05/18/1972

## Plan Information

The rates to be credited, payment amounts and all rights under the Plan are subject to the Plan Provisions, the terms of which are controlling and which are subject to amendment or termination. The projections contained in this statement are based on the assumption that Plan requirements for such payments are satisfied.

## Payment Summary

| Plan Date | Amount Deferred | Target Interest Rate | Interim Payments | Installment Payments | Projected Total Payout | In Service Death Benefit | Voluntary Separation Payout |
|---|---|---|---|---|---|---|---|
| 01/01/1988 | 6,514.00 | 19.00% | 6,514.00 | 29,454.00 | 467,866.00 | N/A | N/A |
| Totals | 6,514.00 | | 6,514.00 | 29,454.00 | 467,866.00 | | |

## Distribution Summary

| Projected Payment Date | Plan Date | Projected Payment Amounts | Annual Total | Plan Payments To Date |
|---|---|---|---|---|
| 01/01/1995 | 01/01/1988 | | | 6,514.00 |
| 01/01/1996 | 01/01/1988 | | | 6,514.00 |
| 01/01/1997 | 01/01/1988 | | | 6,514.00 |
| 01/01/1998 | 01/01/1988 | | | 6,514.00 |
| 01/01/2022 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2023 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2024 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2025 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2026 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2027 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2028 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2029 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2030 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2031 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2032 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2033 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2034 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2035 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2036 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| Totals | | 441,810.00 | 441,810.00 | 26,056.00 |

---

## Information



**Need more Information? Please visit us at:**

newportgroup.com

Or call us toll-free Monday-Friday 8:30am - 8:00pm ET at:
1-800-230-3950

Please verify this financial information and notify your plan sponsor of questions within 30 days of receipt. If you do not notify your plan sponsor,
we will assume the information on this statement is correct. Any corrections will be reflected on a subsequent statement.

*Walgreens*

Exhibit 3

Walgreen Co.
102 Wilmot Road
Deerfield, IL 60015

FILED DATE: 8/14/2020 9:05 AM   2020L008564

June 24, 2020

Mr. Daniel Malloy
732 Thornapple Drive
Naperville, IL  60540

Re:   **Walgreen Co. Executive Deferred Compensation/ Capital Accumulation Plan Benefits**

Dear Mr. Malloy:

During a recent review of participant data in the Walgreen Co. Executive Deferred Compensation/ Capital Accumulation Plans, it came to our attention that you have a current benefit balance even though your employment terminated in October, 1988.  Because you did not meet the retirement eligibility criteria at the time of your termination, it appears that your benefit should have been paid in a lump sum upon your termination.

We have no record of any special arrangement that would explain why your balance was not paid to you as a lump sum as soon as practicable after your termination of employment.  Because the timing and circumstances of your termination will impact the calculation of your benefit payments, please contact me at your earliest convenience to discuss whether such an arrangement may exist.

If you do not respond to this request for information by Friday, July 31st, your benefit will be paid to you as a lump sum distribution at the interest rate specified for a voluntary termination and taking into account any interim payments that have already been paid to you from this plan.  I will send a follow-up letter at that time to confirm the exact timing and amount of the benefit distribution.

Please contact me before Friday, July 31st by phone at 1-847-315-1796 or by email at kristine.blumka@walgreens.com.  Thank you for your attention to this request.  Be well!

Sincerely,

*Kris Blumka*

Kristine A. Blumka
Senior Analyst, Retirement Plans

*Walgreens*

Exhibit 4

Walgreen Co.
102 Wilmot Road
Deerfield, IL 60015

FILED DATE: 8/14/2020 9:05 AM   2020L008564

July 14, 2020

Mr. Daniel Malloy
732 Thornapple Drive
Naperville, IL 60540

RE: 1988 Walgreens Executive Deferred Compensation / Capital Accumulation Plan (the "Plan")

Dear Mr. Malloy,

During a recent review of our records and the administration of the Plan, we determined that your Plan benefits were not properly administered based on your actual termination of employment with Walgreens as of October 10, 1988 (your "Termination Date"). The purpose of this letter is to explain the error that occurred in the administration of your benefits under the above-referenced Plan, and the resulting discontinuation of any future Plan payments to you.

Under the terms and conditions of the Plan (a copy of which is enclosed), which were communicated to you at the outset of your participation, Plan benefits are payable as follows:

- Four (4) annual "Interim Payments" equal to your deferred amount ($6,514) in 1995-1998, contingent on you remaining employed through each of the Interim Payment dates, and
- Fifteen (15) annual "Installment Payments" of $29,454, starting at age 65, contingent on your attaining Retirement status.

Retirement status is defined in the Plan as attaining age 55 with at least 10 years of service prior to termination of employment with Walgreens. If a participant does not attain Retirement status, then Plan benefits are payable in one lump-sum payment following termination of employment, based on a fixed interest rate set forth in the Plan.

As you know, your Termination Date was prior to your attainment of age 55, and as such, you did not attain Retirement status under the Plan. It appears that this information was not accurately reflected on our benefit administrator's recordkeeping system at the time. In addition, your Termination Date was prior to the Interim Payment dates listed above, and thus you did not qualify for any of those payments.

FILED DATE: 8/14/2020 9:05 AM   2020L008564



Based on your involuntary termination status under the Plan as of your Termination Date, you were entitled to a termination lump-sum benefit payout in 1988 that should have been $7,527.69, which represents your deferred amount plus interest through your Termination Date. Due to the administrative error in the classification of your status, you were actually paid a total of $29,454.00, which represents the four Interim Payments that were paid to you as of January 1st of 1995, 1996, 1997 and 1998.

Under the circumstances, we are not asking you to repay any portion of what has already been overpaid. However, because you did not attain Retirement status, no annual Installment Payments will be paid to you in the future.

We apologize for late discovery of this error, and we hope you can appreciate the need to rectify this situation going forward. If you have any questions or wish to discuss this matter, please contact me at 847-315-1796.

Sincerely,

Kristine A. Blumka
Senior Analyst, Retirement Plans
Walgreen Co.


Enclosure

cc:     Chris Dysinger
        Director, Retirement Plans and Programs

STATE OF ILLINOIS  )
COUNTY OF COOK   )

FILED
#9/15/2020 2:56 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020L008564

10455373

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

DANIEL MALLOY,                          )
                                        )
                    Plaintiffs,         )
                                        )
v.                                      )      No.  2020 L 008564
                                        )
WALGREEN CO., a corporation,            )
                                        )
                    Defendants.         )

FILED DATE: 9/15/2020 2:56 PM   2020L008564

**Routine Motion For Leave To File
First Amended Complaint At Law**

NOW COMES Plaintiff, DANIEL MALLOY, by and through his attorney, CHRISTOPHER

PATRICK FORD, and moves for leave to file his First Amended Complaint at Law instanter, **adding**

**additional parties,** Newport Group, Inc., and the Walgreen Co. 1988 Executive Deferred

Compensation/Capital Accumulation Plan, and each of them, adding an additional Count VI, and attaching

an additional Exhibit 1A - "Amendment to Executive Deferred Compensation Capital Accumulation Plans.",

**and for summons to issue.**

The proposed First Amended Complaint at Law is attached.


//s// *Christopher Patrick Ford*
Christopher Patrick Ford

LAW OFFICE OF CHRISTOPHER PATRICK FORD
8 South Michigan Avenue - Suite 3500
Chicago, Illinois 60603
Telephone:  312/372-0505
Facsimile:  312/372-8562
cpfordlaw@sbcglobal.net
#15025

FILED DATE: 9/15/2020 2:56 PM   2020L008564

| STATE OF ILLINOIS | ) | #15025 |
| COUNTY OF COOK | ) | |

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, LAW DIVISION

| DANIEL MALLOY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 2020 L 008564 |
| | ) | |
| WALGREEN CO., a corporation, | ) | **Plaintiff Demands a** |
| Newport Group, Inc., a corporation, and | ) | **Trial by Jury** |
| Walgreen Co. 1988 Executive Deferred Compensation/ | ) | |
| Capital Accumulation Plan, | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT AT LAW

NOW COMES Plaintiff, DANIEL MALLOY ("Plaintiff"), and for his claims against

Defendants, WALGREEN CO., a corporation, NEWPORT GROUP, INC., Inc, a corporation, and

WALGREE CO. 1988 EXECUTIVE DEFERRED COMPENSATION/CAPITAL

ACCUMULATION PLAN (collectively, "Defendants"), states as follows:

### COUNT I – Breach of Fiduciary Duty of Good Faith and Fair Dealing

1. Plaintiff is an Illinois resident.

2. Defendant, Walgreen Co. ("Walgreen") is an Illinois Corporation, with its principal place of business in Illinois. Its corporate headquarters are also located in Illinois.

3. Defendant, Newport Group, Inc. ("Newport Group") is a corporation doing business in Illinois as the administrator of the Walgreen Co. 1988 Executive Deferred Compensation/ Capital Accumulation Plan ("the Plan").

4. The Plan was created by Walgreen Co. for certain Walgreen Co. employees.

FILED DATE: 9/15/2020 2:56 PM   2020L008564

5. On or about May 18, 1972, Plaintiff, as a sophomore in high school, began employment with Walgreen as a dishwasher at its restaurant at Woodmar Shopping Center located in Hammond, Indiana. Three months later, he was promoted to short order cook.

6. Upon his graduation from high school, in or about June 1974, Plaintiff was promoted by Walgreen to Assistant Manager at the Walgreen's Restaurant - Downtown Hammond, Indiana location.

7. In or around December 1975, Plaintiff was promoted by Walgreen to General Manager at the Walgreen's Restaurant at the Woodmar Shopping Center located in Hammond, Indiana, which was the Number 2 sales store in Walgreen's South District.

8. In or around December 1977, Plaintiff was promoted by Walgreen to General Manager at Walgreen's Restaurant at the Evergreen Park Plaza in Evergreen Park, Illinois, which was the Number 1 sales store in Walgreen's South District.

9. In or around December 1978, Walgreen made Plaintiff General Manager at Walgreen's Restaurant at the Yorktown Shopping Center in Lombard, Illinois, which was the Number 1 sales store in Walgreen's Western District.

10. In or around June 1980, Walgreen made Plaintiff General Manager of the new Walgreen's Restaurant in St. Charles, Illinois, which, under Plaintiff's leadership, became Walgreen's Number 1 sales and profit store in the Region. While there, Plaintiff was awarded Walgreen's restaurant Manager of the Year in 1981 and 1982.

11. In or about August 1982, Walgreen promoted Plaintiff to District Manager for the Western District, where he oversaw the opening of five new Walgreen's restaurants and was responsible for overseeing a total of eight restaurants. During this period, Plaintiff received numerous awards and, in 1984, he was featured in the Walgreen's Annual Report.

12. In or about August 1987, Walgreen promoted Plaintiff to Director of Food Service Administration in Deerfield, Illinois. In that position, he was responsible for managing division

2

FILED DATE: 9/15/2020 2:56 PM    2020L008564

budgets, capital expenditures and point-of sale systems in all restaurants. He was also responsible for monitoring all personal injury and workman's compensation claims and managing three accounting offices (two in Florida and one in Deerfield, Illinois) that serviced approximately 89 Walgreen's restaurants.

13. On or before January 1, 1988, because Walgreen's Director of Food Service Administration was a Walgreen's Salary Grade 14 employee, Plaintiff qualified for participation in the Plan.[1]

14. On or about January 1, 1988, Walgreen offered Plaintiff participation in the Plan and Plaintiff accepted Walgreen's offer to participate in the Plan.

15. That on or about January 1, 1988, Plaintiff paid the required consideration for participation in the Plan, which was a payment of $6,514.00 deducted, with Plaintiff's agreement, from his paycheck.

16. The Plan provided for annual interest rates for projected payments between 19.00 – 24.00% compounded annually depending upon the age at time of deferral.[2] :

---

[1] See attached Exhibit 1, "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan."
[2] See attached Exhibit 1, p.15.

FILED DATE: 9/15/2020 2:56 PM   2020L008664

**SCHEDULE A**

**TO THE**

**WALGREEN CO. EXECUTIVE'S DEFERRED**

**FEE/CAPITAL ACCUMULATION PLAN**

| Age at Time of Deferral | Annual Interest Earned by Deferral |
|---|---|
| To age 35 | 19.00% |
| age 36 | 19.14% |
| age 37 | 19.30% |
| age 38 | 19.50% |
| age 39 | 19.70% |
| age 40 | 19.94% |
| age 41 | 20.20% |
| age 42 | 20.40% |
| age 43 | 20.60% |
| age 44 | 20.80% |
| age 45 | 21.00% |
| age 46 | 21.20% |
| age 47 | 21.40% |
| age 48 | 21.60% |
| age 49 | 21.80% |
| age 50 | 22.00% |
| age 51 | 22.20% |
| age 52 | 22.40% |
| age 53 | 22.60% |
| age 54 | 23.00% |
| age 55 | 23.00% |
| age 56 | 23.20% |
| age 57 | 23.40% |
| age 58 | 23.60% |
| age 59 | 23.80% |
| age 60 and over | 24.00% |

17. Pursuant to the Plan, the agreed projected payments to Plaintiff were (four Interim Payments once per year from 1995-1998, and fifteen Installment Payments once per year after age 65)[3] :

---

[3] See attached Exhibit 1, p.16.

4

FILED DATE: 9/15/2020 2:56 PM   2020L008564

```
                    WALGREEN COMPANY
                 1988 DEFERRED INCOME PLAN

                 PERSONAL BENEFIT STATEMENT

                          FOR

                      D.J. MALLOY

This statement shows your normal retirement payments beginning at age 65.
Payments will begin on the Plan Anniversary date following retirement.


                          Plus

Interim payments to be received in years 8, 9, 10 and 11 if you were
age 54 or less on the Plan Commencement Date.

     Plan Year                            01/01/1988

     Date of Birth                        05/13/1956

     Actual Age - 01/01/88                31

     Date Normal Post-Retirement Payments Begin    01/01/2022
         (plan anniversary following 65th birthday)

     SALARY DEFERRAL AMOUNT          $    6,514
     ----------------------               ----------


                    PLAN                  INTERIM
                    YEAR                  PAYMENTS
                    ----                  --------

                    1995             $    6,514

                    1996             $    6,514

                    1997             $    6,514

                    1998             $    6,514

                                          INSTALLMENT
                                          PAYMENTS
                                          -----------

           AGE 65                    $    29,454*

           TOTAL PAYOUT              $    467,866

The above payments are not guaranteed and are subject to the provisions
of the Plan Agreement and the Plan Document.

*15 Year Certain, Post-retirement payments start on the anniversary
Commencement Date following age 65.
```

18. Payments due to Plaintiff under the Plan were as follows:

| Projected Payment Date | Projected Payment Amounts |
|---|---|
|  |  |
| January 1, 1995 | $6,514.00 |
| January 1, 1996 | $6,514.00 |
| January 1, 1997 | $6,514.00 |
| January 1, 1998 | $6,514.00 |
| January 1, 2022 | $29,454.00 |

FILED DATE: 9/15/2020 2:56 PM    2020L008564

| | |
|---|---|
| January 1, 2023 | $29,454.00 |
| January 1, 2024 | $29,454.00 |
| January 1, 2025 | $29,454.00 |
| January 1, 2026 | $29,454.00 |
| January 1, 2027 | $29,454.00 |
| January 1, 2028 | $29,454.00 |
| January 1, 2029 | $29,454.00 |
| January 1, 2030 | $29,454.00 |
| January 1, 2031 | $29,454.00 |
| January 1, 2032 | $29,454.00 |
| January 1, 2033 | $29,454.00 |
| January 1, 2034 | $29,454.00 |
| January 1, 2035 | $29,454.00 |
| January 1, 2036 | $29,454.00 |
| | |
| **Total Projected Payments** | **$467,866.00** |

19. Under the provisions of Subsection 4. C. (2) of the Plan, Walgreen was obligated to pay an employee who was involuntarily terminated in the amount of his deferred compensation accumulating at 20% interest compounded annually:

> 4. **Time and Manner of Payment.** The participants' Deferred Accounts shall be distributed as follows:
> C. Payment Upon Termination
> (2) A participant whose employment with the employer is involuntarily terminated by the employer prior to the participant's retirement for reasons other than those described in Sections 5 and 6 below, shall receive, as soon as practicable after such termination, a lump sum payment in the amount of the accumulated value of the deferral amount. For purposes of this Paragraph 4, Subsection C(2), ***the rate to be credited in the calculation of the accumulated value of the deferral amount shall be twenty percent (20%).*** [emphasis added]

20. In or about June 1988, Walgreen sold its Food Service Division, including all Walgreen's restaurants, to the Marriott Corporation.

21. As a consequence of the sale, in or about October 1988, Plaintiff's employment with the Walgreen as its Director of Food Service Administration ended after over sixteen years of continuous employment with Walgreen. Plaintiff continued employment with the Food Service

6

FILED DATE: 9/15/2020 2:56 PM    2020L008564

Division, which had been purchased by the Marriott Corporation, as Director of Food Service Administration - the same role he had when the Food Service Division was owned by Walgreen.

22.  At no time since Plaintiff's employment with Walgreen ended did Walgreen pay Plaintiff the lump sum payment due to him under Subsection 4. C. (2) of the Plan.

23.  Accordingly, from October 1988, and at all times relevant hereto, Plaintiff continued to participate in the Plan, having satisfied all of obligations and responsibilities under the Plan.

24. In January of every year since the initiation of the Plan, Plaintiff received a letter making material representations to him of his projected payments under the Plan; each annual letter acted to ratify the agreement. The attached Exhibit 2 includes the status letters Plaintiff received in January 2018, January 2019, and January 2020.[4]

25. On or about January 1, 1995, Walgreen paid Plaintiff the first payment, in the amount of $6,514.00, due under the terms of the Plan, further ratifying the agreement.[5]

26. On or about January 1, 1996, Walgreen paid Plaintiff the second payment, in the amount of $6,514.00, due under the terms of the Plan, further ratifying the agreement.[6]

27. On or about January 1, 1997, Walgreen paid Plaintiff the third payment, in the amount of $6,514.00, due under the terms of the Plan, further ratifying the agreement.[7]

28. On or about January 1, 1998, Walgreen paid Plaintiff the fourth payment, in the amount of $6,514.00, due under the terms of the Plain, further ratifying the agreement.[8]

29.  That in each of the annual status letters to Plaintiff from the Plan Administrator, Newport Group regarding the payments to Plaintiff, including those in January 2018, January 2019, and January 2020, material representations were made to Plaintiff that each of these payments were

---

[4] See attached Exhibit 2,
[5] See attached Exhibit 1, p. 16 and Exhibit 2
[6] See attached Exhibit 1, p. 16 and Exhibit 2
[7] See attached Exhibit 1, p. 16 and Exhibit 2
[8] See attached Exhibit 1, p. 16 and Exhibit 2

FILED DATE: 9/15/2020 2:56 PM    2020L008664

Interim Payments made to him as agreed under the Plan, further ratifying the agreement.[9]

30.  Plaintiff relied upon each of the aforesaid material representations in his financial and retirement planning.

31. On or about January 1, 2009, the Plan was amended by the "Amendment to Executive Deferred Compensation Capital Accumulation Plans."[10]

32.  Plaintiff qualified for agreed Installment Payments under the Plan when he retired after a period of continuous employment beginning on or before January 1, 1988.[11]

33. Plaintiff is currently 64 years of age.  He will 65 years on May 13, 2021.  Beginning in May, 1972, he had over 16 years of service with Walgreen.

34.  Plaintiff relied upon Walgreen's ongoing and repeated representations that he qualified for compensation under the Plan, including that the four payments he received in 1995-1998 were made pursuant to the Plan, and that he would receive fifteen annual Installment Payments upon reaching 65 years of age.

35.  Other Walgreen employees whose employment ended with the sale of the Walgreen the Food Service Division received their Installment Payments under the Plan.

36.  On or about April 3, 2019, Walgreen slashed its forecasts for 2019 earnings to flat from previous guidance of 7-12 percent for full year earnings for 2019, and announced that Walgreen Co. planned to cut costs by more than $1.5 billion by 2022.

37.  That on or about October 28, 2019, Walgreen Co. announced that Walgreen Co. laid off more than 100 employees at its corporate headquarters in Deerfield, Illinois, that Walgreen Co. cut bonus amounts for store managers, and that Walgreen Co. increased its plans to cut costs to more than $1.8 billion by 2022, from the plan to cut cost by more than $1.5 billion by 2022 announced in April 2019.

---

[9] See attached Exhibit 1, p. 16 and Exhibit 2
[10] See attached Exhibit 1A
[11] See Exhibit 1, including, Subsection 4. A. (1) b.

38. That in the Third Quarter of 2020, Walgreen Co. reported a $1.7 billion dollar GAAP Net Earnings loss, down -266.6% compared to the Third Quarter of 2019.

39. On or about June 24, 2020, Walgreen, through its agent, Kristine A. Blumka, Senior Analyst, Retirement Plans, who at all times was acting within the scope of her employment, acknowledged to Plaintiff that Walgreen never made the lump sum payment to him required under Subsection 4. C. (2) of the Plan. [12]

40. On or about June 24, 2020, Walgreen, through its agent, Kristine A. Blumka, Senior Analyst, Retirement Plans, who at all times was acting within the scope of her employment, made the material misrepresentation to Plaintiff that he did not meet the eligibility criteria for the Plan. [13]

41. On or about June 24, 2020, Walgreen, through its agent Kristine A. Blumka, Senior Analyst, Retirement Plans, who at all times was acting within the scope of her employment, advised Plaintiff that Walgreen elected to exercise the provisions of Subsection 4. C. (2) of the Plan, which required Walgreen to pay Plaintiff the principal of his deferral amounts plus accrued interest at the rate found in the provisions of Subsection 4. C. (2) of the Plan. [14]

42. On or about June 29, 2020, Walgreen, through its agent Kristine A. Blumka, Senior Analyst, Retirement Plans, who at all times was acting within the scope of her employment, expressed recognition of the emotional distress caused to Plaintiff by Walgreen's actions, promised that Walgreen would "do the right thing" for Plaintiff, and stated she would discuss Plaintiff's promised compensation due under the Plan with Walgreen's general counsel.

43. At all times herein mentioned, Plaintiff, not suspecting that Walgreen, the company he had worked at for over sixteen years, was intentionally misleading him and seeking to defrauding him of the funds due to him under the terms of the Plan, believed and detrimentally relied upon Walgreen's misrepresentations.

---

[12] See Exhibit 3 Blumka letter to Dan Malloy of June 24, 2020
[13] See Exhibit 3 Blumka letter to Dan Malloy of June 24, 2020
[14] See Exhibit 3 Blumka letter to Dan Malloy of June 24, 2020

FILED DATE: 9/15/2020 2:56 PM    2020L008564

44. Plaintiff's deferred compensation payment in 1988 was $6,514.00, which accrued at an

interest rate of twenty percent (20%) compounded annually under Subsection 4. C. (2) of the Plan.

Interest on that payment has accrued since that time as set forth below:

| Dan Malloy Deferred Comp Plan | | | |
|---|---|---|---|
| | Bgn | Interest | Ending |
| 1988 | 6,514 | 1,303 | 7,817 |
| 1989 | 7,817 | 1,563 | 9,380 |
| 1990 | 9,380 | 1,876 | 11,256 |
| 1991 | 11,256 | 2,251 | 13,507 |
| 1992 | 13,507 | 2,701 | 16,209 |
| 1993 | 16,209 | 3,242 | 19,451 |
| 1994 | 19,451 | 3,890 | 23,341 |
| 1995 | 23,341 | 4,668 | 28,009 |
| 1996 | 28,009 | 5,602 | 33,611 |
| 1997 | 33,611 | 6,722 | 40,333 |
| 1998 | 40,333 | 8,067 | 48,400 |
| 1999 | 48,400 | 9,680 | 58,079 |
| 2000 | 58,079 | 11,616 | 69,695 |
| 2001 | 69,695 | 13,939 | 83,634 |
| 2002 | 83,634 | 16,727 | 100,361 |
| 2003 | 100,361 | 20,072 | 120,434 |
| 2004 | 120,434 | 24,087 | 144,520 |
| 2005 | 144,520 | 28,904 | 173,424 |
| 2006 | 173,424 | 34,685 | 208,109 |
| 2007 | 208,109 | 41,622 | 249,731 |
| 2008 | 249,731 | 49,946 | 299,677 |
| 2009 | 299,677 | 59,935 | 359,613 |
| 2010 | 359,613 | 71,923 | 431,535 |
| 2011 | 431,535 | 86,307 | 517,842 |
| 2012 | 517,842 | 103,568 | 621,411 |
| 2013 | 621,411 | 124,282 | 745,693 |
| 2014 | 745,693 | 149,139 | 894,832 |
| 2015 | 894,832 | 178,966 | 1,073,798 |
| 2016 | 1,073,798 | 214,760 | 1,288,558 |
| 2017 | 1,288,558 | 257,712 | 1,546,269 |
| 2018 | 1,546,269 | 309,254 | 1,855,523 |
| 2019 | 1,855,523 | 371,105 | 2,226,628 |
| 2020 | 2,226,628 | 445,326 | 2,671,953 |

45. That on or before July 14, 2020, Walgreen, through its agents acting within the scope of

their employment, including but not limited to Kristine A. Blumka, Chris Dysinger, Walgreen

Director of Retirement Plans and Programs, and Walgreen's general counsel, conspired and

FILED DATE: 9/15/2020 2:56 PM    2020L008564

FILED DATE: 9/15/2020 2:56 PM    2020L008564

schemed to defraud and deprive Plaintiff of the payments he is entitled to under Plan and to convert Plaintiff's for Walgreen's benefit.

46.  On July 14, 2020, Walgreen, through its agent acting within the scope of her employment, Kristine A. Blumka, Senior Analyst, Retirement Plans, made the material misrepresentation to Plaintiff that he did not meet the eligibility criteria for the Plan because he did not attain "retirement status" by "attaining age 55 with at least 10 years of service prior to termination of employment with Walgreens."[15]

47. On July 14, 2020, Walgreen, through its agent Kristine A. Blumka, Senior Analyst, Retirement Plans, who at all times was acting within the scope of her employment, made the material misrepresentation to Plaintiff that he did not qualify for the Interim Payments already paid in 1995-1998, and that he did not qualify for the Installment Payments which were to begin in 2022.[16]

48.  On July 14, 2020, Walgreen, through its agent Kristine A. Blumka, Senior Analyst, Retirement Plans, who at all times was acting within the scope of her employment,  made the material misrepresentation to Plaintiff that the amount due to him under Subsection 4. C. (2) of the Plan was $7,527.69, when, in fact, the amount due Plaintiff under Subsection 4. C. (2) of the Plan as of July 14, 2020 was approximately $2,464,542.00, accruing interest at 20% compounded annually.

49.  On July 14, 2020, Walgreen, through its agent Kristine A. Blumka, Senior Analyst, Retirement Plans, who at all times was acting within the scope of her employment,  made the material misrepresentation to Plaintiff that the amount due to him under Subsection 4. C. (2) of the Plan was satisfied by his prior Interim Payments in 1995-1998.

50.  On July 14, 2020, Walgreen Co., through its agent Kristine A. Blumka, Senior Analyst, Retirement Plans, who at all times was acting within the scope of her employment, made the

---

[15] See Exhibit 4  Blumka letter to Dan Malloy of July 14, 2020
[16] See Exhibit 4  Blumka letter to Dan Malloy of July 14, 2020

material misrepresentation to Plaintiff that "because you did not attain Retirement status under the plan," defined "as attaining age 55 with at least 10 years of service prior to termination of employment with Walgreens," Plaintiff would receive no further payments.[17]

51. On and about June and July, 2020, Walgreen, through its agent Kristine A. Blumka, Senior Analyst, Retirement Plans, who at all times was acting within the scope of her employment, made the material misrepresentation to Plaintiff that the statements communicated to him during the preceding 32 years by Walgreen regarding his participation in the Plan were "not properly administered," were an "error that occurred in the administration of your benefits," were "administrative error," were in "error," essentially asserting that Walgreen made 32 years of material misrepresentations to Plaintiff regarding the Plan.

52. On July 14, 2020, Walgreen, through its agent Kristine A. Blumka, Senior Analyst, Retirement Plans, who at all times was acting within the scope of her employment, made material misrepresentation to Plaintiff that Walgreen had a right to reimbursement of the Interim Payments made in 1995-1998, clearly intending to threaten Plaintiff that if he sought to enforce Walgreen's obligations attempts to breach the terms of the Plan, and to defraud him of the amounts due to him under the Plan, Walgreen could seek re-payment of the Interim Payments.[18]

53. At all times herein mentioned, Defendants, through their agents acting within the scope of their employment, including but not limited to Kristine A. Blumka, Chris Dysinger and Walgreen's general counsel, knew that each of the aforesaid material misrepresentations were false and made for the malicious purpose of misleading Plaintiff and to cause him to surrender to Walgreen amounts to which he is entitled. In so doing, Defendants demonstrated their intent, to accomplish the fraud, and engaged in willful, malicious misconduct, which justifies an award of punitive damages.

---

[17] See Exhibit 4  Blumka letter to Dan Malloy of July 14, 2020
[18] See Exhibit 4  Blumka letter to Dan Malloy of July 14, 2020

FILED DATE: 9/15/2020 2:56 PM  2020L008664

54. As of August 14, 2020 (the date of the filing of this lawsuit), under Subsection 4. C. (2) of the Plan Walgreen owed Plaintiff a lump sum payment of approximately $2,501,144.00, which sum continues to compound annually at 20%.

55. At all times herein mentioned, Defendants, acting through their agents, delegates and assigns acting within the scope of their employment, delegation and assignment, owed Plaintiff fiduciary duties of good faith and fair dealing under both Illinois common law and state statutory law[19] in the administration of the Plan, including, inter alia: (1) to deal fairly with Plaintiff, (2) to act reasonably and in good faith with Plaintiff, (3) to discharge their duties solely in the interests of Plan participants such as Plaintiff (and his beneficiaries), (4) to act for the exclusive purpose of providing benefits to participants such as Plaintiff (and his beneficiaries), (5) to refrain from engaging in transactions that constitute direct or indirect actions adverse to the interests of participants such as Plaintiff (and his beneficiaries), (6) to refrain from transactions lacking adequate consideration to participants such as Plaintiff ( and his beneficiaries) or which deprive participants such as Plaintiff of benefits due under the Plan, (7) to refrain from transactions that result in a pecuniary benefit to Defendants, and (8) to exercise reasonable care to prevent others from breaching their fiduciary duties in the administration of the Plan.

56. At all times herein mentioned, both Illinois common law and state statutory law[20] recognized that breaches of fiduciary duties are punishable using the legal modalities of tort law and/or criminal law.

57. On or about July 14, 2020, notwithstanding the aforesaid duties, Defendants, acting through their agents, delegates and assigns acting within the scope of their employment, delegation and assignment, maliciously, wrongfully, intentionally, willfully, wantonly, with an entire want of care, or with a totality of circumstances demonstrating a scheme or device to accomplish a fraud,

---

[19] See, inter alia, 40 ILCS 5/1-101.2 et seq.
[20] Se, inter alia, 40 ILCS 5/1-107, 40 ILCS 5/1-108 and 40 ILCS 5/1-110

13

FILED DATE: 9/15/2020 2:56 PM    2020L008664

FILED DATE: 9/15/2020 2:56 PM   2020L008564

denied benefits due and owing to Plaintiff under the Plan, breaching their duties to Plaintiff in one or more of the following ways:

    (1) Failed to deal fairly with Plaintiff;

    (2) Failed to act reasonably and in good faith with respect to Plaintiff;

    (3) failed to discharge their duties solely in the interests of Plan participants including Plaintiff;

    (4) Failed to act for the exclusive purpose of providing benefits to Plan participants including Plaintiff;

    (5) Failed to refrain from engaging in transactions that constitute direct or indirect actions adverse to the interests of Plan participants, including Plaintiff;

    (6) Failed to refrain from engaging in transactions unsupported by adequate consideration with Plan participants, such as Plaintiff, or which deprive Plan participants, such as Plaintiff, the benefits due under the Plan;

    (7) Failed to refrain from transactions that result in a pecuniary benefit to Defendants;

    (8) Failed to exercise reasonable care to prevent others from breaching their fiduciary duties in the administration of the Plan;

    (9) Conspired together to accomplish a fraud; and

    (10) Otherwise defrauded and deprived Plaintiff of the payments he is entitled to under the Plan, and converted Plaintiff's funds to their own benefit.

58. That as a direct and proximate result of Defendants' breaches of their fiduciary duties, acting through their agents, delegates and assigns acting within the scope of their employment, delegation and assignment, Plaintiff sustained significant pecuniary injuries, including, but not limited to, the loss of the amounts due to him under the Plan and serious emotional distress.

WHEREFORE, Plaintiff, DANIEL MALLOY, demands judgment against Defendants, Walgreen Co., Newport Group, Inc., and the Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan, and each of them, for compensatory damages in an

amount in excess of TWO MILLION FIVE HUNDRED THOUSAND ($2,500,000.00) DOLLARS.

Further, Plaintiff reserves the right to seek to amend the ad damnum of Count I to allow for a prayer for relief for a claim for punitive damages pursuant to 735 ILCS 5/2-604.1.[21]

## COUNT II – Fraud and Deceit

1-58. Plaintiff, DANIEL MALLOY, restates and realleges paragraphs 1-58 of Count I as paragraphs 1-58 of Count II as if fully set forth herein.

59. That the aforesaid misrepresentations to Plaintiff by Defendants, and each of them, acting through their agents, delegates and assigns acting within the scope of their employment, delegation and assignment, were known to Defendants to be false, were believed by Defendants to be false, or were made in reckless disregard as to whether the same were true or false.

60. That the aforesaid misrepresentations to Plaintiff by Defendants and each of them, acting through their agents, delegates and assigns acting within the scope of their employment, delegation and assignment, were untrue statements of material fact and made to induce Plaintiff to surrender or forego his rights to money owed to him under the Plan.

61. That, not suspecting that Walgreen, the company he had worked at for over sixteen years, was seeking to intentionally defraud him and convert to its own benefit the money owed to him, Plaintiff believed and relied upon Ms. Blumka's misrepresentations.

62. Plaintiff sustained damages as the result of his reliance when Defendants, and each of

---

[21] § 2-604.1. Pleading of punitive damages. In all actions on account of bodily injury or physical damage to property, based on negligence, or product liability based on any theory or doctrine, where punitive damages are permitted no complaint shall be filed containing a prayer for relief seeking punitive damages. However, a plaintiff may, pursuant to a pretrial motion and after a hearing before the court, amend the complaint to include a prayer for relief seeking punitive damages. The court shall allow the motion to amend the complaint if the plaintiff establishes at such hearing a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages. Any motion to amend the complaint to include a prayer for relief seeking punitive damages shall be made not later than 30 days after the close of discovery. A prayer for relief added pursuant to this Section shall not be barred by lapse of time under any statute prescribing or limiting the time within which an action may be brought or right asserted if the time prescribed or limited had not expired when the original pleading was filed.

FILED DATE: 9/15/2020 2:56 PM    2020L008664

them, acting through their agents, delegates and assigns acting within the scope of their employment, delegation and assignment, reneged on Walgreen's promise to pay Plaintiff the principal of his deferred compensation with interest at the rate set forth in Subsection 4. C. (2) of the Plan.

63. That as a direct and proximate result of the fraud and deceit of Defendants, acting through their agents, delegates and assigns acting within the scope of their employment, delegation and assignment, Plaintiff, sustained significant pecuniary damages.

WHEREFORE, Plaintiff, DANIEL MALLOY, demands judgment against Defendants, in an amount in excess of TWO MILLION FIVE HUNDRED THOUSAND ($2,500,000.00) DOLLARS.

Further, Plaintiff reserves the right to request the right to amend the ad damnum of Count II to allow for a prayer for relief for a claim for punitive damages pursuant to 735 ILCS 5/2-604.1.

## COUNT III – Conversion

1-63. Plaintiff restates and realleges paragraphs 1-63 of Count II as paragraphs 1-63 of Count III as if fully set forth herein.

64. By the aforesaid actions and inactions, Defendants, have taken an unauthorized and wrongful assumption, control, dominion or ownership of funds due and owing to Plaintiff pursuant to the Plan.

65. Plaintiff has a protected property interest in funds due to him under the Plan; he has right to the immediate possession of that property interest that is absolute and unconditional.

66. Plaintiff demands Defendants immediately turn over possession to him of his property, the funds owed to him under the Plan.

67. That as a direct and proximate result of the conversion of Plaintiff's funds by Defendants, Plaintiff has sustained significant pecuniary damages.

WHEREFORE, Plaintiff, DANIEL MALLOY, demands judgment against Defendants in an

FILED DATE: 9/15/2020 2:56 PM    2020L008664

FILED DATE: 9/15/2020 2:56 PM    2020L008564

amount in excess of TWO MILLION FIVE HUNDRED THOUSAND ($2,500,000.00) DOLLARS.

Further, Plaintiff reserves the right to request the right to amend the ad damnum of Count III to allow for a prayer for relief for a claim for punitive damages pursuant to 735 ILCS 5/2-604.1.

## COUNT IV – Illinois Wage Payment and Collection Act

1-67.  Plaintiff, Daniel Malloy, restates and realleges paragraphs 1-67 of Count III as paragraphs 1-67 of Count IV as if fully set forth herein.

68.  At all times relevant hereto, Walgreen was Plaintiff's employer under the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, et seq.

69.  At all times relevant hereto, Plaintiff was the employee of Walgreen under the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, et seq.

70.  The Illinois Wage Payment and Collection Act, 820 ILCS 115/14, states in relevant part as follows:

```
(820 ILCS 115/14) (from Ch. 48, par. 39m-14)
    Sec. 14. (a) Any employee not timely paid wages,
final compensation, or wage supplements by his or her
employer as required by this Act shall be entitled to
recover through a claim filed with the Department of
Labor or in a civil action, but not both, the amount of
any such underpayments and damages of 2% of the amount
of any such underpayments for each month following the
date of payment during which such underpayments remain
unpaid. In a civil action, such employee shall also
recover costs and all reasonable attorneys' fees.
    (a-5) In addition to the remedies provided in
subsections (a), (b), and (c) of this Section, any
employer or any agent of an employer, who, being able to
pay wages, final compensation, or wage supplements and
being under a duty to pay, wilfully refuses to pay as
provided in this Act, or falsely denies the amount or
validity thereof or that the same is due, with intent to
secure for himself or other person any underpayment of
such indebtedness or with intent to annoy, harass,
oppress, hinder, delay or defraud the person to whom
such indebtedness is due, upon conviction, is guilty of:
        (1) for unpaid wages, final compensation or wage
    supplements in the amount of $5,000 or less, a Class
```

FILED DATE: 9/15/2020 2:56 PM   2020L008564

B misdemeanor; or
      (2) for unpaid wages, final compensation or wage
supplements in the amount of more than $5,000, a
Class A misdemeanor.

Each day during which any violation of this Act
continues shall constitute a separate and distinct
offense.

71.  At all times relevant hereto, Defendants, had a duty to timely pay compensation owed to Plaintiff under the terms of the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan."

72.  Defendants have violated Illinois Wage Payment and Collection Act, 820 ILCS 115/1 et seq. by, failing to make timely and appropriate payments owed to Plaintiff pursuant to the Plan.

73.  That as a direct and proximate result of the aforesaid violations of the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, et seq., Plaintiff has sustained significant pecuniary damage.

WHEREFORE, Plaintiff, DANIEL MALLOY, demands judgment against Defendants, in an amount in excess of TWO MILLION FIVE HUNDRED THOUSAND ($2,500,000.00) DOLLARS, prejudgment interest, attorneys' fees and costs.

Further, Plaintiff reserves the right to request the right to amend the ad damnum of Count I to allow for a prayer for relief for a claim for punitive damages pursuant to 735 ILCS 5/2-604.1.

## COUNT V – Breach of Contract

1-73.  Plaintiff, Daniel Malloy, restates and realleges paragraphs 1-73 of Count IV as paragraphs 1-73 of Count V as if fully set forth herein.

74.  That, in failing to comply with the terms of the Plan by failing to pay Plaintiff amounts owed to him under the Plan and advising of their intent to refuse to honor their obligations under the

18

FILED DATE: 9/15/2020 2:56 PM    2020L008564

Plan, Defendants, violated and breached the terms of the Plan, including, but not limited to, the terms of Subsection 4. A. (2) a. and/or Subsection 4. C. (2) of the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan," and in addition, breached their separate promise to pay a "lump sum distribution at the interest rate specified for a voluntary termination."

75.  That as a direct and proximate result of their breaches of contract, Plaintiff has sustained significant pecuniary damage.

WHEREFORE, Plaintiff, DANIEL MALLOY, demands judgment against Defendants in an amount in excess of TWO MILLION FIVE HUNDRED THOUSAND ($2,500,000.00) DOLLARS, attorney fees, specific performance, to enforce his rights under the terms of the plan, to declare his rights to future benefits under the terms of the Plan, and for such other relief as the Court deems appropriate.

## COUNT VI – ERISA Claim For Enforcement Of The Plan Pursuant 29 U.S.C. § 1132(a) and Federal Common Law

1-75.  Plaintiff, Daniel Malloy, restates and realleges paragraphs 1-75 of Count V as paragraphs 1-75 of Count VI as if fully set forth herein.

76.  Defendants have failed to comply with the terms of the Plan and have indicated they will refuse in the future to comply with the terms of the Plan by refusing to pay Plaintiff amounts due to him under the Plan, including, but not limited to, amounts due pursuant to Subsection 4. A. (2) a. and/or Subsection 4. C. (2) of the Plan.

77.  Under Section 1134(a)(1)(B), as a Plan participant, Plaintiff is entitled to recover benefits due to him under the terms of the Plan, to enforce his rights under the terms of the Plan, and to declare his rights to future benefits under the terms of the Plan.

WHEREFORE, Plaintiff, DANIEL MALLOY, requests that the Court determine all amounts due and owing to him under the Plan currently, that the Court enter judgment in his favor

FILED DATE: 9/15/2020 2:56 PM  2020L008564

and against Defendants in that amount, determine the amount of future benefits owed to him, to otherwise declare his rights under the terms of the Plan, to enforce the terms of the Plan, and for such other relief as the Court deems appropriate.

//s// Christopher Patrick Ford

Christopher Patrick Ford

LAW OFFICE OF CHRISTOPHER PATRICK FORD
8 South Michigan Avenue - Suite 3500
Chicago, Illinois 60603
Telephone: 312/372-0505
Facsimile: 312/372-8562
cpfordlaw@sbcglobal.net
#15025

20

FILED DATE: 9/15/2020 2:56 PM   2020L008564

| | | |
|---|---|---|
| STATE OF ILLINOIS | ) | #15025 |
| COUNTY OF COOK | ) | |

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| DANIEL MALLOY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 2020 L 008564 |
| | ) | |
| WALGREEN CO., a corporation, | ) | **Plaintiff Demands a** |
| Newport Group, Inc., a corporation, and | ) | **Trial by Jury** |
| Walgreen Co. 1988 Executive Deferred Compensation/ | ) | |
| Capital Accumulation Plan, | ) | |
| | ) | |
| Defendants. | ) | |

### Rule 222 certification

Pursuant to Supreme Court Rule 222, the undersigned counsel hereby certifies, under Section 1-109 of the Code of Civil Procedure, that the damages sought in the matter of <u>Malloy v. Walgreen Co.</u>, et al., are in excess of the jurisdictional amount of for the Law Division.

//s// *Christopher Patrick Ford*

Christopher Patrick Ford

LAW OFFICE OF CHRISTOPHER PATRICK FORD
8 South Michigan Avenue - Suite 3500
Chicago, Illinois 60603
Telephone: 312/372-0505
Facsimile: 312/372-8562
cpfordlaw@sbcglobal.net
#15025

FILED DATE: 9/15/2020 2:56 PM 2020L008564

Exhibit 1

## Walgreen Co. 1988 Executive Deferred
## Compensation/Capital Accumulation Plan

Walgreen Co. (the "employer") hereby establishes a non-qualified deferred compensation program for certain of its employees as described herein. The following shall constitute the terms and conditions of the Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan (the "Plan"), effective January 1, 1988:

1.  <u>Administration</u>.  Full power and authority to construe, interpret and administer the Plan shall be vested in the Compensation Committee of the Board of Directors (the "Committee"). The Committee shall have the authority to make determinations provided for or permitted to be made under the Plan, to interpret the Plan, and to promulgate such rules and regulations, if any, as the Committee considers necessary and appropriate for the implementation of the Plan.

2.  <u>Eligibility and Participation</u>.  Only those persons who are employed at Salary Grade 14 and its equivalent or above as of December 31, 1987 shall be eligible to become a participant in the Plan. An eligible employee shall become a participant upon the execution of an irrevocable election under the Plan and the acceptance of the election by the Committee.

3.  <u>Deferred Compensation Account</u>.

    A.  Each participant shall make an irrevocable election in writing of the amount of compensation to be deferred under the Plan (the "deferral

FILED DATE: 9/15/2020 2:56 PM   2020L008564

amount"). Such amount shall not be in excess of fifteen percent (15%) of the participants calendar year 1988 base salary, and shall be in increments of no less than $1,000.00 (one thousand dollars). The election shall be made prior to January 1, 1988 and shall be for the period January 1, 1988 through December 31, 1988. The deferral amount shall be reduced in substantially equal amounts from the base salary otherwise periodically payable to the participant during the period January 1, 1988 through December 31, 1988, and attributable to service by the participant for the employer after the date of participant's election.

B. The employer shall establish and maintain a bookkeeping account in the name of each participant, which shall be known as his or her "Deferred Account", and which shall be credited with the amount of compensation deferred, and which shall reflect the accumulated value of the deferral amount. The accumulated value of the deferral amount shall equal the amount arrived at by increasing the deferral account balance by assumed simple interest compounded annually but credited as of the last day of each calendar month, calculated from January 1, 1988. Amounts paid to or on behalf of the participant or his beneficiary pursuant to this Plan, shall be deducted from the account balance as of the first day of the month in which such payment is made. The rate to be used in determining the accumulated value of the deferral amount shall be that rate specified in the Plan paragraph under which payment is to be made.

2

FILED DATE: 9/15/2020 2:56 PM   2020L008564

C.   The participant's Deferred Account shall at all times be reflected on the employer's books in accordance with generally accepted accounting practices as a general unsecured and unfunded obligation of the employer and the Plan shall not give any person any right or security interest in any asset of the employer nor shall it imply any trust or segregation of assets by the employer.  The participant's Deferred Account shall be distributed from the general assets of the employer.

4.   Time and Manner of Payment.  The participants' Deferred Accounts shall be distributed as follows:

A.   Installment Payments

(1)  A participant shall be entitled to fifteen (15) equal annual installment payments commencing at the January 1 of the year following his or her attainment of age sixty-five (65) or as soon as practicable thereafter, if one of the following conditions is met:

a.   the participant remains in the continuous employ of the employer during the period from January 1, 1988 until the Participant reaches age sixty-five (65); or

b.   the participant retires after a period of continuous employment beginning on or before January 1, 1988.

(2)  A participant who attained age fifty-five (55) as of January 1, 1988, shall elect, at the time of making the deferral election pursuant to Paragraph 3A, to receive installment payments in one of the following manners:

a.   fifteen (15) equal annual installments as described in paragraph (1) above; or

3

FILED DATE: 9/15/2020 2:56 PM    2020L008564

b.    ten (10) equal annual installments commencing at the

January 1 of the year following his or her attainment of age

seventy (70), or as soon as practicable thereafter.

Installment payments shall be calculated to amortize fully the accumulated

value of the deferral amount over the payment period.  For purposes of this

Subsection A, the rate to be credited in the calculation of the accumulated

value of the deferral amount shall be based upon the participant's age at the

time of deferral as reflected in Schedule A of the Plan.

B.    <u>Interim Payments</u>

(1)  Effective January 1, 1995, or as soon as practicable thereafter,

a participant shall be entitled to a lump sum payment in an amount

equal to the amount deferred under Paragraph 3 of this Plan if one of

the following conditions is met:

a.    the participant has remained in the continuous employ of

the employer during the period beginning January 1, 1988 and

ending January 1, 1995 and is not receiving Installment

Payments pursuant to Subsection A; or

b.    the participant retires after a period of continuous

employment from January 1, 1988 and is not receiving

Installment Payments pursuant to Subsection A.

(2)  Effective January 1, 1996, or as soon as practicable thereafter,

a participant shall be entitled to a lump sum payment in an amount

equal to the amount deferred under Paragraph 3 of this Plan if one of

the following conditions is met:

a.    The participant has remained in the continuous employ of

the employer during the period beginning January 1, 1988 and

ending January 1, 1996 and is not receiving Installment

Payments pursuant to Subsection A; or

**4**

FILED DATE: 9/15/2020 2:56 PM  2020L008564

  b.    the participant retires after a period of continuous
        employment from January 1, 1988 and is not receiving
        Installment Payments pursuant to Subsection A.

(3) Effective January 1, 1997, or as soon as practicable thereafter,
a participant shall be entitled to a lump sum payment in an amount
equal to the amount deferred under Paragraph 3 of the Plan if one of
the following conditions is met:

  a.    The participant has remained in the continuous employ of
        the employer during the period beginning January 1, 1988 and
        ending January 1, 1997 and is not receiving Installment
        Payments pursuant to Subsection A; or

  b.    the participant retires after a period of continuous
        employment from January 1, 1988 and is not receiving
        Installment Payments pursuant to Subsection A.

(4) Effective January 1, 1998, or as soon as practicable thereafter,
a participant shall be entitled to a lump sum payment in an amount
equal to the amount deferred under Paragraph 3 of the Plan if one of
the following conditions is met:

  a.    The participant has remained in the continuous employ of
        the employer during the period beginning January 1, 1988 and
        ending January 1, 1998 and is not receiving Installment
        Payments pursuant to Subsection A; or

  b.    the participant retires after a period of continuous
        employment from January 1, 1988 and is not receiving
        Installment Payments pursuant to Subsection A.

Payments under Subsections B(1)-B(4), shall be debited from the
participants deferral account as of the first day of the month in
which payment is made.

FILED DATE: 9/15/2020 2:56 PM  2020L008564

C.   Underline Payment Upon Termination

(1)   A participant who voluntarily terminates his employment with the employer prior to retirement shall receive, as soon as practicable after such termination, a lump sum payment in the amount of the accumulated value of the Deferral Amount.  For purposes of this Paragraph 4, Subsection C(1) the rate to be credited in the calculation of the accumulated value of the deferral amount shall be ten percent (10%).


(2)   A participant whose employment with the employer is involuntarily terminated by the employer prior to the participant's retirement for reasons other than those described in Sections 5 and 6 below, shall receive, as soon as practicable after such termination, a lump sum payment in the amount of the accumulated value of the deferral amount.  For purposes of this Paragraph 4, Subsection C(2), the rate to be credited in the calculation of the accumulated value of the deferral amount shall be twenty percent (20%).

For purposes of this Paragraph 4, retirement shall mean leaving the active employ of the employer at or after age sixty-five (65), or after at least ten (10) years of service and at least age fifty-five (55), or for reason of disability as described in Paragraph 9 of the Plan.

5.   Non-Competition.  Notwithstanding any other provision of this Plan, if the Committee at any time determines that participant, without having obtained the prior written consent of the Committee or its designee, has engaged in competition with the employer either during the term of his employment with the employer and continuing throughout such period thereafter that

**6**

participant is entitled to receive payments pursuant to this Plan, the sole amount payable to participant hereunder shall be a lump sum payment of the accumulated value of the deferral amount, payable as soon as practicable after such determination. For purposes of this Paragraph 5, the simple rate of interest applied to determine the accumulated value of the deferral amount shall be two percent (2%). "Competition with the Employer" shall mean engaging, within any geographical area or market served by the employer and without the employer's written consent, in the provision of goods or services, or in any other business activity of a type offered or engaged in by the employer, on participant's own behalf or on behalf of another business enterprise while employed by the employer or within 60 months of participant's termination of employment with the employer.

6.  <u>Dishonest Conduct</u>.  Notwithstanding any other provision of this Plan, if participant's employment with the employer is terminated at any time for reason of dishonest or fraudulent conduct injurious to the employer, the sole amount payable to or on behalf of participant hereunder shall be a lump sum payment of the accumulated value of the participant's deferral amount, payable as soon as practicable after such termination of employment. For purposes of this Paragraph 6, the simple rate of interest to be credited in the calculation of the accumulated value of the deferral amount shall be zero percent (0%).

7.  <u>Payment Upon Death of Participant</u>

A.  If participant dies after annual payments have become payable as provided in Paragraph 4, Subsection A hereof, but prior to receiving any or all annual installment payments due participant pursuant to

**7**

FILED DATE: 9/15/2020 2:56 PM   2020L008564

Paragraph 4, Subsection A, the employer shall pay any such unpaid annual payments to the participant's beneficiary, commencing with the next annual payment due following the date of participant's death.

B.   If participant dies after retirement as provided in Paragraph 4 hereof, but prior to receiving any or all interim payments due participant pursuant to Paragraph 4, Subsection B, the employer shall pay any such unpaid interim payments to the participant's beneficiary commencing with the next interim payment due following the date of participant's death.

C.   If participant dies while employed by the employer, but prior to retirement as provided in Paragraph 4 hereof, no further interim payments or annual installments pursuant to Paragraph 4, Subsections A and B shall be paid by the employer after the date of the participant's death, but the employer shall, as soon as practicable after participant's death, pay to the participant's beneficiary, in a lump sum, the accumulated value of the deferral amount. For purposes of this Paragraph 7, the rate to be credited in the calculation of the accumulated value of the deferral amount shall be twenty percent (20%).

8.   <u>Beneficiary Designation</u>. A participant may, from time to time designate any legal or natural person or persons (who may be designated contingently or successively) to whom payments are to be made if participant dies before receiving payment of all amounts due hereunder, by signing a form approved by the Committee. A beneficiary designation form shall be effective only after the signed form is filed with the employer while participant is alive. A properly filed designation shall cancel all

beneficiary designation forms signed and filed earlier. If participant fails to designate a beneficiary as provided above, or if all designated beneficiaries of participant die before participant or before complete payment of all amounts due hereunder, the employer, in its discretion, may pay the unpaid amounts to one or more of such participant's relatives by blood, adoption or marriage in any manner permitted by law which the Committee considers to be appropriate, including but not limited to payment to the legal representative or representatives of the estate of the last to die of participant and participant's designated beneficiaries.

9. Disability. If participant's employment with the employer is terminated prior to participant's retirement as provided in Paragraph 4 hereof by reason of participant's disability, participant's employment with the employer, for purposes of this Plan, shall be deemed to continue until participant's retirement as provided in Paragraph 4 and the provisions of this Plan shall be applicable to such participant to the same extent as if participant were, in fact, employed by the employer during that period. However, if such termination of employment occurs prior to January 1, 1989, as a condition of the application of this Paragraph, participant shall have any compensation payable to him from the employer (either directly or through employer-provided disability compensation) reduced by an amount equal to the balance of any deferred amount the participant elected under Paragraph 3 hereof which has not been credited to the participant's account as of the time of disability. For purposes of this Section, "disability" shall mean any total and permanent disability which would prevent participant's return to active employment, as determined by the Committee.

9

FILED DATE: 9/15/2020 2:56 PM    2020L008564

10. <u>Facility of Payment</u>.  If the employer has, for any reason, doubt as to the proper person to whom to make payment, the employer may withhold payment until instructed by a final order of a court of competent jurisdiction. Any payment hereunder made by the employer in good faith shall fully discharge the employer from its obligation with respect to such payment.

11. <u>Insurance</u>.  The employer may, in its sole discretion, purchase a policy or policies of insurance on the life of participant or disability insurance with respect to participant, the cash value, if any, and proceeds of which may, but need not, be used by the employer to satisfy part or all of its obligations hereunder.  The employer will be the owner of any such policies and neither participant nor any other person or entity claiming through participant shall have any ownership rights in such policies or any proceeds thereof.  Participant, as a condition of receiving any benefits hereunder, on behalf of himself or any person or entity claiming through him, shall cooperate with the employer in obtaining any such insurance that the employer desires to purchase by submitting to such physical examinations, completing such forms, and making such records available as may be required by the employer from time to time.

12. <u>Effect on Other Benefits</u>.  The Deferral Amount shall be included in participant's 1988 compensation for purpose of calculating participant's bonuses and awards under any incentive or similar compensation plan or program of the employer, insurance, and other employee benefits, except that in accordance with the terms of any plan qualified under Section 401 of the Internal Revenue Code maintained by the employer, the amount deferred under Paragraph 3 shall not be included as 1988 calendar year

FILED DATE: 9/15/2020 2:56 PM   2020L008664

compensation in calculating participant's benefits or contributions by or on behalf of participant under such plan or plans. Payments shall be excluded from compensation in years paid for purposes of calculating participants bonuses and awards under any incentive or similar compensation plan or program of the employer, insurance, and other employee benefits, except that in accordance with the terms of any plan qualified under Section 401 of the Internal Revenue Code maintained by the employer, payments to active employees shall be included as compensation in the year paid.

13. <u>Non-Alienation</u>.  Neither participant nor anyone claiming through him shall have any right to commute, sell, assign, transfer or otherwise convey the right to receive any payments hereunder, which payments and the rights thereto hereby are expressly declared to be non-assignable and non-transferrable, nor shall any such right to receive payments hereunder be subject to the claims of creditors of participant or anyone claiming through him or to any legal, equitable, or other proceeding or process for the enforcement of such claims.

14. <u>Tax Withholding</u>.  Notwithstanding the provisions of Section 13, the employer may withhold from any payment made by it under the Plan such amount or amounts as may be required for purposes of complying with the tax withholding or other provisions of the Internal Revenue Code or the Social Security Act or any state income tax act or for purposes of paying any estate, inheritance or other tax attributable to any amounts payable hereunder.

**11**

FILED DATE: 9/15/2020 2:56 PM   2020L008564

15. <u>Non-Secured Promise</u>. The rights under this Plan of participant and any person or entity claiming through him shall be solely those of an unsecured, general creditor of the employer. Any insurance policy or other asset acquired or held by the employer shall not be deemed to be held by the employer for or on behalf of participant, or any other person, or to be security for the performance of any obligations hereunder of the employer, but shall, with respect to this Plan, be and remain a general, unpledged, unrestricted asset of the employer.

16. <u>Independence of Plan</u>. Except as otherwise expressly provided herein, this Plan shall be independent of, and in addition to, any other employment agreement or employment benefit agreement or plan or rights that may exist from time to time between the parties hereto. This Plan shall not be deemed to constitute a contract of employment between the parties hereto, nor shall any provision hereof restrict the right of the employer to discharge participant, or restrict the right of participant to terminate his employment with the employer.

17. <u>Paragraph Headings</u>. The Paragraph headings used in this Plan are for convenience of reference only and shall not be considered in construing this Plan.

18. <u>Responsibility for Legal Effect</u>. Neither party hereto makes any representations or warranties, express or implied, or assumes any responsibility concerning the legal, tax, or other implications or effects of this Plan.

FILED DATE: 9/15/2020 2:56 PM   2020L008564

19. <u>Committee Determinations Final</u>. Each determination provided for in the Plan shall be made in the absolute discretion of the Committee. Any such determinations shall be binding on all persons.

20. <u>Amendment</u>. The employer may in its sole discretion amend the Plan from time to time. No such amendment shall alter a participant's right to receive a payment due under the terms of the Plan at the date of amendment.

21. <u>Termination at the Employer's Option</u>. Notwithstanding any other provision of this Plan, the employer may terminate this Plan at any time if the Committee, in its sole and absolute discretion, determines that any change in federal or state law, or judicial or administrative interpretation thereof, has materially affected the employer's cost of providing the benefits otherwise payable under this Plan, or for any other reason whatsoever. Upon such termination, the sole amount payable to participant shall be a lump sum payment, as soon as practicable after such termination, of the accumulated value of the deferral amount. For purposes of this Paragraph 21, the rate to be credited in the calculation of the accumulated value of the deferral amount shall be twenty percent (20%).

22. <u>Successors, Acquisitions, Mergers, Consolidations</u>. The terms and conditions of this Plan and each Deferral Election shall inure to the benefit of and bind Walgreen Co. the participants, their successors, assigns, and personal representatives. If substantially all of the assets of the employer are acquired by another corporation or entity or if the employer

FILED DATE: 9/15/2020 2:56 PM    2020L008564

is merged into, or consolidated with, another corporation or entity, then
the obligations created hereunder shall be obligations of the successor
corporations or entity.  Further, if the employment of any participant
were to be terminated during a period of five (5) years following such an
acquisition, merger, or consolidation for reasons other than dishonest
conduct, such termination would be treated as retirement for the purpose
of this Plan.

23.  <u>Controlling Law</u>.  The Plan shall be construed in accordance with the laws
of the State of Illinois.

FILED DATE: 9/15/2020 2:56 PM   2020L008564

SCHEDULE A

TO THE

WALGREEN CO. EXECUTIVE'S DEFERRED

FEE/CAPITAL ACCUMULATION PLAN

| Age at Time of Deferral | Annual Interest Earned by Deferral |
|---|---|
| To age 35 | 19.00% |
| age 36 | 19.14% |
| age 37 | 19.30% |
| age 38 | 19.50% |
| age 39 | 19.70% |
| age 40 | 19.94% |
| age 41 | 20.20% |
| age 42 | 20.40% |
| age 43 | 20.60% |
| age 44 | 20.80% |
| age 45 | 21.00% |
| age 46 | 21.20% |
| age 47 | 21.40% |
| age 48 | 21.60% |
| age 49 | 21.80% |
| age 50 | 22.00% |
| age 51 | 22.20% |
| age 52 | 22.40% |
| age 53 | 22.60% |
| age 54 | 23.00% |
| age 55 | 23.00% |
| age 56 | 23.20% |
| age 57 | 23.40% |
| age 58 | 23.60% |
| age 59 | 23.80% |
| age 60 and over | 24.00% |

FILED DATE: 9/15/2020 2:56 PM   2020L008564

WALGREEN COMPANY
1988 DEFERRED INCOME PLAN

PERSONAL BENEFIT STATEMENT

FOR

D.J. MALLOY

This statement shows your normal retirement payments beginning at age 65.
Payments will begin on the Plan Anniversary date following retirement.

Plus

Interim payments to be received in years 8, 9, 10 and 11 if you were
age 54 or less on the Plan Commencement Date.

| | |
|---|---|
| Plan Year | 01/01/1988 |
| Date of Birth | 05/13/1956 |
| Actual Age - 01/01/88 | 31 |
| Date Normal Post-Retirement Payments Begin (plan anniversary following 65th birthday) | 01/01/2022 |

| SALARY DEFERRAL AMOUNT | $ 6,514 |
|---|---|

| PLAN YEAR | INTERIM PAYMENTS |
|---|---|
| 1995 | $ 6,514 |
| 1996 | $ 6,514 |
| 1997 | $ 6,514 |
| 1998 | $ 6,514 |

| | INSTALLMENT PAYMENTS |
|---|---|
| AGE 65 | $ 29,454* |
| TOTAL PAYOUT | $ 467,866 |

The above payments are not guaranteed and are subject to the provisions
of the Plan Agreement and the Plan Document.

*15 Year Certain, Post-retirement payments start on the anniversary
Commencement Date following age 65.

16

FILED DATE: 9/15/2020 2:56 PM   2020L008664

Exhibit 1A

AMENDMENT
TO
EXECUTIVE DEFERRED COMPENSATION/
CAPITAL ACCUMULATION PLANS

WHEREAS, Walgreen Co. (the "Company") maintains the Walgreen Co. 1986 Executive Deferred Compensation/Capital Accumulation Plan, the Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan, the Walgreen Co. 1992 Executive Deferred Compensation/Capital Accumulation Plan Series I, the Walgreen Co. 1992 Executive Deferred Compensation/Capital Accumulation Plan Series II, the Walgreen Co. 1997 Executive Deferred Compensation/Capital Accumulation Plan Series I, the Walgreen Co. 1997 Executive Deferred Compensation/Capital Accumulation Plan Series II, the Walgreen Co. 2001 Executive Deferred Compensation/Capital Accumulation Plan, and the Walgreen Co. 2002 Executive Deferred Compensation/Capital Accumulation Plan, and various Supplements thereto (each, a "Plan" and collectively, the "Plans"); and

WHEREAS, it is now deemed desirable to amend the Plans, effective as of January 1, 2009, to comply with the requirements of Section 409A of the Internal Revenue Code of 1986, as amended.

NOW, THEREFORE, each Plan is hereby amended, effective as of January 1, 2009, as follows:

1.     By adding the following new paragraph to the end of Paragraph 4, Subsection C (Payment Upon Termination):

"All payments shall be made within 90 days following such termination of employment; provided, however, if the participant is a "specified employee" within the meaning of Section 409A of the Internal Revenue Code of 1986, as amended (the "Code") at the time payment is to be made, then to the extent required under Code Section 409A, payment shall be delayed until the date which is six months after the participant's separation from service."

2.     By deleting the phrase "as soon as practicable" where it appears in Paragraph 7, Subsection C of the Plan, and substituting the phrase "as soon as practicable (and within 90 days)" therefor.

3.     By deleting the last sentence of Paragraph 9 (Disability), and substituting the following new sentence therefor:

"For purposes of this Section, "disability" shall mean that the participant is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or can be expected to last for a continuous period of not less than 12 months, as determined in the sole discretion of the Committee."

4.     By deleting the penultimate sentence of Paragraph 21 (Termination at the Employer's Option) and substituting the following new sentences therefor:

FILED DATE: 9/15/2020 2:56 PM   2020L008564

"Any termination of this Plan shall comply with the requirements of Code Section 409A. Upon termination of the Plan, the sole amount payable to a participant shall be a lump sum payment, which shall be made within the time period prescribed under Code Section 409A and applicable regulations issued thereunder."

IN WITNESS WHEREOF, the undersigned duly authorized officer has caused this Amendment to be executed in the name of and on behalf of the Company this _____ day of December, 2008.

WALGREEN CO.

By_____

FILED DATE: 9/15/2020 2:56 PM    2020L008564

# *Walgreens*

| Exhibit 2 |
| --- |

**Walgreen Co. Executive Deferred
Compensation/Capital Accumulation Plan**

# Account Summary



**Reporting Period:**
**1/1/2019  - 12/31/2019**

## D. MALLOY

732 THORNAPPLE DRIVE
NAPERVILLE IL   60540

**Date of Birth:** 05/13/1956
**Date of Hire:**  05/18/1972

### Plan Information

The rates to be credited, payment amounts and all rights under the Plan are subject to the Plan Provisions, the terms of which are controlling and which are subject to amendment or termination. The projections contained in this statement are based on the assumption that Plan requirements for such payments are satisfied.

### Payment Summary

| Plan Date | Amount Deferred | Target Interest Rate | Interim Payments | Installment Payments | Projected Total Payout | In Service Death Benefit | Voluntary Separation Payout |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 01/01/1988 | 6,514.00 | 19.00% | 6,514.00 | 29,454.00 | 467,866.00 | N/A | N/A |

### Distribution Summary

| Projected Payment Date | Plan Date | Projected Payment Amounts | Annual Total | Plan Payments To Date |
| --- | --- | --- | --- | --- |
| 01/01/1995 | 01/01/1988 | | | 6,514.00 |
| 01/01/1996 | 01/01/1988 | | | 6,514.00 |
| 01/01/1997 | 01/01/1988 | | | 6,514.00 |
| 01/01/1998 | 01/01/1988 | | | 6,514.00 |
| 01/01/2022 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2023 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2024 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2025 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2026 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2027 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2028 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2029 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2030 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2031 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2032 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2033 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2034 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2035 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2036 | 01/01/1988 | 29,454.00 | 29,454.00 | |

### Information



**Need more information? Please visit us at:**

newportgroup.com

**Or call us toll-free Monday-Friday 8:30am - 8:00pm ET at:**
**1-800-230-3950**

Please verify this financial information and notify your plan sponsor of questions within 30 days of receipt. If you do not notify your plan sponsor,
we will assume the information on this statement is correct. Any corrections will be reflected on a subsequent statement.

FILED DATE: 9/15/2020 2:56 PM   2020L008564

# *Walgreens*

**Walgreen Co. Executive Deferred
Compensation/Capital Accumulation Plan**

# Account Summary

**Reporting Period:**
1/1/2018  - 12/31/2018



**D. MALLOY**

732 THORNAPPLE DRIVE
NAPERVILLE IL   60540

**Date of Birth:** 05/13/1956
**Date of Hire:** 05/18/1972

## Plan Information

The rates to be credited, payment amounts and all rights under the Plan are subject to the Plan Provisions, the terms of which are controlling and which are subject to amendment or termination. The projections contained in this statement are based on the assumption that Plan requirements for such payments are satisfied.

## Payment Summary

| Plan Date | Amount Deferred | Target Interest Rate | Interim Payments | Installment Payments | Projected Total Payout | In Service Death Benefit | Voluntary Separation Payout |
|---|---|---|---|---|---|---|---|
| 01/01/1988 | 6,514.00 | 19.00% | 6,514.00 | 29,454.00 | 467,866.00 | N/A | N/A |

## Distribution Summary

| Projected Payment Date | Plan Date | Projected Payment Amounts | Annual Total | Plan Payments To Date |
|---|---|---|---|---|
| 01/01/1995 | 01/01/1988 | | | 6,514.00 |
| 01/01/1996 | 01/01/1988 | | | 6,514.00 |
| 01/01/1997 | 01/01/1988 | | | 6,514.00 |
| 01/01/1998 | 01/01/1988 | | | 6,514.00 |
| 01/01/2022 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2023 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2024 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2025 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2026 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2027 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2028 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2029 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2030 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2031 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2032 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2033 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2034 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2035 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2036 | 01/01/1988 | 29,454.00 | 29,454.00 | |

## Information


**NEWPORT** GROUP

**Need more information? Please visit us at:**

newportgroup.com

**Or call us toll-free Monday-Friday 8:30am - 6:00pm ET at:**
**1-800-230-3950**

Please verify this financial information and notify your plan sponsor of questions within 30 days of receipt. If you do not notify your plan sponsor, we will assume the information on this statement is correct. Any corrections will be reflected on a subsequent statement.

*Walgreens*

**Walgreen Co. Executive Deferred
Compensation/Capital Accumulation Plan**

# Account Summary

**Reporting Period:**
**1/1/2017 - 12/31/2017**




FILED DATE: 9/15/2020 2:56 PM    2020L008564

## D. MALLOY

732 THORNAPPLE DRIVE
NAPERVILLE IL   60540

**Date of Birth:** 05/13/1956
**Date of Hire:** 05/18/1972

### Plan Information

The rates to be credited, payment amounts and all rights under the Plan are subject to the Plan Provisions, the terms of which are controlling and which are subject to amendment or termination. The projections contained in this statement are based on the assumption that Plan requirements for such payments are satisfied.

### Payment Summary

| Plan Date | Amount Deferred | Target Interest Rate | Interim Payments | Installment Payments | Projected Total Payout | In Service Death Benefit | Voluntary Separation Payout |
|---|---|---|---|---|---|---|---|
| 01/01/1988 | 6,514.00 | 19.00% | 6,514.00 | 29,454.00 | 467,866.00 | N/A | N/A |

### Distribution Summary

| Projected Payment Date | Plan Date | Projected Payment Amounts | Annual Total | Plan Payments To Date |
|---|---|---|---|---|
| 01/01/1995 | 01/01/1988 | | | 6,514.00 |
| 01/01/1996 | 01/01/1988 | | | 6,514.00 |
| 01/01/1997 | 01/01/1988 | | | 6,514.00 |
| 01/01/1998 | 01/01/1988 | | | 6,514.00 |
| 01/01/2022 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2023 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2024 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2025 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2026 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2027 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2028 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2029 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2030 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2031 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2032 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2033 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2034 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2035 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2036 | 01/01/1988 | 29,454.00 | 29,454.00 | |

---

### Information


NEWPORT GROUP

Need more information? Please visit us at:

newportgroup.com

Or call us toll-free Monday-Friday 8:30am - 8:00pm ET at:
1-800-230-3950

Please verify this financial information and notify your plan sponsor of questions within 30 days of receipt. If you do not notify your plan sponsor, we will assume the information on this statement is correct. Any corrections will be reflected on a subsequent statement.

*Walgreens*

Exhibit 3

Walgreen Co.
102 Wilmot Road
Deerfield, IL 60015

June 24, 2020

Mr. Daniel Malloy
732 Thornapple Drive
Naperville, IL  60540

**Re:    Walgreen Co. Executive Deferred Compensation/ Capital Accumulation Plan Benefits**

Dear Mr. Malloy:

During a recent review of participant data in the Walgreen Co. Executive Deferred Compensation/ Capital Accumulation Plans, it came to our attention that you have a current benefit balance even though your employment terminated in October, 1988.  Because you did not meet the retirement eligibility criteria at the time of your termination, it appears that your benefit should have been paid in a lump sum upon your termination.

We have no record of any special arrangement that would explain why your balance was not paid to you as a lump sum as soon as practicable after your termination of employment.  Because the timing and circumstances of your termination will impact the calculation of your benefit payments, please contact me at your earliest convenience to discuss whether such an arrangement may exist.

If you do not respond to this request for information by Friday, July 31st, your benefit will be paid to you as a lump sum distribution at the interest rate specified for a voluntary termination and taking into account any interim payments that have already been paid to you from this plan.  I will send a follow-up letter at that time to confirm the exact timing and amount of the benefit distribution.

Please contact me before Friday, July 31st by phone at 1-847-315-1796 or by email at kristine.blumka@walgreens.com.  Thank you for your attention to this request.  Be well!

Sincerely,

*Kris Blumka*

Kristine A. Blumka
Senior Analyst, Retirement Plans

*Walgreens*

FILED DATE: 9/15/2020 2:56 PM   2020L008664

Exhibit 4

Walgreen Co.
102 Wilmot Road
Deerfield, IL 60015

July 14, 2020

Mr. Daniel Malloy
732 Thornapple Drive
Naperville, IL  60540

RE: 1988 Walgreens Executive Deferred Compensation / Capital Accumulation Plan (the "Plan")

Dear Mr. Malloy,

During a recent review of our records and the administration of the Plan, we determined that your Plan benefits were not properly administered based on your actual termination of employment with Walgreens as of October 10, 1988 (your "Termination Date").  The purpose of this letter is to explain the error that occurred in the administration of your benefits under the above-referenced Plan, and the resulting discontinuation of any future Plan payments to you.

Under the terms and conditions of the Plan (a copy of which is enclosed), which were communicated to you at the outset of your participation, Plan benefits are payable as follows:

- Four (4) annual "Interim Payments" equal to your deferred amount ($6,514) in 1995-1998, contingent on you remaining employed through each of the Interim Payment dates, and
- Fifteen (15) annual "Installment Payments" of $29,454, starting at age 65, contingent on your attaining Retirement status.

Retirement status is defined in the Plan as attaining age 55 with at least 10 years of service prior to termination of employment with Walgreens.  If a participant does not attain Retirement status, then Plan benefits are payable in one lump-sum payment following termination of employment, based on a fixed interest rate set forth in the Plan.

As you know, your Termination Date was prior to your attainment of age 55, and as such, you did not attain Retirement status under the Plan.  It appears that this information was not accurately reflected on our benefit administrator's recordkeeping system at the time.  In addition, your Termination Date was prior to the Interim Payment dates listed above, and thus you did not qualify for any of those payments.

*Walgreens*

FILED DATE: 9/15/2020 2:56 PM   2020L008564

Based on your involuntary termination status under the Plan as of your Termination Date, you were entitled to a termination lump-sum benefit payout in 1988 that should have been $7,527.69, which represents your deferred amount plus interest through your Termination Date. Due to the administrative error in the classification of your status, you were actually paid a total of $29,454.00, which represents the four Interim Payments that were paid to you as of January 1st of 1995, 1996, 1997 and 1998.

Under the circumstances, we are not asking you to repay any portion of what has already been overpaid. However, because you did not attain Retirement status, no annual Installment Payments will be paid to you in the future.

We apologize for late discovery of this error, and we hope you can appreciate the need to rectify this situation going forward. If you have any questions or wish to discuss this matter, please contact me at 847-315-1796.

Sincerely,

Kristine A. Blumka
Senior Analyst, Retirement Plans
Walgreen Co.


Enclosure

cc:     Chris Dysinger
        Director, Retirement Plans and Programs

STATE OF ILLINOIS    )
COUNTY OF COOK     )

FILED
9/16/2020 12:06 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020L008564
10467168

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, LAW DIVISION

DANIEL MALLOY,                 )
                                 )
              Plaintiffs,     )
v.                               )    No.  2020 L 008564
                               )
WALGREEN CO., a corporation,     )    **Plaintiff Demands a**
Newport Group, Inc., a corporation, and )    **Trial by Jury**
Walgreen Co. 1988 Executive Deferred Compensation/ )
Capital Accumulation Plan,         )
                               )
            Defendants.     )

## FIRST AMENDED COMPLAINT AT LAW

NOW COMES Plaintiff, DANIEL MALLOY ("Plaintiff"), and for his claims against

Defendants, WALGREEN CO., a corporation, NEWPORT GROUP, INC., Inc, a corporation, and

WALGREE CO. 1988 EXECUTIVE DEFERRED COMPENSATION/CAPITAL

ACCUMULATION PLAN (collectively, "Defendants"), states as follows:

### COUNT I – Breach of Fiduciary Duty of Good Faith and Fair Dealing

1. Plaintiff is an Illinois resident.

2. Defendant, Walgreen Co. ("Walgreen") is an Illinois Corporation, with its principal place

of business in Illinois.  Its corporate headquarters are also located in Illinois.

3. Defendant, Newport Group, Inc. ("Newport Group") is a corporation doing business in

Illinois as the administrator of the Walgreen Co. 1988 Executive Deferred Compensation/ Capital

Accumulation Plan ("the Plan").

4. The Plan was created by Walgreen Co. for certain Walgreen Co. employees.

1

FILED DATE: 9/16/2020 12:06 PM 2020L008564

5. On or about May 18, 1972, Plaintiff, as a sophomore in high school, began employment with Walgreen as a dishwasher at its restaurant at Woodmar Shopping Center located in Hammond, Indiana. Three months later, he was promoted to short order cook.

6. Upon his graduation from high school, in or about June 1974, Plaintiff was promoted by Walgreen to Assistant Manager at the Walgreen's Restaurant - Downtown Hammond, Indiana location.

7. In or around December 1975, Plaintiff was promoted by Walgreen to General Manager at the Walgreen's Restaurant at the Woodmar Shopping Center located in Hammond, Indiana, which was the Number 2 sales store in Walgreen's South District.

8. In or around December 1977, Plaintiff was promoted by Walgreen to General Manager at Walgreen's Restaurant at the Evergreen Park Plaza in Evergreen Park, Illinois, which was the Number 1 sales store in Walgreen's South District.

9. In or around December 1978, Walgreen made Plaintiff General Manager at Walgreen's Restaurant at the Yorktown Shopping Center in Lombard, Illinois, which was the Number 1 sales store in Walgreen's Western District.

10. In or around June 1980, Walgreen made Plaintiff General Manager of the new Walgreen's Restaurant in St. Charles, Illinois, which, under Plaintiff's leadership, became Walgreen's Number 1 sales and profit store in the Region. While there, Plaintiff was awarded Walgreen's restaurant Manager of the Year in 1981 and 1982.

11. In or about August 1982, Walgreen promoted Plaintiff to District Manager for the Western District, where he oversaw the opening of five new Walgreen's restaurants and was responsible for overseeing a total of eight restaurants. During this period, Plaintiff received numerous awards and, in 1984, he was featured in the Walgreen's Annual Report.

12. In or about August 1987, Walgreen promoted Plaintiff to Director of Food Service Administration in Deerfield, Illinois. In that position, he was responsible for managing division

FILED DATE: 9/16/2020 12:06 PM    2020L008564

budgets, capital expenditures and point-of sale systems in all restaurants. He was also responsible for monitoring all personal injury and workman's compensation claims and managing three accounting offices (two in Florida and one in Deerfield, Illinois) that serviced approximately 89 Walgreen's restaurants.

13. On or before January 1, 1988, because Walgreen's Director of Food Service Administration was a Walgreen's Salary Grade 14 employee, Plaintiff qualified for participation in the Plan.[1]

14. On or about January 1, 1988, Walgreen offered Plaintiff participation in the Plan and Plaintiff accepted Walgreen's offer to participate in the Plan.

15. That on or about January 1, 1988, Plaintiff paid the required consideration for participation in the Plan, which was a payment of $6,514.00 deducted, with Plaintiff's agreement, from his paycheck.

16. The Plan provided for annual interest rates for projected payments between 19.00 – 24.00% compounded annually depending upon the age at time of deferral.[2] :

---

[1] See attached Exhibit 1, "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan."
[2] See attached Exhibit 1, p.15.

3

FILED DATE: 9/16/2020 12:06 PM   2020L008564

```
                        SCHEDULE A

                         TO THE

            WALGREEN CO. EXECUTIVE'S DEFERRED

              FEE/CAPITAL ACCUMULATION PLAN


     Age at Time of              Annual Interest
        Deferral               Earned by Deferral

   To age 35                        19.00%
        age 36                      19.14%
        age 37                      19.30%
        age 38                      19.50%
        age 39                      19.70%
        age 40                      19.94%
        age 41                      20.20%
        age 42                      20.40%
        age 43                      20.60%
        age 44                      20.80%
        age 45                      21.00%
        age 46                      21.20%
        age 47                      21.40%
        age 48                      21.60%
        age 49                      21.80%
        age 50                      22.00%
        age 51                      22.20%
        age 52                      22.40%
        age 53                      22.60%
        age 54                      23.00%
        age 55                      23.00%
        age 56                      23.20%
        age 57                      23.40%
        age 58                      23.60%
        age 59                      23.80%
        age 60 and over             24.00%
```

17.  Pursuant to the Plan, the agreed projected payments to Plaintiff were (four Interim

Payments once per year from 1995-1998, and fifteen Installment Payments once per year after age

65)[3] :

---

[3] See attached Exhibit 1, p.16.

4

FILED DATE: 9/16/2020 12:06 PM   2020L008564

```
                    WALGREEN COMPANY
                1988 DEFERRED INCOME PLAN

                PERSONAL BENEFIT STATEMENT

                         FOR

                     D.J. MALLOY

     This statement shows your normal retirement payments beginning at age 65.
     Payments will begin on the Plan Anniversary date following retirement.


                         Plus

     Interim payments to be received in years 8, 9, 10 and 11 if you were
     age 54 or less on the Plan Commencement Date.

          Plan Year                              01/01/1988

          Date of Birth                          05/13/1956

          Actual Age - 01/01/88                  31

          Date Normal Post-Retirement Payments Begin   01/01/2022
              (plan anniversary following 65th birthday)

          SALARY DEFERRAL AMOUNT        $     6,514
          ----------------------        -----------

                    PLAN                      INTERIM
                    YEAR                      PAYMENTS
                    ----                      --------

                    1995              $     6,514

                    1996              $     6,514

                    1997              $     6,514

                    1998              $     6,514

                                           INSTALLMENT
                                           PAYMENTS
                                           -----------

          AGE 65                     $    29,454*

          TOTAL PAYOUT               $   467,866

     The above payments are not guaranteed and are subject to the provisions
     of the Plan Agreement and the Plan Document.

     *15 Year Certain, Post-retirement payments start on the anniversary
     Commencement Date following age 65.
```

18.  Payments due to Plaintiff under the Plan were as follows:

| Projected Payment Date | Projected Payment Amounts |
| --- | --- |
| | |
| January 1, 1995 | $ 6,514.00 |
| January 1, 1996 | $ 6,514.00 |
| January 1, 1997 | $ 6,514.00 |
| January 1, 1998 | $ 6,514.00 |
| January 1, 2022 | $29,454.00 |

FILED DATE: 9/16/2020 12:06 PM   2020L008564

| | |
|---|---|
| January 1, 2023 | $29,454.00 |
| January 1, 2024 | $29,454.00 |
| January 1, 2025 | $29,454.00 |
| January 1, 2026 | $29,454.00 |
| January 1, 2027 | $29,454.00 |
| January 1, 2028 | $29,454.00 |
| January 1, 2029 | $29,454.00 |
| January 1, 2030 | $29,454.00 |
| January 1, 2031 | $29,454.00 |
| January 1, 2032 | $29,454.00 |
| January 1, 2033 | $29,454.00 |
| January 1, 2034 | $29,454.00 |
| January 1, 2035 | $29,454.00 |
| January 1, 2036 | $29,454.00 |
| | |
| **Total Projected Payments** | **$467,866.00** |

19. Under the provisions of Subsection 4. C. (2) of the Plan, Walgreen was obligated to pay an employee who was involuntarily terminated in the amount of his deferred compensation accumulating at 20% interest compounded annually:

> 4. **Time and Manner of Payment.** The participants' Deferred Accounts shall be distributed as follows:
> C. Payment Upon Termination
>    (2) A participant whose employment with the employer is involuntarily terminated by the employer prior to the participant's retirement for reasons other than those described in Sections 5 and 6 below, shall receive, as soon as practicable after such termination, a lump sum payment in the amount of the accumulated value of the deferral amount. For purposes of this Paragraph 4, Subsection C(2), *the rate to be credited in the calculation of the accumulated value of the deferral amount shall be twenty percent (20%).* [emphasis added]

20. In or about June 1988, Walgreen sold its Food Service Division, including all Walgreen's restaurants, to the Marriott Corporation.

21. As a consequence of the sale, in or about October 1988, Plaintiff's employment with the Walgreen as its Director of Food Service Administration ended after over sixteen years of continuous employment with Walgreen. Plaintiff continued employment with the Food Service

6

FILED DATE: 9/16/2020 12:06 PM    2020L008564

Division, which had been purchased by the Marriott Corporation, as Director of Food Service

Administration - the same role he had when the Food Service Division was owned by Walgreen.

22.  At no time since Plaintiff's employment with Walgreen ended did Walgreen pay

Plaintiff the lump sum payment due to him under Subsection 4. C. (2) of the Plan.

23.  Accordingly, from October 1988, and at all times relevant hereto, Plaintiff continued to

participate in the Plan, having satisfied all of obligations and responsibilities under the Plan.

24. In January of every year since the initiation of the Plan, Plaintiff received a letter making

material representations to him of his projected payments under the Plan; each annual letter acted to

ratify the agreement. The attached Exhibit 2 includes the status letters Plaintiff received in January

2018, January 2019, and January 2020.[4]

25. On or about January 1, 1995, Walgreen paid Plaintiff the first payment, in the amount of

$6,514.00, due under the terms of the Plan, further ratifying the agreement.[5]

26. On or about January 1, 1996, Walgreen paid Plaintiff the second payment, in the amount

of $6,514.00, due under the terms of the Plan, further ratifying the agreement.[6]

27. On or about January 1, 1997, Walgreen paid Plaintiff the third payment, in the amount of

$6,514.00, due under the terms of the Plan, further ratifying the agreement.[7]

28. On or about January 1, 1998, Walgreen paid Plaintiff the fourth payment, in the amount

of $6,514.00, due under the terms of the Plain, further ratifying the agreement.[8]

29.  That in each of the annual status letters to Plaintiff from the Plan Administrator,

Newport Group regarding the payments to Plaintiff, including those in January 2018, January 2019,

and January 2020, material representations were made to Plaintiff that each of these payments were

---

[4] See attached Exhibit 2,
[5] See attached Exhibit 1, p. 16 and Exhibit 2
[6] See attached Exhibit 1, p. 16 and Exhibit 2
[7] See attached Exhibit 1, p. 16 and Exhibit 2
[8] See attached Exhibit 1, p. 16 and Exhibit 2

Interim Payments made to him as agreed under the Plan, further ratifying the agreement.[9]

30. Plaintiff relied upon each of the aforesaid material representations in his financial and retirement planning.

31. On or about January 1, 2009, the Plan was amended by the "Amendment to Executive Deferred Compensation Capital Accumulation Plans."[10]

32. Plaintiff qualified for agreed Installment Payments under the Plan when he retired after a period of continuous employment beginning on or before January 1, 1988.[11]

33. Plaintiff is currently 64 years of age. He will 65 years on May 13, 2021. Beginning in May, 1972, he had over 16 years of service with Walgreen.

34. Plaintiff relied upon Walgreen's ongoing and repeated representations that he qualified for compensation under the Plan, including that the four payments he received in 1995-1998 were made pursuant to the Plan, and that he would receive fifteen annual Installment Payments upon reaching 65 years of age.

35. Other Walgreen employees whose employment ended with the sale of the Walgreen the Food Service Division received their Installment Payments under the Plan.

36. On or about April 3, 2019, Walgreen slashed its forecasts for 2019 earnings to flat from previous guidance of 7-12 percent for full year earnings for 2019, and announced that Walgreen Co. planned to cut costs by more than $1.5 billion by 2022.

37. That on or about October 28, 2019, Walgreen Co. announced that Walgreen Co. laid off more than 100 employees at its corporate headquarters in Deerfield, Illinois, that Walgreen Co. cut bonus amounts for store managers, and that Walgreen Co. increased its plans to cut costs to more than $1.8 billion by 2022, from the plan to cut cost by more than $1.5 billion by 2022 announced in April 2019.

---

[9] See attached Exhibit 1, p. 16 and Exhibit 2
[10] See attached Exhibit 1A
[11] See Exhibit 1, including, Subsection 4. A. (1) b.

FILED DATE: 9/16/2020 12:06 PM 2020L008564

38. That in the Third Quarter of 2020, Walgreen Co. reported a $1.7 billion dollar GAAP Net Earnings loss, down -266.6% compared to the Third Quarter of 2019.

39. On or about June 24, 2020, Walgreen, through its agent, Kristine A. Blumka, Senior Analyst, Retirement Plans, who at all times was acting within the scope of her employment, acknowledged to Plaintiff that Walgreen never made the lump sum payment to him required under Subsection 4. C. (2) of the Plan.[12]

40. On or about June 24, 2020, Walgreen, through its agent, Kristine A. Blumka, Senior Analyst, Retirement Plans, who at all times was acting within the scope of her employment, made the material misrepresentation to Plaintiff that he did not meet the eligibility criteria for the Plan.[13]

41. On or about June 24, 2020, Walgreen, through its agent Kristine A. Blumka, Senior Analyst, Retirement Plans, who at all times was acting within the scope of her employment, advised Plaintiff that Walgreen elected to exercise the provisions of Subsection 4. C. (2) of the Plan, which required Walgreen to pay Plaintiff the principal of his deferral amounts plus accrued interest at the rate found in the provisions of Subsection 4. C. (2) of the Plan.[14]

42. On or about June 29, 2020, Walgreen, through its agent Kristine A. Blumka, Senior Analyst, Retirement Plans, who at all times was acting within the scope of her employment, expressed recognition of the emotional distress caused to Plaintiff by Walgreen's actions, promised that Walgreen would "do the right thing" for Plaintiff, and stated she would discuss Plaintiff's promised compensation due under the Plan with Walgreen's general counsel.

43. At all times herein mentioned, Plaintiff, not suspecting that Walgreen, the company he had worked at for over sixteen years, was intentionally misleading him and seeking to defrauding him of the funds due to him under the terms of the Plan, believed and detrimentally relied upon Walgreen's misrepresentations.

---

[12] See Exhibit 3 Blumka letter to Dan Malloy of June 24, 2020
[13] See Exhibit 3 Blumka letter to Dan Malloy of June 24, 2020
[14] See Exhibit 3 Blumka letter to Dan Malloy of June 24, 2020

9

FILED DATE: 9/16/2020 12:06 PM   2020L008564

44. Plaintiff's deferred compensation payment in 1988 was $6,514.00, which accrued at an interest rate of twenty percent (20%) compounded annually under Subsection 4. C. (2) of the Plan. Interest on that payment has accrued since that time as set forth below:

| Dan Malloy Deferred Comp Plan | | | |
|---|---|---|---|
| | Bgn | Interest | Ending |
| 1988 | 6,514 | 1,303 | 7,817 |
| 1989 | 7,817 | 1,563 | 9,380 |
| 1990 | 9,380 | 1,876 | 11,256 |
| 1991 | 11,256 | 2,251 | 13,507 |
| 1992 | 13,507 | 2,701 | 16,209 |
| 1993 | 16,209 | 3,242 | 19,451 |
| 1994 | 19,451 | 3,890 | 23,341 |
| 1995 | 23,341 | 4,668 | 28,009 |
| 1996 | 28,009 | 5,602 | 33,611 |
| 1997 | 33,611 | 6,722 | 40,333 |
| 1998 | 40,333 | 8,067 | 48,400 |
| 1999 | 48,400 | 9,680 | 58,079 |
| 2000 | 58,079 | 11,616 | 69,695 |
| 2001 | 69,695 | 13,939 | 83,634 |
| 2002 | 83,634 | 16,727 | 100,361 |
| 2003 | 100,361 | 20,072 | 120,434 |
| 2004 | 120,434 | 24,087 | 144,520 |
| 2005 | 144,520 | 28,904 | 173,424 |
| 2006 | 173,424 | 34,685 | 208,109 |
| 2007 | 208,109 | 41,622 | 249,731 |
| 2008 | 249,731 | 49,946 | 299,677 |
| 2009 | 299,677 | 59,935 | 359,613 |
| 2010 | 359,613 | 71,923 | 431,535 |
| 2011 | 431,535 | 86,307 | 517,842 |
| 2012 | 517,842 | 103,568 | 621,411 |
| 2013 | 621,411 | 124,282 | 745,693 |
| 2014 | 745,693 | 149,139 | 894,832 |
| 2015 | 894,832 | 178,966 | 1,073,798 |
| 2016 | 1,073,798 | 214,760 | 1,288,558 |
| 2017 | 1,288,558 | 257,712 | 1,546,269 |
| 2018 | 1,546,269 | 309,254 | 1,855,523 |
| 2019 | 1,855,523 | 371,105 | 2,226,628 |
| 2020 | 2,226,628 | 445,326 | 2,671,953 |

45. That on or before July 14, 2020, Walgreen, through its agents acting within the scope of their employment, including but not limited to Kristine A. Blumka, Chris Dysinger, Walgreen Director of Retirement Plans and Programs, and Walgreen's general counsel, conspired and

schemed to defraud and deprive Plaintiff of the payments he is entitled to under Plan and to convert Plaintiff's for Walgreen's benefit.

46. On July 14, 2020, Walgreen, through its agent acting within the scope of her employment, Kristine A. Blumka, Senior Analyst, Retirement Plans, made the material misrepresentation to Plaintiff that he did not meet the eligibility criteria for the Plan because he did not attain "retirement status" by "attaining age 55 with at least 10 years of service prior to termination of employment with Walgreens."[15]

47. On July 14, 2020, Walgreen, through its agent Kristine A. Blumka, Senior Analyst, Retirement Plans, who at all times was acting within the scope of her employment, made the material misrepresentation to Plaintiff that he did not qualify for the Interim Payments already paid in 1995-1998, and that he did not qualify for the Installment Payments which were to begin in 2022.[16]

48. On July 14, 2020, Walgreen, through its agent Kristine A. Blumka, Senior Analyst, Retirement Plans, who at all times was acting within the scope of her employment, made the material misrepresentation to Plaintiff that the amount due to him under Subsection 4. C. (2) of the Plan was $7,527.69, when, in fact, the amount due Plaintiff under Subsection 4. C. (2) of the Plan as of July 14, 2020 was approximately $2,464,542.00, accruing interest at 20% compounded annually.

49. On July 14, 2020, Walgreen, through its agent Kristine A. Blumka, Senior Analyst, Retirement Plans, who at all times was acting within the scope of her employment, made the material misrepresentation to Plaintiff that the amount due to him under Subsection 4. C. (2) of the Plan was satisfied by his prior Interim Payments in 1995-1998.

50. On July 14, 2020, Walgreen Co., through its agent Kristine A. Blumka, Senior Analyst, Retirement Plans, who at all times was acting within the scope of her employment, made the

[15] See Exhibit 4 Blumka letter to Dan Malloy of July 14, 2020
[16] See Exhibit 4 Blumka letter to Dan Malloy of July 14, 2020

11

FILED DATE: 9/16/2020 12:06 PM   2020L008564

material misrepresentation to Plaintiff that "because you did not attain Retirement status under the plan," defined "as attaining age 55 with at least 10 years of service prior to termination of employment with Walgreens," Plaintiff would receive no further payments.[17]

51. On and about June and July, 2020, Walgreen, through its agent Kristine A. Blumka, Senior Analyst, Retirement Plans, who at all times was acting within the scope of her employment, made the material misrepresentation to Plaintiff that the statements communicated to him during the preceding 32 years by Walgreen regarding his participation in the Plan were "not properly administered," were an "error that occurred in the administration of your benefits," were "administrative error," were in "error," essentially asserting that Walgreen made 32 years of material misrepresentations to Plaintiff regarding the Plan.

52. On July 14, 2020, Walgreen, through its agent Kristine A. Blumka, Senior Analyst, Retirement Plans, who at all times was acting within the scope of her employment, made material misrepresentation to Plaintiff that Walgreen had a right to reimbursement of the Interim Payments made in 1995-1998, clearly intending to threaten Plaintiff that if he sought to enforce Walgreen's obligations attempts to breach the terms of the Plan, and to defraud him of the amounts due to him under the Plan, Walgreen could seek re-payment of the Interim Payments.[18]

53. At all times herein mentioned, Defendants, through their agents acting within the scope of their employment, including but not limited to Kristine A. Blumka, Chris Dysinger and Walgreen's general counsel, knew that each of the aforesaid material misrepresentations were false and made for the malicious purpose of misleading Plaintiff and to cause him to surrender to Walgreen amounts to which he is entitled. In so doing, Defendants demonstrated their intent, to accomplish the fraud, and engaged in willful, malicious misconduct, which justifies an award of punitive damages.

---

[17] See Exhibit 4  Blumka letter to Dan Malloy of July 14, 2020
[18] See Exhibit 4  Blumka letter to Dan Malloy of July 14, 2020

FILED DATE: 9/16/2020 12:06 PM   2020L008564

FILED DATE: 9/16/2020 12:06 PM    2020L008564

54.  As of August 14, 2020 (the date of the filing of this lawsuit), under Subsection 4. C. (2) of the Plan Walgreen owed Plaintiff a lump sum payment of approximately $2,501,144.00, which sum continues to compound annually at 20%.

55.  At all times herein mentioned, Defendants, acting through their agents, delegates and assigns acting within the scope of their employment, delegation and assignment, owed Plaintiff fiduciary duties of good faith and fair dealing under both Illinois common law and state statutory law[19] in the administration of the Plan, including, inter alia: (1) to deal fairly with Plaintiff, (2) to act reasonably and in good faith with Plaintiff, (3) to discharge their duties solely in the interests of Plan participants such as Plaintiff (and his beneficiaries), (4) to act for the exclusive purpose of providing benefits to participants such as Plaintiff (and his beneficiaries), (5) to refrain from engaging in transactions that constitute direct or indirect actions adverse to the interests of participants such as Plaintiff (and his beneficiaries), (6) to refrain from transactions lacking adequate consideration to participants such as Plaintiff ( and his beneficiaries) or which deprive participants such as Plaintiff of benefits due under the Plan, (7) to refrain from transactions that result in a pecuniary benefit to Defendants, and (8) to exercise reasonable care to prevent others from breaching their fiduciary duties in the administration of the Plan.

56.  At all times herein mentioned, both Illinois common law and state statutory law [20] recognized that breaches of fiduciary duties are punishable using the legal modalities of tort law and/or criminal law.

57.  On or about July 14, 2020, notwithstanding the aforesaid duties, Defendants, acting through their agents, delegates and assigns acting within the scope of their employment, delegation and assignment, maliciously, wrongfully, intentionally, willfully, wantonly, with an entire want of care, or with a totality of circumstances demonstrating a scheme or device to accomplish a fraud,

---

[19] See, inter alia, 40 ILCS 5/1-101.2 et seq.
[20] Se, inter alia, 40 ILCS 5/1-107, 40 ILCS 5/1-108 and 40 ILCS 5/1-110

13

FILED DATE: 9/16/2020 12:06 PM   2020L008564

denied benefits due and owing to Plaintiff under the Plan, breaching their duties to Plaintiff in one

or more of the following ways:

(1) Failed to deal fairly with Plaintiff;

(2) Failed to act reasonably and in good faith with respect to Plaintiff;

(3) failed to discharge their duties solely in the interests of Plan participants including Plaintiff;

(4) Failed to act for the exclusive purpose of providing benefits to Plan participants including Plaintiff;

(5) Failed to refrain from engaging in transactions that constitute direct or indirect actions adverse to the interests of Plan participants, including Plaintiff;

(6) Failed to refrain from engaging in transactions unsupported by adequate consideration with Plan participants, such as Plaintiff, or which deprive Plan participants, such as Plaintiff, the benefits due under the Plan;

(7) Failed to refrain from transactions that result in a pecuniary benefit to Defendants;

(8) Failed to exercise reasonable care to prevent others from breaching their fiduciary duties in the administration of the Plan;

(9) Conspired together to accomplish a fraud; and

(10) Otherwise defrauded and deprived Plaintiff of the payments he is entitled to under the Plan, and converted Plaintiff's funds to their own benefit.

58. That as a direct and proximate result of Defendants' breaches of their fiduciary duties,

acting through their agents, delegates and assigns acting within the scope of their employment,

delegation and assignment, Plaintiff sustained significant pecuniary injuries, including, but not

limited to, the loss of the amounts due to him under the Plan and serious emotional distress.

WHEREFORE, Plaintiff, DANIEL MALLOY, demands judgment against Defendants,

Walgreen Co., Newport Group, Inc., and the Walgreen Co. 1988 Executive Deferred

Compensation/Capital Accumulation Plan, and each of them, for compensatory damages in an

14

amount in excess of TWO MILLION FIVE HUNDRED THOUSAND ($2,500,000.00) DOLLARS.

Further, Plaintiff reserves the right to seek to amend the ad damnum of Count I to allow for a prayer for relief for a claim for punitive damages pursuant to 735 ILCS 5/2-604.1.[21]

## COUNT II – Fraud and Deceit

1-58.  Plaintiff, DANIEL MALLOY, restates and realleges paragraphs 1-58 of Count I as paragraphs 1-58 of Count II as if fully set forth herein.

59.  That the aforesaid misrepresentations to Plaintiff by Defendants, and each of them, acting through their agents, delegates and assigns acting within the scope of their employment, delegation and assignment, were known to Defendants to be false, were believed by Defendants to be false, or were made in reckless disregard as to whether the same were true or false.

60.  That the aforesaid misrepresentations to Plaintiff by Defendants and each of them, acting through their agents, delegates and assigns acting within the scope of their employment, delegation and assignment, were untrue statements of material fact and made to induce Plaintiff to surrender or forego his rights to money owed to him under the Plan.

61.  That, not suspecting that Walgreen, the company he had worked at for over sixteen years, was seeking to intentionally defraud him and convert to its own benefit the money owed to him, Plaintiff believed and relied upon Ms. Blumka's misrepresentations.

62.  Plaintiff sustained damages as the result of his reliance when Defendants, and each of

---

[21] § 2-604.1.  **Pleading of punitive damages.  In all actions on account of bodily injury or physical damage to property, based on negligence, or product liability based on any theory or doctrine, where punitive damages are permitted no complaint shall be filed containing a prayer for relief seeking punitive damages.  However, a plaintiff may, pursuant to a pretrial motion and after a hearing before the court, amend the complaint to include a prayer for relief seeking punitive damages.  The court shall allow the motion to amend the complaint if the plaintiff establishes at such hearing a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages.  Any motion to amend the complaint to include a prayer for relief seeking punitive damages shall be made not later than 30 days after the close of discovery.  A prayer for relief added pursuant to this Section shall not be barred by lapse of time under any statute prescribing or limiting the time within which an action may be brought or right asserted if the time prescribed or limited had not expired when the original pleading was filed.**

FILED DATE: 9/16/2020 12:08 PM  2020L008664

them, acting through their agents, delegates and assigns acting within the scope of their employment, delegation and assignment, reneged on Walgreen's promise to pay Plaintiff the principal of his deferred compensation with interest at the rate set forth in Subsection 4. C. (2) of the Plan.

63. That as a direct and proximate result of the fraud and deceit of Defendants, acting through their agents, delegates and assigns acting within the scope of their employment, delegation and assignment, Plaintiff, sustained significant pecuniary damages.

WHEREFORE, Plaintiff, DANIEL MALLOY, demands judgment against Defendants, in an amount in excess of TWO MILLION FIVE HUNDRED THOUSAND ($2,500,000.00) DOLLARS.

Further, Plaintiff reserves the right to request the right to amend the ad damnum of Count II to allow for a prayer for relief for a claim for punitive damages pursuant to 735 ILCS 5/2-604.1.

## COUNT III – Conversion

1-63. Plaintiff restates and realleges paragraphs 1-63 of Count II as paragraphs 1-63 of Count III as if fully set forth herein.

64. By the aforesaid actions and inactions, Defendants, have taken an unauthorized and wrongful assumption, control, dominion or ownership of funds due and owing to Plaintiff pursuant to the Plan.

65. Plaintiff has a protected property interest in funds due to him under the Plan; he has right to the immediate possession of that property interest that is absolute and unconditional.

66. Plaintiff demands Defendants immediately turn over possession to him of his property, the funds owed to him under the Plan.

67. That as a direct and proximate result of the conversion of Plaintiff's funds by Defendants, Plaintiff has sustained significant pecuniary damages.

WHEREFORE, Plaintiff, DANIEL MALLOY, demands judgment against Defendants in an

16

FILED DATE: 9/16/2020 12:06 PM   2020L008564

amount in excess of TWO MILLION FIVE HUNDRED THOUSAND ($2,500,000.00) DOLLARS.

Further, Plaintiff reserves the right to request the right to amend the ad damnum of Count III to allow for a prayer for relief for a claim for punitive damages pursuant to 735 ILCS 5/2-604.1.

## COUNT IV – Illinois Wage Payment and Collection Act

1-67. Plaintiff, Daniel Malloy, restates and realleges paragraphs 1-67 of Count III as paragraphs 1-67 of Count IV as if fully set forth herein.

68. At all times relevant hereto, Walgreen was Plaintiff's employer under the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, et seq.

69. At all times relevant hereto, Plaintiff was the employee of Walgreen under the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, et seq.

70. The Illinois Wage Payment and Collection Act, 820 ILCS 115/14, states in relevant part as follows:

```
(820 ILCS 115/14) (from Ch. 48, par. 39m-14)
    Sec. 14. (a) Any employee not timely paid wages,
final compensation, or wage supplements by his or her
employer as required by this Act shall be entitled to
recover through a claim filed with the Department of
Labor or in a civil action, but not both, the amount of
any such underpayments and damages of 2% of the amount
of any such underpayments for each month following the
date of payment during which such underpayments remain
unpaid. In a civil action, such employee shall also
recover costs and all reasonable attorneys' fees.
    (a-5) In addition to the remedies provided in
subsections (a), (b), and (c) of this Section, any
employer or any agent of an employer, who, being able to
pay wages, final compensation, or wage supplements and
being under a duty to pay, wilfully refuses to pay as
provided in this Act, or falsely denies the amount or
validity thereof or that the same is due, with intent to
secure for himself or other person any underpayment of
such indebtedness or with intent to annoy, harass,
oppress, hinder, delay or defraud the person to whom
such indebtedness is due, upon conviction, is guilty of:
        (1) for unpaid wages, final compensation or wage
    supplements in the amount of $5,000 or less, a Class
```

```
B misdemeanor; or
    (2) for unpaid wages, final compensation or wage
supplements in the amount of more than $5,000, a
Class A misdemeanor.

Each day during which any violation of this Act
continues shall constitute a separate and distinct
offense.
```

71. At all times relevant hereto, Defendants, had a duty to timely pay compensation owed to Plaintiff under the terms of the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan."

72. Defendants have violated Illinois Wage Payment and Collection Act, 820 ILCS 115/1 et seq. by failing to make timely and appropriate payments owed to Plaintiff pursuant to the Plan.

73. That as a direct and proximate result of the aforesaid violations of the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, et seq., Plaintiff has sustained significant pecuniary damage.

WHEREFORE, Plaintiff, DANIEL MALLOY, demands judgment against Defendants, in an amount in excess of TWO MILLION FIVE HUNDRED THOUSAND ($2,500,000.00) DOLLARS, prejudgment interest, attorneys' fees and costs.

Further, Plaintiff reserves the right to request the right to amend the ad damnum of Count I to allow for a prayer for relief for a claim for punitive damages pursuant to 735 ILCS 5/2-604.1.

## COUNT V – Breach of Contract

1-73. Plaintiff, Daniel Malloy, restates and realleges paragraphs 1-73 of Count IV as paragraphs 1-73 of Count V as if fully set forth herein.

74. That, in failing to comply with the terms of the Plan by failing to pay Plaintiff amounts owed to him under the Plan and advising of their intent to refuse to honor their obligations under the

FILED DATE: 9/16/2020 12:06 PM    2020L008564

Plan, Defendants, violated and breached the terms of the Plan, including, but not limited to, the terms of Subsection 4. A. (2) a. and/or Subsection 4. C. (2) of the "Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan," and in addition, breached their separate promise to pay a "lump sum distribution at the interest rate specified for a voluntary termination."

75. That as a direct and proximate result of their breaches of contract, Plaintiff has sustained significant pecuniary damage.

WHEREFORE, Plaintiff, DANIEL MALLOY, demands judgment against Defendants in an amount in excess of TWO MILLION FIVE HUNDRED THOUSAND ($2,500,000.00) DOLLARS, attorney fees, specific performance, to enforce his rights under the terms of the plan, to declare his rights to future benefits under the terms of the Plan, and for such other relief as the Court deems appropriate.

## COUNT VI – ERISA Claim For Enforcement Of The Plan Pursuant 29 U.S.C. § 1132(a) and Federal Common Law

1-75. Plaintiff, Daniel Malloy, restates and realleges paragraphs 1-75 of Count V as paragraphs 1-75 of Count VI as if fully set forth herein.

76. Defendants have failed to comply with the terms of the Plan and have indicated they will refuse in the future to comply with the terms of the Plan by refusing to pay Plaintiff amounts due to him under the Plan, including, but not limited to, amounts due pursuant to Subsection 4. A. (2) a. and/or Subsection 4. C. (2) of the Plan.

77. Under Section 1134(a)(1)(B), as a Plan participant, Plaintiff is entitled to recover benefits due to him under the terms of the Plan, to enforce his rights under the terms of the Plan, and to declare his rights to future benefits under the terms of the Plan.

WHEREFORE, Plaintiff, DANIEL MALLOY, requests that the Court determine all amounts due and owing to him under the Plan currently, that the Court enter judgment in his favor

19

FILED DATE: 9/16/2020 12:06 PM   2020L008564

and against Defendants in that amount, determine the amount of future benefits owed to him, to otherwise declare his rights under the terms of the Plan, to enforce the terms of the Plan, and for such other relief as the Court deems appropriate.

/s/ Christopher Patrick Ford

Christopher Patrick Ford

LAW OFFICE OF CHRISTOPHER PATRICK FORD
8 South Michigan Avenue - Suite 3500
Chicago, Illinois 60603
Telephone: 312/372-0505
Facsimile: 312/372-8562
cpfordlaw@sbcglobal.net
#15025

FILED DATE: 9/16/2020 12:06 PM   2020L008564

STATE OF ILLINOIS          )                                    #15025
COUNTY OF COOK             )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

DANIEL MALLOY,                              )
                                            )
                    Plaintiffs,             )
v.                                          )          No. 2020 L 008564
                                            )
WALGREEN CO., a corporation,                )          **Plaintiff Demands a**
Newport Group, Inc., a corporation, and     )          **Trial by Jury**
Walgreen Co. 1988 Executive Deferred Compensation/  )
Capital Accumulation Plan,                  )
                                            )
                    Defendants.             )

### **Rule 222 certification**

Pursuant to Supreme Court Rule 222, the undersigned counsel hereby certifies, under Section 1-109 of the Code of Civil Procedure, that the damages sought in the matter of <u>Malloy v. Walgreen Co.</u>, et al., are in excess of the jurisdictional amount of for the Law Division.

_/s/ Christopher Patrick Ford_
Christopher Patrick Ford

LAW OFFICE OF CHRISTOPHER PATRICK FORD
8 South Michigan Avenue - Suite 3500
Chicago, Illinois 60603
Telephone:  312/372-0505
Facsimile:  312/372-8562
cpfordlaw@sbcglobal.net
#15025

FILED DATE: 9/16/2020 12:06 PM   2020L008664

Exhibit 1

## Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan

Walgreen Co. (the "employer") hereby establishes a non-qualified deferred compensation program for certain of its employees as described herein.  The following shall constitute the terms and conditions of the Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan (the "Plan"), effective January 1, 1988:

1.   <u>Administration</u>.  Full power and authority to construe, interpret and administer the Plan shall be vested in the Compensation Committee of the Board of Directors (the "Committee").  The Committee shall have the authority to make determinations provided for or permitted to be made under the Plan, to interpret the Plan, and to promulgate such rules and regulations, if any, as the Committee considers necessary and appropriate for the implementation of the Plan.

2.   <u>Eligibility and Participation</u>.  Only those persons who are employed at Salary Grade 14 and its equivalent or above as of December 31, 1987 shall be eligible to become a participant in the Plan.  An eligible employee shall become a participant upon the execution of an irrevocable election under the Plan and the acceptance of the election by the Committee.

3.   <u>Deferred Compensation Account</u>.

     A.   Each participant shall make an irrevocable election in writing of the amount of compensation to be deferred under the Plan (the "deferral

1

amount"). Such amount shall not be in excess of fifteen percent (15%) of the participants calendar year 1988 base salary, and shall be in increments of no less than $1,000.00 (one thousand dollars). The election shall be made prior to January 1, 1988 and shall be for the period January 1, 1988 through December 31, 1988. The deferral amount shall be reduced in substantially equal amounts from the base salary otherwise periodically payable to the participant during the period January 1, 1988 through December 31, 1988, and attributable to service by the participant for the employer after the date of participant's election.

B. The employer shall establish and maintain a bookkeeping account in the name of each participant, which shall be known as his or her "Deferred Account", and which shall be credited with the amount of compensation deferred, and which shall reflect the accumulated value of the deferral amount. The accumulated value of the deferral amount shall equal the amount arrived at by increasing the deferral account balance by assumed simple interest compounded annually but credited as of the last day of each calendar month, calculated from January 1, 1988. Amounts paid to or on behalf of the participant or his beneficiary pursuant to this Plan, shall be deducted from the account balance as of the first day of the month in which such payment is made. The rate to be used in determining the accumulated value of the deferral amount shall be that rate specified in the Plan paragraph under which payment is to be made.

2

FILED DATE: 9/16/2020 12:06 PM    2020L008564

C.   The participant's Deferred Account shall at all times be reflected on the employer's books in accordance with generally accepted accounting practices as a general unsecured and unfunded obligation of the employer and the Plan shall not give any person any right or security interest in any asset of the employer nor shall it imply any trust or segregation of assets by the employer.  The participant's Deferred Account shall be distributed from the general assets of the employer.

4.   Time and Manner of Payment.  The participants' Deferred Accounts shall be distributed as follows:

A.   Installment Payments

(1)  A participant shall be entitled to fifteen (15) equal annual installment payments commencing at the January 1 of the year following his or her attainment of age sixty-five (65) or as soon as practicable thereafter, if one of the following conditions is met:

a.   the participant remains in the continuous employ of the employer during the period from January 1, 1988 until the Participant reaches age sixty-five (65); or

b.   the participant retires after a period of continuous employment beginning on or before January 1, 1988.

(2)  A participant who attained age fifty-five (55) as of January 1, 1988, shall elect, at the time of making the deferral election pursuant to Paragraph 3A, to receive installment payments in one of the following manners:

a.   fifteen (15) equal annual installments as described in paragraph (1) above; or

3

FILED DATE: 9/16/2020 12:06 PM  2020L008564

b.    ten (10) equal annual installments commencing at the
January 1 of the year following his or her attainment of age
seventy (70), or as soon as practicable thereafter.
Installment payments shall be calculated to amortize fully the accumulated
value of the deferral amount over the payment period.  For purposes of this
Subsection A, the rate to be credited in the calculation of the accumulated
value of the deferral amount shall be based upon the participant's age at the
time of deferral as reflected in Schedule A of the Plan.

B.    Interim Payments

(1)  Effective January 1, 1995, or as soon as practicable thereafter,
a participant shall be entitled to a lump sum payment in an amount
equal to the amount deferred under Paragraph 3 of this Plan if one of
the following conditions is met:

a.    the participant has remained in the continuous employ of
the employer during the period beginning January 1, 1988 and
ending January 1, 1995 and is not receiving Installment
Payments pursuant to Subsection A; or

b.    the participant retires after a period of continuous
employment from January 1, 1988 and is not receiving
Installment Payments pursuant to Subsection A.

(2)  Effective January 1, 1996, or as soon as practicable thereafter,
a participant shall be entitled to a lump sum payment in an amount
equal to the amount deferred under Paragraph 3 of this Plan if one of
the following conditions is met:

a.    The participant has remained in the continuous employ of
the employer during the period beginning January 1, 1988 and
ending January 1, 1996 and is not receiving Installment
Payments pursuant to Subsection A; or

**4**

FILED DATE: 9/16/2020 12:06 PM   2020L008664

> b.   the participant retires after a period of continuous
> employment from January 1, 1988 and is not receiving
> Installment Payments pursuant to Subsection A.

(3)  Effective January 1, 1997, or as soon as practicable thereafter,
a participant shall be entitled to a lump sum payment in an amount
equal to the amount deferred under Paragraph 3 of the Plan if one of
the following conditions is met:

> a.   The participant has remained in the continuous employ of
> the employer during the period beginning January 1, 1988 and
> ending January 1, 1997 and is not receiving Installment
> Payments pursuant to Subsection A; or

> b.   the participant retires after a period of continuous
> employment from January 1, 1988 and is not receiving
> Installment Payments pursuant to Subsection A.

(4)  Effective January 1, 1998, or as soon as practicable thereafter,
a participant shall be entitled to a lump sum payment in an amount
equal to the amount deferred under Paragraph 3 of the Plan if one of
the following conditions is met:

> a.   The participant has remained in the continuous employ of
> the employer during the period beginning January 1, 1988 and
> ending January 1, 1998 and is not receiving Installment
> Payments pursuant to Subsection A; or

> b.   the participant retires after a period of continuous
> employment from January 1, 1988 and is not receiving
> Installment Payments pursuant to Subsection A.

Payments under Subsections B(1)-B(4), shall be debited from the
participants deferral account as of the first day of the month in
which payment is made.

FILED DATE: 9/16/2020 12:06 PM    2020L008564

C.    Payment Upon Termination

(1)  A participant who voluntarily terminates his employment with the employer prior to retirement shall receive, as soon as practicable after such termination, a lump sum payment in the amount of the accumulated value of the Deferral Amount.  For purposes of this Paragraph 4, Subsection C(1) the rate to be credited in the calculation of the accumulated value of the deferral amount shall be ten percent (10%).

 (2)  A participant whose employment with the employer is involuntarily terminated by the employer prior to the participant's retirement for reasons other than those described in Sections 5 and 6 below, shall receive, as soon as practicable after such termination, a lump sum payment in the amount of the accumulated value of the deferral amount.  For purposes of this Paragraph 4, Subsection C(2), the rate to be credited in the calculation of the accumulated value of the deferral amount shall be twenty percent (20%).

For purposes of this Paragraph 4, retirement shall mean leaving the active employ of the employer at or after age sixty-five (65), or after at least ten (10) years of service and at least age fifty-five (55), or for reason of disability as described in Paragraph 9 of the Plan.

5.    Non-Competition.  Notwithstanding any other provision of this Plan, if the Committee at any time determines that participant, without having obtained the prior written consent of the Committee or its designee, has engaged in competition with the employer either during the term of his employment with the employer and continuing throughout such period thereafter that

participant is entitled to receive payments pursuant to this Plan, the sole amount payable to participant hereunder shall be a lump sum payment of the accumulated value of the deferral amount, payable as soon as practicable after such determination. For purposes of this Paragraph 5, the simple rate of interest applied to determine the accumulated value of the deferral amount shall be two percent (2%). "Competition with the Employer" shall mean engaging, within any geographical area or market served by the employer and without the employer's written consent, in the provision of goods or services, or in any other business activity of a type offered or engaged in by the employer, on participant's own behalf or on behalf of another business enterprise while employed by the employer or within 60 months of participant's termination of employment with the employer.

6. <u>Dishonest Conduct</u>. Notwithstanding any other provision of this Plan, if participant's employment with the employer is terminated at any time for reason of dishonest or fraudulent conduct injurious to the employer, the sole amount payable to or on behalf of participant hereunder shall be a lump sum payment of the accumulated value of the participant's deferral amount, payable as soon as practicable after such termination of employment. For purposes of this Paragraph 6, the simple rate of interest to be credited in the calculation of the accumulated value of the deferral amount shall be zero percent (0%).

7. <u>Payment Upon Death of Participant</u>

A. If participant dies after annual payments have become payable as provided in Paragraph 4, Subsection A hereof, but prior to receiving any or all annual installment payments due participant pursuant to

**7**

FILED DATE: 9/16/2020 12:06 PM    2020L008564

FILED DATE: 9/16/2020 12:06 PM    2020L008564

Paragraph 4, Subsection A, the employer shall pay any such unpaid annual payments to the participant's beneficiary, commencing with the next annual payment due following the date of participant's death.

B.  If participant dies after retirement as provided in Paragraph 4 hereof, but prior to receiving any or all interim payments due participant pursuant to Paragraph 4, Subsection B, the employer shall pay any such unpaid interim payments to the participant's beneficiary commencing with the next interim payment due following the date of participant's death.

C.  If participant dies while employed by the employer, but prior to retirement as provided in Paragraph 4 hereof, no further interim payments or annual installments pursuant to Paragraph 4, Subsections A and B shall be paid by the employer after the date of the participant's death, but the employer shall, as soon as practicable after participant's death, pay to the participant's beneficiary, in a lump sum, the accumulated value of the deferral amount. For purposes of this Paragraph 7, the rate to be credited in the calculation of the accumulated value of the deferral amount shall be twenty percent (20%).

8.  Beneficiary Designation.  A participant may, from time to time designate any legal or natural person or persons (who may be designated contingently or successively) to whom payments are to be made if participant dies before receiving payment of all amounts due hereunder, by signing a form approved by the Committee. A beneficiary designation form shall be effective only after the signed form is filed with the employer while participant is alive. A properly filed designation shall cancel all

8

FILED DATE: 9/16/2020 12:06 PM    2020L008564

beneficiary designation forms signed and filed earlier.  If participant
fails to designate a beneficiary as provided above, or if all designated
beneficiaries of participant die before participant or before complete
payment of all amounts due hereunder, the employer, in its discretion, may
pay the unpaid amounts to one or more of such participant's relatives by
blood, adoption or marriage in any manner permitted by law which the
Committee considers to be appropriate, including but not limited to
payment to the legal representative or representatives of the estate of
the last to die of participant and participant's designated beneficiaries.

9.    Disability.  If participant's employment with the employer is terminated
prior to participant's retirement as provided in Paragraph 4 hereof by
reason of participant's disability, participant's employment with the
employer, for purposes of this Plan, shall be deemed to continue until
participant's retirement as provided in Paragraph 4 and the provisions of
this Plan shall be applicable to such participant to the same extent as if
participant were, in fact, employed by the employer during that period.
However, if such termination of employment occurs prior to
January 1, 1989, as a condition of the application of this Paragraph,
participant shall have any compensation payable to him from the employer
(either directly or through employer-provided disability compensation)
reduced by an amount equal to the balance of any deferred amount the
participant elected under Paragraph 3 hereof which has not been credited
to the participant's account as of the time of disability.  For purposes
of this Section, "disability" shall mean any total and permanent
disability which would prevent participant's return to active employment,
as determined by the Committee.

10. <u>Facility of Payment</u>.  If the employer has, for any reason, doubt as to the proper person to whom to make payment, the employer may withhold payment until instructed by a final order of a court of competent jurisdiction. Any payment hereunder made by the employer in good faith shall fully discharge the employer from its obligation with respect to such payment.

11. <u>Insurance</u>.  The employer may, in its sole discretion, purchase a policy or policies of insurance on the life of participant or disability insurance with respect to participant, the cash value, if any, and proceeds of which may, but need not, be used by the employer to satisfy part or all of its obligations hereunder.  The employer will be the owner of any such policies and neither participant nor any other person or entity claiming through participant shall have any ownership rights in such policies or any proceeds thereof.  Participant, as a condition of receiving any benefits hereunder, on behalf of himself or any person or entity claiming through him, shall cooperate with the employer in obtaining any such insurance that the employer desires to purchase by submitting to such physical examinations, completing such forms, and making such records available as may be required by the employer from time to time.

12. <u>Effect on Other Benefits</u>.  The Deferral Amount shall be included in participant's 1988 compensation for purpose of calculating participant's bonuses and awards under any incentive or similar compensation plan or program of the employer, insurance, and other employee benefits, except that in accordance with the terms of any plan qualified under Section 401 of the Internal Revenue Code maintained by the employer, the amount deferred under Paragraph 3 shall not be included as 1988 calendar year

**10**

FILED DATE: 9/16/2020 12:06 PM   2020L008564

compensation in calculating participant's benefits or contributions by or on behalf of participant under such plan or plans. Payments shall be excluded from compensation in years paid for purposes of calculating participants bonuses and awards under any incentive or similar compensation plan or program of the employer, insurance, and other employee benefits, except that in accordance with the terms of any plan qualified under Section 401 of the Internal Revenue Code maintained by the employer, payments to active employees shall be included as compensation in the year paid.

13. <u>Non-Alienation</u>. Neither participant nor anyone claiming through him shall have any right to commute, sell, assign, transfer or otherwise convey the right to receive any payments hereunder, which payments and the rights thereto hereby are expressly declared to be non-assignable and non-transferrable, nor shall any such right to receive payments hereunder be subject to the claims of creditors of participant or anyone claiming through him or to any legal, equitable, or other proceeding or process for the enforcement of such claims.

14. <u>Tax Withholding</u>. Notwithstanding the provisions of Section 13, the employer may withhold from any payment made by it under the Plan such amount or amounts as may be required for purposes of complying with the tax withholding or other provisions of the Internal Revenue Code or the Social Security Act or any state income tax act or for purposes of paying any estate, inheritance or other tax attributable to any amounts payable hereunder.

11

FILED DATE: 9/16/2020 12:06 PM   2020L008564

15. <u>Non-Secured Promise</u>.  The rights under this Plan of participant and any person or entity claiming through him shall be solely those of an unsecured, general creditor of the employer.  Any insurance policy or other asset acquired or held by the employer shall not be deemed to be held by the employer for or on behalf of participant, or any other person, or to be security for the performance of any obligations hereunder of the employer, but shall, with respect to this Plan, be and remain a general, unpledged, unrestricted asset of the employer.

16. <u>Independence of Plan</u>.  Except as otherwise expressly provided herein, this Plan shall be independent of, and in addition to, any other employment agreement or employment benefit agreement or plan or rights that may exist from time to time between the parties hereto.  This Plan shall not be deemed to constitute a contract of employment between the parties hereto, nor shall any provision hereof restrict the right of the employer to discharge participant, or restrict the right of participant to terminate his employment with the employer.

17. <u>Paragraph Headings</u>.  The Paragraph headings used in this Plan are for convenience of reference only and shall not be considered in construing this Plan.

18. <u>Responsibility for Legal Effect</u>.  Neither party hereto makes any representations or warranties, express or implied, or assumes any responsibility concerning the legal, tax, or other implications or effects of this Plan.

FILED DATE: 9/16/2020 12:06 PM    2020L008564

19. <u>Committee Determinations Final</u>.  Each determination provided for in the Plan shall be made in the absolute discretion of the Committee.  Any such determinations shall be binding on all persons.

20. <u>Amendment</u>.  The employer may in its sole discretion amend the Plan from time to time.  No such amendment shall alter a participant's right to receive a payment due under the terms of the Plan at the date of amendment.

21. <u>Termination at the Employer's Option</u>.  Notwithstanding any other provision of this Plan, the employer may terminate this Plan at any time if the Committee, in its sole and absolute discretion, determines that any change in federal or state law, or judicial or administrative interpretation thereof, has materially affected the employer's cost of providing the benefits otherwise payable under this Plan, or for any other reason whatsoever.  Upon such termination, the sole amount payable to participant shall be a lump sum payment, as soon as practicable after such termination, of the accumulated value of the deferral amount.  For purposes of this Paragraph 21, the rate to be credited in the calculation of the accumulated value of the deferral amount shall be twenty percent (20%).

22. <u>Successors, Acquisitions, Mergers, Consolidations</u>.  The terms and conditions of this Plan and each Deferral Election shall inure to the benefit of and bind Walgreen Co. the participants, their successors, assigns, and personal representatives.  If substantially all of the assets of the employer are acquired by another corporation or entity or if the employer

is merged into, or consolidated with, another corporation or entity, then the obligations created hereunder shall be obligations of the successor corporations or entity. Further, if the employment of any participant were to be terminated during a period of five (5) years following such an acquisition, merger, or consolidation for reasons other than dishonest conduct, such termination would be treated as retirement for the purpose of this Plan.

23. <u>Controlling Law</u>. The Plan shall be construed in accordance with the laws of the State of Illinois.

FILED DATE: 9/16/2020 12:06 PM   2020L008564

SCHEDULE A

TO THE

WALGREEN CO. EXECUTIVE'S DEFERRED

FEE/CAPITAL ACCUMULATION PLAN

| Age at Time of Deferral | Annual Interest Earned by Deferral |
|---|---|
| To age 35 | 19.00% |
| age 36 | 19.14% |
| age 37 | 19.30% |
| age 38 | 19.50% |
| age 39 | 19.70% |
| age 40 | 19.94% |
| age 41 | 20.20% |
| age 42 | 20.40% |
| age 43 | 20.60% |
| age 44 | 20.80% |
| age 45 | 21.00% |
| age 46 | 21.20% |
| age 47 | 21.40% |
| age 48 | 21.60% |
| age 49 | 21.80% |
| age 50 | 22.00% |
| age 51 | 22.20% |
| age 52 | 22.40% |
| age 53 | 22.60% |
| age 54 | 23.00% |
| age 55 | 23.00% |
| age 56 | 23.20% |
| age 57 | 23.40% |
| age 58 | 23.60% |
| age 59 | 23.80% |
| age 60 and over | 24.00% |

**15**

FILED DATE: 9/16/2020 12:06 PM    2020L008564

WALGREEN COMPANY
1988 DEFERRED INCOME PLAN

PERSONAL BENEFIT STATEMENT

FOR

D.J. MALLOY

This statement shows your normal retirement payments beginning at age 65.
Payments will begin on the Plan Anniversary date following retirement.

Plus

Interim payments to be received in years 8, 9, 10 and 11 if you were
age 54 or less on the Plan Commencement Date.

| | |
|---|---|
| Plan Year | 01/01/1988 |
| Date of Birth | 05/13/1956 |
| Actual Age - 01/01/88 | 31 |
| Date Normal Post-Retirement Payments Begin (plan anniversary following 65th birthday) | 01/01/2022 |

| SALARY DEFERRAL AMOUNT | $ | 6,514 |
|---|---|---|

| PLAN YEAR | INTERIM PAYMENTS | |
|---|---|---|
| 1995 | $ | 6,514 |
| 1996 | $ | 6,514 |
| 1997 | $ | 6,514 |
| 1998 | $ | 6,514 |

| | INSTALLMENT PAYMENTS | |
|---|---|---|
| AGE 65 | $ | 29,454* |
| TOTAL PAYOUT | $ | 467,866 |

The above payments are not guaranteed and are subject to the provisions
of the Plan Agreement and the Plan Document.

*15 Year Certain, Post-retirement payments start on the anniversary
Commencement Date following age 65.

16

FILED DATE: 9/16/2020 12:06 PM 2020L008564

Exhibit 1A

AMENDMENT
TO
EXECUTIVE DEFERRED COMPENSATION/
CAPITAL ACCUMULATION PLANS

WHEREAS, Walgreen Co. (the "Company") maintains the Walgreen Co. 1986 Executive Deferred Compensation/Capital Accumulation Plan, the Walgreen Co. 1988 Executive Deferred Compensation/Capital Accumulation Plan, the Walgreen Co. 1992 Executive Deferred Compensation/Capital Accumulation Plan Series I, the Walgreen Co. 1992 Executive Deferred Compensation/Capital Accumulation Plan Series II, the Walgreen Co. 1997 Executive Deferred Compensation/Capital Accumulation Plan Series I, the Walgreen Co. 1997 Executive Deferred Compensation/Capital Accumulation Plan Series II, the Walgreen Co. 2001 Executive Deferred Compensation/Capital Accumulation Plan, and the Walgreen Co. 2002 Executive Deferred Compensation/Capital Accumulation Plan, and various Supplements thereto (each, a "Plan" and collectively, the "Plans"); and

WHEREAS, it is now deemed desirable to amend the Plans, effective as of January 1, 2009, to comply with the requirements of Section 409A of the Internal Revenue Code of 1986, as amended.

NOW, THEREFORE, each Plan is hereby amended, effective as of January 1, 2009, as follows:

1.      By adding the following new paragraph to the end of Paragraph 4, Subsection C (Payment Upon Termination):

"All payments shall be made within 90 days following such termination of employment; provided, however, if the participant is a "specified employee" within the meaning of Section 409A of the Internal Revenue Code of 1986, as amended (the "Code") at the time payment is to be made, then to the extent required under Code Section 409A, payment shall be delayed until the date which is six months after the participant's separation from service."

2.      By deleting the phrase "as soon as practicable" where it appears in Paragraph 7, Subsection C of the Plan, and substituting the phrase "as soon as practicable (and within 90 days)" therefor.

3.      By deleting the last sentence of Paragraph 9 (Disability), and substituting the following new sentence therefor:

"For purposes of this Section, "disability" shall mean that the participant is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or can be expected to last for a continuous period of not less than 12 months, as determined in the sole discretion of the Committee."

4.      By deleting the penultimate sentence of Paragraph 21 (Termination at the Employer's Option) and substituting the following new sentences therefor:

FILED DATE: 9/16/2020 12:06 PM    2020L008564

"Any termination of this Plan shall comply with the requirements of Code Section 409A. Upon termination of the Plan, the sole amount payable to a participant shall be a lump sum payment, which shall be made within the time period prescribed under Code Section 409A and applicable regulations issued thereunder."

IN WITNESS WHEREOF, the undersigned duly authorized officer has caused this Amendment to be executed in the name of and on behalf of the Company this _____ day of December, 2008.

WALGREEN CO.

By_____

- 2 -

# *Walgreens*

**Walgreen Co. Executive Deferred
Compensation/Capital Accumulation Plan**

## Account Summary

FILED DATE: 9/16/2020 12:06 PM   2020L008564

Exhibit 2

Reporting Period:
**1/1/2019   - 12/31/2019**



**D. MALLOY**
732 THORNAPPLE DRIVE
NAPERVILLE IL   60540

**Date of Birth:** 05/13/1956
**Date of Hire:**  05/18/1972

### Plan Information

The rates to be credited, payment amounts and all rights under the Plan are subject to the Plan Provisions, the terms of which are controlling
and which are subject to amendment or termination. The projections contained in this statement are based on the assumption that Plan
requirements for such payments are satisfied.

### Payment Summary

| Plan Date | Amount Deferred | Target Interest Rate | Interim Payments | Installment Payments | Projected Total Payout | In Service Death Benefit | Voluntary Separation Payout |
|-----------|-----------------|----------------------|------------------|----------------------|------------------------|--------------------------|-----------------------------|
| 01/01/1988 | 6,514.00 | 19.00% | 6,514.00 | 29,454.00 | 467,866.00 | N/A | N/A |

### Distribution Summary

| Projected Payment Date | Plan Date | Projected Payment Amounts | Annual Total | Plan Payments To Date |
|------------------------|-----------|---------------------------|--------------|-----------------------|
| 01/01/1995 | 01/01/1988 |  |  | 6,514.00 |
| 01/01/1996 | 01/01/1988 |  |  | 6,514.00 |
| 01/01/1997 | 01/01/1988 |  |  | 6,514.00 |
| 01/01/1998 | 01/01/1988 |  |  | 6,514.00 |
| 01/01/2022 | 01/01/1988 | 29,454.00 | 29,454.00 |  |
| 01/01/2023 | 01/01/1988 | 29,454.00 | 29,454.00 |  |
| 01/01/2024 | 01/01/1988 | 29,454.00 | 29,454.00 |  |
| 01/01/2025 | 01/01/1988 | 29,454.00 | 29,454.00 |  |
| 01/01/2026 | 01/01/1988 | 29,454.00 | 29,454.00 |  |
| 01/01/2027 | 01/01/1988 | 29,454.00 | 29,454.00 |  |
| 01/01/2028 | 01/01/1988 | 29,454.00 | 29,454.00 |  |
| 01/01/2029 | 01/01/1988 | 29,454.00 | 29,454.00 |  |
| 01/01/2030 | 01/01/1988 | 29,454.00 | 29,454.00 |  |
| 01/01/2031 | 01/01/1988 | 29,454.00 | 29,454.00 |  |
| 01/01/2032 | 01/01/1988 | 29,454.00 | 29,454.00 |  |
| 01/01/2033 | 01/01/1988 | 29,454.00 | 29,454.00 |  |
| 01/01/2034 | 01/01/1988 | 29,454.00 | 29,454.00 |  |
| 01/01/2035 | 01/01/1988 | 29,454.00 | 29,454.00 |  |
| 01/01/2036 | 01/01/1988 | 29,454.00 | 29,454.00 |  |
| Total |  |  |  |  |

---

### Information



**NEWPORT**
GROUP

**Need more information? Please visit us at:**

newportgroup.com

**Or call us toll-free Monday-Friday 8:30am - 8:00pm ET at:**
**1-800-230-3950**

Please verify this financial information and notify your plan sponsor of questions within 30 days of receipt. If you do not notify your plan sponsor,
we will assume the information on this statement is correct. Any corrections will be reflected on a subsequent statement.

# *Walgreens*

**Walgreen Co. Executive Deferred
Compensation/Capital Accumulation Plan**

# Account Summary



**Reporting Period:**
**1/1/2018  - 12/31/2018**

FILED DATE: 9/16/2020 12:06 PM  2020L008564

## D. MALLOY

732 THORNAPPLE DRIVE
NAPERVILLE IL  60540

**Date of Birth:** 05/13/1956
**Date of Hire:** 05/18/1972

### Plan Information

The rates to be credited, payment amounts and all rights under the Plan are subject to the Plan Provisions, the terms of which are controlling and which are subject to amendment or termination. The projections contained in this statement are based on the assumption that Plan requirements for such payments are satisfied.

### Payment Summary

| Plan Date | Amount Deferred | Target Interest Rate | Interim Payments | Installment Payments | Projected Total Payout | In Service Death Benefit | Voluntary Separation Payout |
|---|---|---|---|---|---|---|---|
| 01/01/1988 | 6,514.00 | 19.00% | 6,514.00 | 29,454.00 | 467,686.00 | N/A | N/A |

### Distribution Summary

| Projected Payment Date | Plan Date | Projected Payment Amounts | Annual Total | Plan Payments To Date |
|---|---|---|---|---|
| 01/01/1995 | 01/01/1988 | | | 6,514.00 |
| 01/01/1996 | 01/01/1988 | | | 6,514.00 |
| 01/01/1997 | 01/01/1988 | | | 6,514.00 |
| 01/01/1998 | 01/01/1988 | | | 6,514.00 |
| 01/01/2022 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2023 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2024 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2025 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2026 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2027 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2028 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2029 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2030 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2031 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2032 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2033 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2034 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2035 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2036 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| Total | | 441,810.00 | 441,810.00 | 26,056.00 |

### Information

 **NEWPORT** GROUP

**Need more information? Please visit us at:**

newportgroup.com

**Or call us toll-free Monday-Friday 8:30am - 8:00pm ET at:**
**1-800-230-3950**

Please verify this financial information and notify your plan sponsor of questions within 30 days of receipt. If you do not notify your plan sponsor,
we will assume the information on this statement is correct. Any corrections will be reflected on a subsequent statement.

FILED DATE: 9/16/2020 12:06 PM   2020L008564

# *Walgreens*

**Walgreen Co. Executive Deferred
Compensation/Capital Accumulation Plan**

Reporting Period:
**1/1/2017 - 12/31/2017**



# Account Summary

**D. MALLOY**
732 THORNAPPLE DRIVE
NAPERVILLE IL   60540

**Date of Birth:** 05/13/1956
**Date of Hire:** 05/18/1972

## Plan Information
The rates to be credited, payment amounts and all rights under the Plan are subject to the Plan Provisions, the terms of which are controlling and which are subject to amendment or termination. The projections contained in this statement are based on the assumption that Plan requirements for such payments are satisfied.

## Payment Summary

| Plan Date | Amount Deferred | Target Interest Rate | Interim Payments | Installment Payments | Projected Total Payout | In Service Death Benefit | Voluntary Separation Payout |
|---|---|---|---|---|---|---|---|
| 01/01/1988 | 6,514.00 | 19.00% | 6,514.00 | 29,454.00 | 467,866.00 | N/A | N/A |

## Distribution Summary

| Projected Payment Date | Plan Date | Projected Payment Amounts | Annual Total | Plan Payments To Date |
|---|---|---|---|---|
| 01/01/1995 | 01/01/1988 | | | 6,514.00 |
| 01/01/1996 | 01/01/1988 | | | 6,514.00 |
| 01/01/1997 | 01/01/1988 | | | 6,514.00 |
| 01/01/1998 | 01/01/1988 | | | 6,514.00 |
| 01/01/2022 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2023 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2024 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2025 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2026 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2027 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2028 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2029 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2030 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2031 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2032 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2033 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2034 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2035 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| 01/01/2036 | 01/01/1988 | 29,454.00 | 29,454.00 | |
| Total | | | | |

## Information

 NEWPORT GROUP

**Need more information? Please visit us at:**
newportgroup.com

**Or call us toll-free Monday-Friday 8:30am - 8:00pm ET at:**
**1-800-230-3950**

Please verify this financial information and notify your plan sponsor of questions within 30 days of receipt. If you do not notify your plan sponsor, we will assume the information on this statement is correct. Any corrections will be reflected on a subsequent statement.

*Walgreens*

Exhibit 3

Walgreen Co.
102 Wilmot Road
Deerfield, IL 60015

June 24, 2020

Mr. Daniel Malloy
732 Thornapple Drive
Naperville, IL 60540

**Re:**    **Walgreen Co. Executive Deferred Compensation/ Capital Accumulation Plan Benefits**

Dear Mr. Malloy:

During a recent review of participant data in the Walgreen Co. Executive Deferred Compensation/ Capital Accumulation Plans, it came to our attention that you have a current benefit balance even though your employment terminated in October, 1988. Because you did not meet the retirement eligibility criteria at the time of your termination, it appears that your benefit should have been paid in a lump sum upon your termination.

We have no record of any special arrangement that would explain why your balance was not paid to you as a lump sum as soon as practicable after your termination of employment. Because the timing and circumstances of your termination will impact the calculation of your benefit payments, please contact me at your earliest convenience to discuss whether such an arrangement may exist.

If you do not respond to this request for information by Friday, July 31st, your benefit will be paid to you as a lump sum distribution at the interest rate specified for a voluntary termination and taking into account any interim payments that have already been paid to you from this plan. I will send a follow-up letter at that time to confirm the exact timing and amount of the benefit distribution.

Please contact me before Friday, July 31st by phone at 1-847-315-1796 or by email at kristine.blumka@walgreens.com. Thank you for your attention to this request. Be well!

Sincerely,

*Kris Blumka*

Kristine A. Blumka
Senior Analyst, Retirement Plans

*Walgreens*

Exhibit 4

Walgreen Co.
102 Wilmot Road
Deerfield, IL 60015

FILED DATE: 9/16/2020 12:06 PM  2020L008564

July 14, 2020


Mr. Daniel Malloy
732 Thornapple Drive
Naperville, IL  60540


RE: 1988 Walgreens Executive Deferred Compensation / Capital Accumulation Plan (the "Plan")


Dear Mr. Malloy,

During a recent review of our records and the administration of the Plan, we determined that your Plan benefits were not properly administered based on your actual termination of employment with Walgreens as of October 10, 1988 (your "Termination Date"). The purpose of this letter is to explain the error that occurred in the administration of your benefits under the above-referenced Plan, and the resulting discontinuation of any future Plan payments to you.

Under the terms and conditions of the Plan (a copy of which is enclosed), which were communicated to you at the outset of your participation, Plan benefits are payable as follows:

- Four (4) annual "Interim Payments" equal to your deferred amount ($6,514) in 1995-1998, contingent on you remaining employed through each of the Interim Payment dates, and
- Fifteen (15) annual "Installment Payments" of $29,454, starting at age 65, contingent on your attaining Retirement status.

Retirement status is defined in the Plan as attaining age 55 with at least 10 years of service prior to termination of employment with Walgreens. If a participant does not attain Retirement status, then Plan benefits are payable in one lump-sum payment following termination of employment, based on a fixed interest rate set forth in the Plan.

As you know, your Termination Date was prior to your attainment of age 55, and as such, you did not attain Retirement status under the Plan. It appears that this information was not accurately reflected on our benefit administrator's recordkeeping system at the time. In addition, your Termination Date was prior to the Interim Payment dates listed above, and thus you did not qualify for any of those payments.

FILED DATE: 9/16/2020 12:06 PM   2020L008564

# Walgreens

Based on your involuntary termination status under the Plan as of your Termination Date, you were entitled to a termination lump-sum benefit payout in 1988 that should have been $7,527.69, which represents your deferred amount plus interest through your Termination Date. Due to the administrative error in the classification of your status, you were actually paid a total of $29,454.00, which represents the four Interim Payments that were paid to you as of January 1st of 1995, 1996, 1997 and 1998.

Under the circumstances, we are not asking you to repay any portion of what has already been overpaid. However, because you did not attain Retirement status, no annual Installment Payments will be paid to you in the future.

We apologize for late discovery of this error, and we hope you can appreciate the need to rectify this situation going forward. If you have any questions or wish to discuss this matter, please contact me at 847-315-1796.

Sincerely,

Kristine A. Blumka
Senior Analyst, Retirement Plans
Walgreen Co.


Enclosure

cc:     Chris Dysinger
        Director, Retirement Plans and Programs

2120- Served 2121 -Served
2220 -Not Served 2221 -Not Served
2320 -Served By Mail 2321 -Served By Mail
2420 -Served By Publication 2421 -Served By Publication

SUMMONS                    ALIAS –SUMMONS                    (Rev.9/3/99) CCG 0001

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

COUNTY DEPARTMENT, LAW DIVISION

DANIEL MALLOY,                          )      No.  2020 L 008564
                                        )      Please Serve:
                         Plaintiffs,    )      (1) NEWPORT GROUP, INC.
v.                                      )      c/o  Illinois Corporation Service C
                                        )      801 Adlai Stevenson Drive
WALGREEN CO., a corporation,            )      Springfield, Illinois 62703
Newport Group, Inc., a corporation, and )
Walgreen Co. 1988 Executive Deferred    )      (2) Walgreen Co. 1988 Executive Deferred Compensation/Capital
Compensation/Capital Accumulation Plan, )      Accumulation Plan, by NEWPORT GROUP, INC., as Administrator,
                                        )      c/o  Illinois Corporation Service C
                                        )      801 Adlai Stevenson Drive
                         Defendants.    )      Springfield, Illinois 62703

SUMMONS

To each defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the office of the Clerk of this Court at the following location:

 X    Richard J. Daley Center, 50 W. Washington, Room 801, Chicago, Illinois 60602

___   District 2 -Skokie        ___   District 3 -Rolling Meadows              District 4 -Maywood

      5600 Old Orchard Rd.            2121 Euclid                               1500 Maybrook Ave.

      Skokie, IL 60077                Rolling Meadows, IL 60008                 Maywood, IL 60153

___   District 5 -Bridgeview    ___   District 6 -Markham

      10220 S. 76th Ave.             16501 S. Kedzie Pkwy.

      Bridgeview, IL 60455           Markham, IL 60426

You must file within 30 days after service of this summons, not counting the day of service.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than 30 days after its date.

Atty No. 15025                                      WITNESS,_____,_____
LAW OFFICE OF CHRISTOPHER PATRICK FORD
8 South Michigan Avenue - Suite 3500                9/16/2020 12:06 PM DOROTHY BROWN
Chicago, Illinois 60601
Telephone:  312/372-0505
Facsimile:  312/372-8562                            Date of Service:_____
cpfordlaw@sbcglobal.net
                                                    (To be inserted by officer on copy left
                                                    with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____

                    (Area Code)        (Facsimile Telephone Number)

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

FILED DATE: 9/16/2020 12:06 PM  2020L008564